IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE WOODS | : | |
| Petitioner, | : | Case No. 1:00CV803 |
| v. | : | Judge Spiegel |
| WANZA JACKSON[1], Warden, | : | Magistrate Judge Perelman |
| Respondent. | : | |

**Warden Jackson's Motion to Dismiss
Woods' Habeas Petition as Time-Barred.**

Warden Jackson moves this Court to dismiss the above-captioned case because the claims presented by Mr. Woods in his Petition for a Writ of Habeas Corpus are barred by the one-year statute of limitations imposed by 28 U. S. C. § 2244(d). The attached Memorandum supports this Motion.

Respectfully submitted,

JIM PETRO
Attorney General

s/J. Joseph Bodine, Jr.
J. JOSEPH BODINE, JR. (0042132)
Assistant Attorney General
Trial Attorney for Respondent
Corrections Litigation Section
150 East Gay Street, 16th Floor
Columbus, OH 43215
(614) 644-7233
FAX: (614) 728-9327
jbodine@ag.state.oh.us

---

[1] Since the inception of this case, Warden Jackson has replaced Warden Brigano at the Warren Correctional Institution.

FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE WOODS | : | |
| Petitioner, | : | Case No. 1:00CV803 |
| v. | : | Judge Spiegel |
| WANZA JACKSON[2], Warden, | : | Magistrate Judge Perelman |
| Respondent. | : | |

**Memorandum in Support of
Warden Jackson's Motion to Dismiss**

**I.     Introduction.**

The Sixth Circuit remanded this case for further factual development. The Warden requested further factual development recognizing that Mr. Woods was in possession of certain facts that would conclusively demonstrate whether he diligently pursued his appellate rights. The Warden requested discovery from Mr. Woods, which he voluntarily provided.

Prior to Mr. Woods' disclosure of facts that are dispositive to his request for equitable tolling, Judge Spiegel referred this case to Magistrate Judge Perelman and directed that an evidentiary hearing be held. But now that Mr. Woods has finally been candid regarding his efforts to secure a direct appeal, the record conclusively demonstrates that he is not entitled to equitable tolling, and there are no operative facts that need be developed at an evidentiary hearing. Therefore, the Warden respectfully requests that the Court consider this Motion to Dismiss because the matters at issue can properly be resolved on the face of the pleadings.

---

[2] Since the inception of this case, Warden Jackson has replaced Warden Brigano at the Warren Correctional Institution.

Earlier in these proceedings, Mr. Woods aggressively attacked his trial counsel and the Ohio trial court and blamed them for not assuring that his case was reviewed on the merits by the state appellate courts. In particular, Mr. Woods repeatedly argued to this Court that his trial counsel, Bryan Perkins, "refused to file a timely Notice of Appeal to perfect Woods' appeal as of right." (Doc. 8, Woods' Traverse, pg. 4.) Those arguments convinced this Court to rule that the Ohio trial court failed to ensure that Mr. Woods was appointed counsel and a timely appeal, and as a consequence, this Court held that Mr. Woods was entitled to a lengthy period of equitable tolling of the AEDPA statute of limitations. Doc. 17.

As it turns out, Mr. Woods' arguments to this Court were misleading because Mr. Woods did not inform this Court that he waited 19 months after he was sentenced to seek an appeal. Now with the benefit of all of the facts of which this Court and the Warden were earlier deprived, Warden Jackson presents a complete procedural history of this case, and explains that the tardiness of Mr. Woods' habeas petition was due to his own conduct (or lack thereof) and that of his habeas counsel. Warden Jackson respectfully requests that Woods' petition for habeas corpus be dismissed.

**II.    Custody.**

Respondent Wanza Jackson is the Warden of the Warren Correctional Institution in Lebanon, Ohio. As Warden, she maintains custody of Bruce Woods, Inmate No. 329-889, pursuant to a judgment entry issued by the Hamilton County Court of Common Pleas noting Woods' convictions for three counts of aggravated burglary with firearm specifications, two counts of robbery and two counts of kidnapping with firearm specifications. (Ex. 1.) Mr. Woods brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### III. State-Court Proceedings.

Bruce Woods was convicted by a jury in Hamilton County, Ohio, of three counts of aggravated burglary with firearm specifications, two counts of robbery and two counts of kidnapping with firearm specifications. On June 14, 1996, he was ordered to serve an indefinite aggregate sentence of 75 to 125 years plus twelve years for the firearm specifications. (Ex. 1.)

After Mr. Woods was sentenced, the trial court advised Mr. Woods of his right to appeal and his right to have counsel appointed to represent him on appeal if he could not afford to hire a lawyer himself. (Ex. 2, Sentencing Hearing Transcript, pgs. 13-14.) At the conclusion of the sentencing hearing, Bryan Perkins, Mr. Woods' trial counsel informed the court that he would further advise Mr. Woods regarding his right to appeal. (Ex. 2, Sentencing Hearing Transcript, pg. 15.)

Mr. Woods took no action regarding his appeal. He did not retain Mr. Perkins for appeal like he did for trial; he did not request appointed counsel from the trial court; and he did not file a notice of appeal himself. Therefore, his conviction became final on July 14, 1996 – the date on which is right to appeal expired pursuant to Ohio R. App. P. 4(A). The AEDPA statute of limitations began tolling the next day and expired one year later on July 14, 1997.

Six hundred days after he was sentenced, Mr. Woods made his first attempt to secure counsel for an appeal. He did so by letter to the Ohio Public Defender dated February 4, 1998[3]. (Exs. 3 & 4.) The Public Defender promptly responded to Mr. Woods and requested that he fill out a questionnaire and financial statement, which the Public Defender received back from Mr. Woods on February 13, 1998. (Exs. 5 and 6.)

---

[3] The post-mark date of February 4, 1998 is barely legible, but Mr. Woods confirmed that date in his Memorandum in Response to the Warden's Discovery Request, Doc. # 47, pg. 2, ¶ 2.

On March 23, 1998, the Public Defender ordered the necessary transcription of Mr. Woods' sentencing hearing. (Ex. 7.) On May 26, 1998, Mr. Woods was informed that the Ohio Public Defender would represent him in the filing of a Motion for Delayed Appeal. (Ex. 8.) Despite the fact that the Public Defender assessed that Mr. Woods was "really late on this one" (Ex. 9), Mr. Woods did not file his *pro forma* Motion for Delayed Appeal until ninety-four (94) days later, on August 28, 1998.

In his Motion for Delayed Appeal, Mr. Woods informed the court of appeals that he consulted with his attorney, Mr. Perkins, and requested an appeal. He also charged that "Mr. Woods' trial counsel refused to file a timely Notice of Appeal to perfect Woods' appeal of right." (Ex. 10, Motion for Leave to File Delayed Appeal, pg. 4.)

In support of those allegations, Mr. Woods submitted an affidavit in which he explained that it took him a long time before he began to worry about the status of his appeal because he had been advised by other inmates that resolution of his appeal could take years. (Ex. 11, Affidavit of Bruce Woods, ¶ 11.) Mr. Woods further explained: "When I did learn that no appeal had been filed by my attorney for my conviction, I contacted the Ohio Public Defender and asked for assistance in filing a delayed appeal." (Ex. 11, Affidavit of Bruce Woods, ¶ 12.) Mr. Woods was intentionally vague in his affidavit regarding exactly when he began to monitor his appeal and specifically when he first sought aid in pursuing his appeal. His vagueness on that point was intentional because Mr. Woods had documentation conclusively demonstrating that he did not act until February 4, 1998, even though he had an affirmative "duty to monitor the status of his appeal." *Brown v. United States*, 20 Fed. Appx. 373, 375 (6th Cir. 2001).

Mr. Woods chose not to inform the court of appeals when he asked for an appeal, so it is not surprising that on October 1, 1998, the court of appeals denied his Motion for Delayed

Appeal because Mr. Woods "failed to provide this Court sufficient reasons for his failure to perfect an appeal as of right." (Ex. 12, Entry Overruling Motion for Leave to Appeal.) Mr. Woods appealed the denial of his Motion for Delayed appeal to the Supreme Court of Ohio, but that court denied his request for discretionary review on February 3, 1999, because it did not involve any substantial constitutional question. (Ex. 13.) The United States Supreme Court denied Woods' subsequent petition for writ of certiorari on October 4, 1999. (Ex. 14.)

Despite the fact that Mr. Woods' petition for writ of habeas corpus was already years late when the United States Supreme Court denied certiorari, the Mr. Woods, inexplicably, waited another 353 days before presenting his petition for writ of habeas corpus to this Court on September 21, 2000. The petition was filed 1165 days late.

## II. Woods' habeas claims were filed beyond the one-year statute of limitations imposed by the AEDPA.

Mr. Woods' petition for writ of habeas corpus was due on or before July 14, 1997. His current petition for writ of habeas corpus, however, was not filed until September 21, 2000 – 1165 days late.

A federal habeas petition attacking a conviction in the state courts must be filed within one year after the conviction becomes final pursuant to 28 U. S. C. § 2244, which provides, in relevant part, as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The statute of limitations runs from the date on which the judgment of conviction becomes final on direct appeal or upon the expiration of the time for seeking direct review, but the statute is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *See* 28 U.S.C. 2244(d)(2); *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000). The Sixth Circuit has held that a motion for a delayed appeal filed pursuant to Ohio S. Ct. R. Prac. 4(A) may toll the limitations period while it is pending, but it does not start the limitations period anew. *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001). The Sixth Circuit has treated motions for delayed appeal filed pursuant to Ohio R. App. 5(A) the same as those filed pursuant to S. Ct. R. Prac. 4(A); therefore, a motion for delayed appeal filed pursuant to Ohio R. App. P. 5(A) may toll the AEDPA statute of limitations, but such a filing does not operate to retrigger the statute of limitations and start it anew. *Granger v. Hurt*, Case No. 02-3088, slip op., 2004 U.S. App. LEXIS 1194 (6th Cir. Jan. 23, 2004)(equating Ohio R. App. P. 5(A) tolls but does not retrigger AEDPA statute of limitations) (Ex. 15); *see also Winkfield v. Bagley*, Case No. 02-3191, slip op., 2003 U.S. App. LEXIS 10789, (6th Cir. May 28, 2003)(Ohio R. App. P. 5(A) tolls but does not retrigger AEDPA statute of limitations) (Ex. 16).

Mr. Woods' conviction became final on July 14, 1996, when he failed to file a timely appeal. On July 15, 1996, the AEDPA statute of limitations began to run and expired one year later on July 14, 1997 because Mr. Woods filed no collateral action that tolled the statute of limitations during the intervening one year.

Even though Mr. Woods filed a series of appeals beginning with his Motion for Delayed Appeal on August 28, 1998 and concluding with the denial of his petition for writ of certiorari by the United States Supreme Court on October 4, 1999, they are of no consequence to the calculation of the AEDPA statute of limitations. "The tolling provision does not . . . 'revive' the

7

limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Rashid v. Khulman*, 991 F. Supp 254, 259 (S.D.N.Y. 1998); s*ee also Webster v. Moore*, 199 F.3d 1256, 1259 (11th cir. 2000)(holding that "[a]state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled").

Because Mr. Woods' failed attempt to secure a delayed appeal from the Ohio courts occurred after the AEDPA statute of limitations expired, the time during which those attempted appeals were pending in the Ohio courts did not have the effect of delaying the due date of Woods' petition beyond July 14, 1997. Warden Jackson asserts that Mr. Woods is not entitled to have his constitutional claim reviewed because he filed his petition for writ of habeas corpus 1165 days late. Warden Jackson respectfully requests that Mr. Woods' petition for writ of habeas corpus be dismissed.

**III.    Mr. Woods is not entitled to equitable tolling of the AEDPA statute of limitations because he was not diligent in pursuing his appellate rights.**

During the entire span of these habeas proceedings, Mr. Woods has claimed that he is entitled to equitable tolling of the AEDPA statute of limitations because of his trial counsel was ineffective for failing to perfect his appeal of right. Mr. Woods has never address his own lack of diligence in monitoring his direct appeal, seeking a delayed appeal or pursuing habeas relief. But now, 3 ½ years after initiating his habeas proceedings, Mr. Woods has finally been candid regarding the specifics of his obligation to diligently pursue his appellate rights. His candor, albeit tardy, conclusively demonstrates that he is not entitled to equitable tolling.

Mr. Woods seeks equitable tolling for 3 distinct time periods. He seeks equitable tolling for 205 days – the amount of time from the date the AEDPA statute of limitations expired until

the date Mr. Woods determined that his appeal was not filed and requested representation from the Public Defender. He requests equitable tolling for an additional period of 205 days – the amount of time from the date he asked the Public Defender to represent him until he filed his motion for delayed appeal. And he requests equitable tolling for a period of 353 days from the date the United States Supreme Court denied his petition for writ of certiorari to the filing of his petition for writ of habeas corpus. Warden Jackson asserts that permitting tolling on the facts of this case is not equitable and should not be permitted because Mr. Woods has not been diligent.

*Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001), governs whether a habeas petitioner should be granted the extraordinary relief of equitable tolling of the AEDPA statute of limitations. *Dunlap* set forth five criteria that must be met before a habeas court can properly exercise its equitable powers and permit a late filing of a habeas petition. Those factors are: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Id.* at 1004. Regardless of whether these criteria may exist, the *Dunlap* Court admonished that the doctrine of equitable tolling "should be applied sparingly." *Id.*

   **A.** **Mr. Woods should not be granted equitable tolling because he was not diligent in pursuing his appellate rights.**

Mr. Woods cannot demonstrate that any of the *Dunlap* criteria exist regarding the first 205 days for which he seeks equitable tolling. Mr. Woods had notice, both actual and constructive, of the filing requirement for his appeal. The trial court advised Mr. Woods of his appellate rights at the conclusion of his sentencing hearing. (Ex. 2.) Mr. Woods cannot, therefore, demonstrate that he was unaware of his right to appeal.

9

Mr. Woods was not diligent in pursuing his appeal. He did not accept the trial court's offer to provide him counsel, and he did not retain his trial counsel to represent him on appeal. In fact, Mr. Woods did nothing for 600 days (June 14, 1996 to February 4, 1998). Even if he mistakenly believed that his trial counsel was going to file an appeal on his behalf, Mr. Woods had an affirmative "duty to monitor the status of his appeal." *Brown v. United States*, 20 Fed. Appx. 373, 375 (6th Cir. 2001); *see also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)("one who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence"). Mr. Woods certainly had the ability to monitor the status of his own appeal; he in fact did so: "When I did learn that no appeal had been filed by my attorney for my conviction, I contacted the Office of the Ohio Public Defender and asked for assistance in filing a delayed appeal." (Ex. 11, Affidavit of Bruce Woods, Motion for Delayed Appeal.)

In determining what constitutes due diligence in monitoring the status of an appeal, the Sixth Circuit has held that "waiting for two months to inquire about the status of [an] appeal was not beyond "the exercise of due diligence" under § 2244 (d)(1)(D)." *Granger v. Hurt*, Case No. 02-3088, slip op., 2004 U.S. App. LEXIS 1194 (6th Cir. Jan. 23, 2004)(Ex. 15); In so ruling, the Sixth Circuit cited *Wimms v. United States*, 225 F.3d 186, 190 n.4 (2nd Cir. 2000), in which the Second Circuit held that a five-month delay in discovering that no appeal was filed was not unreasonable. Drawing guidance from *Granger* and the Sixth Circuit's reliance on *Wimms*, waiting two to five months to inquire about his appeal when he had heard nothing from this trial counsel may not have been unreasonable. But Mr. Woods waited much, much longer, and made no attempt to secure an appeal until 600 days (roughly 19 months) after he was sentenced. Mr. Woods was not diligent in any sense of the word; the third *Dunlap* criterion is not met.

It is important to note that with regard to the due diligence requirement of *Dunlap*, the alleged ineffectiveness of Mr. Woods' often maligned trial attorney is utterly irrelevant. Because Mr. Woods seeks equitable tolling, the determinative question is whether he was diligent in pursuing his rights. Even if it were to be assumed for the sake of argument that his trial counsel was grossly ineffective for not filing an appeal, it still does not change the equation. Mr. Woods had an obligation to monitor his own appeal, so even if his trial counsel dropped the ball and did not file his appeal, it still does not explain why Mr. Woods did nothing for 600 days after sentencing. Mr. Woods aggressively attempts to divert attention from his own malfeasance by criticizing his trial counsel, but Mr. Woods' trial counsel was not the problem. A defendant must stand up and assert his constitutional rights in a timely fashion in order to invoke them. Mr. Woods did not.

The fourth *Dunlap* criterion does not ask the extent to which the respondent may suffer prejudice if equitable tolling is permitted, it demands that there be an "absence" of prejudice to the respondent. That the Warden would suffer prejudice by permitting review of a habeas petition that is filed over 1000 days late is self-evident. The statute of limitations imposed by the AEDPA was enacted to end the very abuse of the habeas process in which Mr. Woods now engages. *See Dunlap*, 250 F.3d at 1006 (AEDPA enacted to "curb undue delays and abuses of the writ of habeas corpus.")

The fifth *Dunlap* criterion – the reasonableness in remaining ignorant of the legal requirement for filing his claim – offers Mr. Woods no solace. He is not now nor has he ever been ignorant of the legal requirements for filing an appeal. He was advised of his right to appeal by the trial court. He also cannot claim to have been unaware of the AEDPA statute of limitations because Mr. Woods has been represented by the Ohio Public Defender since May 26,

1998, and the Public Defender understands how the AEPDA statute of limitations works. Even if Mr. Woods were ignorant of the need to file pleadings in a timely fashion, courts are reluctant to find that a lack of actual notice of the AEDPA, or ignorance of the law in general, may excuse a late filing." *Starnes v. United States*, Case No. 99-5144, slip op., 20 Fed. Appx. 373 (6th Cir. Aug. 22, 2001)(*citing Fisher v. Johnson*, 174 F.3d 710-15 (5th cir. 1999)("ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse [late] filing."))(Ex. 17).

Warden Jackson asserts that Mr. Woods has not met his burden of proving any of the *Dunlap* criteria exist regarding the time period he waited before seeking help to file a motion for delayed appeal. The remaining two time periods for which he needs equitable tolling were delays caused by his habeas counsel, which do not merit equitable tolling either.

**B.    Mr. Woods was not diligent in filing his Motion for Delayed Appeal even after he secured habeas counsel.**

Mr. Woods finally requested counsel to pursue his direct appeal on February 4, 1998. He seeks equitable tolling for the 205 days from the date he requested counsel to August 28, 1998, the date on which he filed his Motion for Delayed Appeal. While the Warden does not quarrel with a portion of that 205 days (the time during which the public defender was obtaining documents and reviewing Mr. Woods' case), his habeas counsel's delay in filing the Motion for Delayed Appeal after agreeing to represent Mr. Woods was unreasonable.

After receiving Mr. Woods' request for representation, the Public Defender was prompt and diligent in executing his legal obligation to evaluate the merits of Mr. Woods' case. Within a matter of days, the Public Defender responded to Mr. Woods' request and secured the documents necessary to determine his poverty status. Within a matter of weeks, the Public Defender obtained a transcription of Mr. Woods' sentencing hearing, and by the 111th day after Mr. Woods requested counsel, the Public Defender agreed to represent him. The amount of time

it took the Public Defender to review Mr. Woods' case and decide to represent him was reasonable. It takes time to amass an old state-court record (even the Warden had to request a 30-day extension of time at the beginning of these proceedings to collect records), but the further delay of 94 days in filing a pro forma Motion for Delayed Appeal was not reasonable.

It is not as though the Motion for Delayed Appeal was unique in any way. Delayed appeals are filed by the dozen every year, and the simplicity of Mr. Woods' motion itself demonstrates that ease with which it was prepared. Warden Jackson asserts that it was not reasonable to postpone the filing of the Motion for Delayed Appeal for three months after Mr. Woods secured counsel, especially when his habeas counsel knew Woods was "really late on this one." (Ex. 9.) Mr. Woods should not be granted equitable tolling for that period of time.

### C. By waiting an additional year to file his habeas petition after the United States Supreme Court rejected his case, Mr. Woods forfeited any lingering right to habeas review he may have had.

Even if it were proper to excuse the fact that it took Mr. Woods 600 days from the date of sentencing to request counsel and then for the 205 days until his delayed appeal was filed, the delay between the denial of certiorari and the actual filing of his tardy habeas petition is inexcusable. *See Cook v. Stegall*, 295 F.3d 517, 518 (6th Cir. 2002)(concluding that equitable tolling was not appropriate where the petitioner filed his habeas petition one month late); *Dunlap*, 250 F.3d at 1010 (holding that petitioner was not entitled to equitable tolling where he filed his habeas petition more than two months late). After being rebuked by the court of appeals for failing "to provide this Court sufficient reasons for his failure to perfect an appeal as of right," (Ex. 12), after failing to articulate a substantial constitutional question to the Supreme Court of Ohio (Ex. 13), and after being denied review by the United States Supreme Court (Ex. 14), Mr. Woods waited another 353 days before filing his habeas petition. Mr. Woods was not

diligent in preparing his habeas petition after the Supreme Court rejected his cert petition; he was inert.

That the delay in filing the habeas petition after Mr. Woods requested counsel is attributable to his habeas counsel is of no consequence. A habeas petitioner "bears the risk in federal habeas for all attorney errors made in the course of the representation" because "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991). In order to minimize that risk, habeas petitioners must exercise reasonable diligence in overseeing the actions of their attorneys. *See Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001)("[M]any clients, whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands." Mr. Woods did not.

Whether attributable to his own neglect or that of his habeas counsel, the procedural history of this case demonstrates that Mr. Woods is not entitled to equitable tolling of the AEDPA statute of limitations. The purpose of the one-year statute of limitations imposed by the AEDPA was to "curb undue delays and abuses of the writ of habeas corpus." *Dunlap*, 250 F.3d at 1006. "Equitable tolling will not be available in most cases, as extensions of time will only be granted if "extraordinary circumstances" beyond a prisoner's control make it impossible to file a petition on time. We have no doubt that district judges will take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." *Id*. quoting *Calderon v. U.S. Dist. Ct. for the Cent. Dist. of Calif.*, 128 F.3d 1283, 1288-89 (9th Cir. 1997) *overruled on other grounds by* 163 F.3d 530 (9th Cir. 1998)(en banc).

Warden Jackson asserts that Mr. Woods has not surmounted the "high hurdle" erected by *Dunlap*. Rather than demonstrating that he was diligent in the monitoring of his case and in pursuit of his statutory right to habeas review, Mr. Woods maligned his trial attorney and did not disclose facts that conclusively contradict his claim that he exercised due diligence. There were no circumstances beyond his control that prevented him from filing his habeas petition on time. His own delinquency in requesting counsel, filing his motion for a delayed appeal, and the painfully long delay in filing his habeas petition after the United States Supreme Court declined to review his case were delays of his own accord or those of his habeas counsel. There are no "extraordinary circumstances" that justify the filing of his habeas petition 1165 days late. And for those reasons, Warden Jackson respectfully requests that Mr. Woods' petition for writ of habeas corpus be dismissed.

### III. Conclusion.

Warden Jackson moves this honorable federal habeas corpus Court to dismiss Woods' petition for writ of habeas corpus for the reasons set forth herein. Because the case can be decided from the record, no further hearing should be necessary. *See Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). This is not a waiver of hearing.

                    Respectfully submitted,

                    JIM PETRO
                    Attorney General

                    <u>s/J. Joseph Bodine, Jr.</u>
                    J. JOSEPH BODINE, JR. (0042132)
                    Assistant Attorney General
                    Trial Attorney for Respondent
                    Corrections Litigation Section
                    150 East Gay Street, 16th Floor
                    Columbus, OH 43215-6001
                    (614) 644-7233

FAX: (614) 728-9327
jbodine@ag.state.oh.us

CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2004, a copy of the foregoing *Motion to Dismiss* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/J. Joseph Bodine, Jr.
J. JOSEPH BODINE, JR. (0042132)