IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BRUCE WOODS,

    Petitioner-Appellant,

v.

ANTHONY BRIGANO, Warden,

    Respondent-Appellee.

Case No. 02-4264

Habeas Corpus
Section 2254

---

On Appeal From the United States District Court
For the Southern District of Ohio, Western Division

---

### Warden Brigano's Response to Bruce Woods' Motion to Disqualify Counsel

---

JIM PETRO (0022096)
Attorney General

J. JOSEPH BODINE, JR. (0042132)
Assistant Attorney General
150 East Gay Street, 16th Floor
Columbus, Ohio 43215-3400
614-644-7233
614-728-9327 fax



EXHIBIT A

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

BRUCE WOODS,

    Petitioner-Appellant,

v.

ANTHONY BRIGANO, Warden,

    Respondent-Appellee.

Case No. 02-4264

Habeas Corpus
Section 2254

On Appeal From the United States District Court
For the Southern District of Ohio, Western Division

## Warden Brigano's Response to Bruce Woods' Motion to Disqualify Counsel

Bruce Woods, via the Ohio Public Defender, moved this Court to remove Counsel Bodine from this matter, alleging, among other things, that Mr. Bodine represented Mr. Woods while he was a public defender and that Mr. Bodine's representation of Warden Brigano now presents a conflict of interest. The Warden asserts that no such conflict exists because Mr. Bodine never represented Mr. Woods in any capacity. Because no conflict exists, Warden Brigano respectfully urges this Court to deny the Public Defender's motion.

2

The Public Defender explains that Bruce Woods was Mr. Bodine's client when he was a public defender and that Mr. Bodine was privy to strategic conversations regarding Mr. Woods' case. The public defender provides no documentation in support of these asserted facts because no such support exists Mr. Bodine never represented Mr. Woods.

The record that is before this Court unequivocally demonstrates that Mr. Bodine never represented Bruce Woods. In fact, the record shows that the same attorney, Thomas R. Wetterer, represented Mr. Woods from August 28, 1998 to December 19, 2003. Ken Lee then replaced Mr. Wetterer for purposes of oral argument. The record, therefore, refutes the Public Defender's accusations.

In addition to the record in this case, Warden Brigano submits the affidavit of Mr. Bodine in which he attests that he never represented Bruce Woods. Mr. Bodine, in fact, never heard of Woods or his case until just recently when he was assigned to argue the case before this Court. Given that Mr. Bodine has never met Mr. Woods, never worked on his case in any capacity as a public defender, and never engaged in a discussion of his case with his public defender(s), the Warden asserts that there is no conflict of interest – actual or perceived.

This Court has had occasion to address the circumstances justifying attorney disqualification in *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222 (6th Cir. 1988). *Manning* held that because the modern practice of law commonly sees the migration of lawyers from one firm to another, motions to disqualify

3

counsel should be carefully scrutinized and granted only in limited circumstances.

*Id.* at 224

> If the case reports are any indication, a motion to vicariously disqualify the law firm of an attorney who is himself disqualified as the result of his possession of the confidences of a former client, is becoming an increasingly popular litigation technique. Unquestionably, the ability to deny one's opponent the services of capable counsel, is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice.

*Id.*

*Manning* set forth the criteria for determining whether a lawyer's migration to another law firm requires his disqualification or the disqualification of the entire firm, and the Supreme Court of Ohio adopted the *Manning* criteria in *Kala v. Aluminum Smelting & Refining Co.*, 688 N.E.2d 258, 268 (Ohio 1998). The Public Defender correctly cites to *Kala* but does not endeavor to apply it to the facts of this case.

*Kala* defines the circumstances under which an attorney, or his entire firm, should be precluded from appearing in a matter when an attorney changes employment. But an application of the *Kala* factors also demonstrates that disqualification is not appropriate in this case. This is especially so because, as *Kala* noted:

> An attorney's and/or law firm's most valuable asset is their professional reputation for competence, and above all honesty and integrity, which should not be jeopardized in a summary type of disqualification proceeding of this nature. As court proceedings are

4

> matters of public record, a news media report concerning a summary disqualification order, based on a scant record of this type, can do irreparable harm to an attorney's or law firm's professional reputation. We must recognize that the great majority of lawyers, as officers of the court, do conduct themselves well within the bounds of the Code of Professional Responsibility.

*Id.* at 267, *quoting Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1275 (7th Cir. 1983).

The *Kala* criteria are:

1. Is there a substantial relationship between the matter at issue and the matter of the former firm's prior representation?

2. If there is a substantial relationship between these matters, is there a presumption of shared confidences within the former firm rebutted by the evidence that the attorney had no personal contact with or knowledge of the related matter.

3. If the attorney did have personal contact with or knowledge of the related matter, did the new law firm erect adequate and timely screens to rebut a presumption of shared confidences with the new firm so as to avoid imputed disqualification.

*Kala*, 688 N.E.2d at 268. Warden Brigano asserts that when these criteria are applied to this case, no conflict of interest exists.

The "matter at issue" in *Woods v. Brigano* is whether Mr. Woods is entitled to equitable tolling of the AEDPA statute of limitations because his attorneys failed to properly appeal his conviction to the state appellate court. In Woods' merit brief, and throughout the federal court proceedings, the Public Defender has consistently argued that Woods' trial counsel failed to file a notice of appeal in his case. The record demonstrates otherwise — counsel did file a timely notice of

5

appeal, but the appeal was dismissed five months later because appellate counsel did not file the record. The real question is whether the public defender acted properly by not filing a notice of delayed appeal until 24 ½ months after Woods' conviction and 13 ½ months after the AEDPA statute of limitations expired. Also at issue is the propriety of the Public Defender's failure to file a petition for writ habeas corpus on behalf of Woods until 11 ½ months after the United States Supreme Court denied Woods' petition for writ of certiorari.

As to these matters, Mr. Bodine has no personal knowledge. He has never met Mr. Woods; until several weeks ago when he was assigned to the case, he had no knowledge that *Woods v. Brigano* existed. Mr. Bodine has never reviewed Woods' file or engaged in discussions of the case with Woods' public defender(s). Mr. Bodine certainly did not participate in any decision to make an argument to the federal courts that trial counsel never filed a notice of appeal when the record unquestionably demonstrates that state-court counsel did, in fact, file one.

Having absolutely no knowledge of Mr. Woods' case beyond the public record reviewed to prepare for oral argument, no conflict exists. Even the first of the *Kala* criteria does not exist in this case. Had Mr. Bodine any knowledge of Mr. Woods' case or participated in any discussions with any defender regarding the case, he would have agreed that the second of *Kala's* criteria were implicated and would not have entered an appearance.

Mr. Bodine was a public defender in the death penalty division from 1993 to 2003, and he had little interaction with non-capital cases. Despite that fact, the Public Defender argues that merely by virtue of the fact that Mr. Bodine was a public defender, he must be considered Mr. Woods' attorney. The Public Defender is suggesting to this Court that public defenders are fungible. They are not. In *Ohio v. Lentz*, 639 N.E.2d 784 (1994), the Supreme Court of Ohio held that no conflict of interest may be presumed when one public defender alleges the ineffectiveness of another public defender from the same office. "A lawyer's supreme duty of loyalty is to his client (EC 5-1), and that is a duty that we should not assume will be ignored due to the possibility of embarrassing a co-worker." *Id.* at 531.

There must be an actual conflict of interest between public defenders before the public defender's office must be disqualified from a case in which a public defender's effectiveness is challenged. The same logic applies to public defenders that later assume other governmental jobs. Absent an actual conflict of interest, as defined by the *Kala* criteria, disqualification of that particular lawyer or an entire firm is not appropriate. Otherwise, no public defender could ever become a prosecutor or vice versa.

The Warden agrees with the Public Defender that Ethical Consideration 9-2 of the Code of Professional Responsibility is an important consideration in this

matter. The Warden, however, suggests that the entire ethical consideration should be read, not just the selected parts of it the Public Defender cites.

In his motion, the Public Defender quotes EC9-2 as:

> Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to a laymen to be unethical. * * * When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity * * * of the legal system and the legal profession.

Mot. To Disqualify at pg. 5. The entire text of EC 9-2 is more compelling:

> Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. On occasion, ethical conduct of a lawyer may appear to a laymen to be unethical. *In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and promptly inform his client of material developments in matters being handled for the client. While a lawyer should guard against otherwise proper conduct that has a tendency to diminish public confidence in the legal system or in the legal profession, his duty to clients or to the public should never subordinate merely because the full discharge of his obligation may be misunderstood or may tend to subject him or the legal profession to criticism.* When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity *and efficiency* of the legal system and the legal profession.

(Emphasis added.) A public misunderstanding of this case that could result in diminished public confidence in the legal system may be avoided by an accurate presentation of the facts that underlie the Public Defender's motion. Mr. Bodine never had any involvement in Mr. Woods' case and never participated in strategy discussions that resulted in arguments that are contradicted by the record. Even so, before entering an appearance in *Woods v. Brigano*, Mr. Bodine carefully

8

considered the applicable provisions of the Code of Professional Responsibility, in particular EC 7-14:

> Responsibility of government lawyer
>
> A government lawyer who has discretionary power relative to litigation should refrain from instituting or continuing litigation that is obviously unfair. A government lawyer no having such discretionary power who believes there is lack of merit in a controversy submitted to him should so advise his superiors and recommend the avoidance of unfair litigation. A government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record, and he should not use his position or the economic power of the government to harass parties or to bring about unjust settlements or results.

Attorney Bodine is aware of his professional responsibilities to the Court and to his present and former clients. He is aware that his fiduciary relationship with his former clients remains in tact and must be protected (DR 4-101); he is aware that he may not labor under a conflict of interest (DR 5-105); he is aware that he must practice before this Court in a dignified matter (EC 7-20); he is aware that he must represent his client within the bounds of the law (DR 7-102); and he is aware that he may not pursue a frivolous appeal before this Court. Fed. R. App. P. 38.

The only knowledge Mr. Bodine has regarding *Woods v. Brigano* comes from his review of the public records in the case. Having never been involved in any aspect of Mr. Woods' case until just recently, no conflict of interest exists that requires Mr. Bodine's disqualification from this case. The Ohio Public Defender's

9

motion to remove attorney Bodine has nothing to do with any conflict of interest because one does not exist.

Warden Brigano respectfully requests that the Public Defender's motion to disqualify Attorney Bodine be denied.

Respectfully submitted,

JIM PETRO (0022096)
Attorney General

J. JOSEPH BODINE, JR. (0042132)
Senior Assistant Attorney General
150 East Gay Street, 16th Floor
Columbus, Ohio 43215-3400
614-644-7233
614-728-9327 fax

Counsel for Respondent-Appellee
Ohio Adult Parole Authority

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of *Warden Brigano's Response to Bruce Woods' Motion to Disqualify Counsel* has been forwarded to Wood's counsel, Ken Lee, Office of the Ohio Public Defender, 8 East Long Street, Columbus, Ohio 43215, via facsimile and by regular U. S. mail on this 29th day of January, 2004.

                                             J. JOSEPH BODINE, JR. (0042132)
                                             Senior Assistant Attorney General

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BRUCE WOODS,

    Petitioner-Appellant,

v.

    Case No. 02-4264

ANTHONY BRIGANO, Warden,

    Habeas Corpus
    Section 2254

    Respondent-Appellee.

Affidavit of J. Joseph Bodine, Jr.

STATE OF OHIO    :
    : ss:
COUNTY OF FRANKLIN    :

Now comes the Affiant, J. Joseph Bodine, Jr., being duly cautioned and sworn under oath, and states as follows:

1. I am an attorney licensed to practice law in the State of Ohio.

2. I am admitted to practice in the United States Court of Appeals for the Sixth Circuit.

3. From February 1993 to December 2003, I was an assistant state public defender.

4. During my tenure as a public defender, with two exceptions, I only represented death row inmates.

5. The only two non-capital cases on which I worked as a public defender were *Edwards v. Carpenter* and *White v. Schotten*. I represented Edward Carpenter for purposes of briefing and argument in the United States Supreme Court and proceedings on remand. I represented Mr. White for purposes of responding the State of Ohio's petition for writ of certiorari in *White v. Schotten*.

6. The only other non-capital case on which I was consulted in the last few years was *Small v. Brigano*. In that case, Mr. Small's public defender consulted me regarding an ethical concern he had in the case. I advised him regarding what I thought his professional responsibility was and had no other interaction with the case.

7. Other than *Edwards*, *White* and *Small*, I worked on no other non-capital cases during my tenure as a public defender.

8. On December 29, 2003, I started working for the Ohio Attorney General as an assistant attorney general.

9. I learned about *Woods v. Brigano* for the first time when I was assigned to argue the case approximately two weeks ago.

10. I never met Mr. Woods; I have never represented Mr. Woods; I have never reviewed any portion of his defense file; and I have never had any conversations about the case with his attorney(s).

11. The pending appeal involves the propriety of granting equitable tolling in a case filed several years after the AEDPA statute of limitations expired.

12. I have no financial or other personal interest in the case other than to represent Warden Brigano to the best of my abilities within the bounds of the law.

Further affiant sayeth not.

J. JOSEPH BODINE, JR.

Sworn to in my presence and subscribed before me this 29th day of January, 2004, in the County of Franklin, in the City of Columbus, in the State of Ohio

PHILIP A. KING
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

Notary Public
My commission expires:

13