UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRUCE WOODS,

    Petitioner,                                              Case No.  1:00cv803

vs.

                                                               Judge Spiegel
WANZA JACKSON,                                              M.J. Black

    Respondent.

_____

**PETITIONER'S RULE 7 MOTION TO EXPAND THE RECORD**
_____

        Petitioner, under Rule 7 of the Rules Governing Section 2254 Cases in the United States district courts, respectfully requests that this Court expand the record to include the items described herein and submitted as Exhibits hereto.

                                                                    Respectfully Submitted,

                                                                    DAVID H. BODIKER
                                                                    OHIO PUBLIC DEFENDER

                                                                    _s/Gregory W. Meyers_____
                                                                    GREGORY W. MEYERS (0014887)
                                                                    Senior Assistant Public Defender

                                                                    T. KENNETH LEE  (0065158)
                                                                    Assistant State Public Defender

                                                                    Office of the Ohio Public Defender
                                                                    8 East Long Street, 11th FL
                                                                    Columbus, Ohio 43215
                                                                    614 466 5394
                                                                    614 728 3670 Fax

                                                                   COUNSEL FOR PETITIONER

**MEMORANDUM IN SUPPORT**

I.    **Overview.**

Petitioner respectfully requests that this Court expand the record to include the documents identified herein. Petitioner first lists the documents, which are attached as exhibits; then explains the relevance of each document; and finishes by outlined the Rule 7 jurisprudence in support of his motion.

Petitioner asserts that the only document he needs to merit relief is the deposition of his trial and appellate counsel, Bryan Perkins (including the deposition exhibits). To support arguments in the alternative, he also requests that the record be expanded with additional documents that the parties exchanged during discovery. Petitioner contends that:

1) his trial/appellate counsel's deposition testimony makes it clear that Petitioner suffered ineffective assistance of appellate counsel, which created a state impediment to his right to pursue habeas relief;

2) based on his appellate counsel's conduct, Petitioner's conduct, and applicable precedent, Petitioner is entitled to equitable tolling and habeas relief based on the period of time between his sentencing and when he contacted the Ohio Public Defender's Office (OPD); and

3) no impediments bar relief based on what happened after Petitioner contacted OPD.

If this Court grants the instant motion to expand the record, Petitioner will argue that he is entitled to summary judgment based on the facts and the law. If this Court denies all or part of the instant motion to expand the record, Petitioner will move for an evidentiary hearing, seeking to use that pathway to bring the following evidence before this Court.

**II.     Documents Petitioner Moves Into The Record.**

Petitioner respectfully requests that this Court expand the record with the following documents:

**Exhibits 1.1 and 1.2:**  Deposition transcript (Ex. 1.1 contains pages 1 through 40; Ex. 1.2 contains pages 41 through 70 plus the deposition exhibits) of Petitioner's trial and appellate attorney, Bryan Perkins, taken on 12-14-04, and the seven (7) Deposition Exhibits attached thereto, consisting of:

**Deposition Exhibit 1:**  Attorney Perkins handwritten notes from his first contact with Petitioner;

**Deposition Exhibit 2:**  A letter dated 4-4-96 from Perkins to Petitioner that bears the correct trial-court case number (versus the number under which attorney Perkins eventually filed a notice of appeal);

**Deposition Exhibit 3:**  A notice of appeal Perkins filed for Petitioner under the wrong trial-court case number (96-345 instead of 96-1386);

**Deposition Exhibit 4:**  The State appellate court docket generated in connection with the notice of appeal Perkins filed under the wrong trial-court case number, and showing that (A) the docket reflected the filing of an apparently non-existent Poverty Affidavit (which operated a waiver of the filing fee and other costs), and (B) the appeal was dismissed without counsel being appointed or a brief being filed;

**Deposition Exhibit 5:**  The Criminal docket Statement Perkins eventually filed in the appellate case reflecting the fact that the Court Reporter expected a down payment towards the cost of the trial transcript before it would be prepared and filed for appeal – this document also relates back to the wrong trial-court case number;

**Deposition Exhibit 6:**  A sheet of paper containing copies of two notices sent by the appellate court to Perkins pertaining to a show cause order for the missing Criminal Docket Statement (which should have been filed with the notice of appeal), and a scheduling order issued upon the filing of the Criminal Docket Statement; and

**Deposition Exhibit 7:**  A sheet of paper containing a copy of the notice sent by the appellate court to Perkins informing him that the appeal had been dismissed on 12-5-96.

**Exhibit 2:**  A letter dated 12-29-04 from Perkins to Petitioner's habeas counsel written to address two questions asked at the deposition that could not be answered until attorney Perkins (1) searched for addition files related to Petitioner (none found), and (2) reviewed his cancelled checks from 1996 to determine if he had paid a filing fee when he filed a notice of appeal for Petitioner under the wrong trial-court case number (no check found).

**Exhibit 3:** Petitioner's affidavit that was attached to his State court motion for delayed appeal.

**Exhibits 4.1 and 4.2:** Petitioner's prison records from the Ohio Department of Rehabilitation and Corrections, produced by Respondent in response to Petitioner's discovery request, which, among other things, corroborate mental health issues relevant to Petitioner's equitable tolling argument. Exhibit 3.1 contains pages 1 through 19; Exhibit 3.2 contains pages 20 through 42 (page numbers added to originals on lower right-hand corner).

**Exhibits 5.1 through 5.15:** Includes fifteen (15) documents Petitioner disclosed to Respondent during discovery, relating to Petitioner's contact with the Ohio Public Defender's Office (OPD) and OPD's response to Petitioner's request for help:

**Exhibit 5.1:** Petitioner's first letter to the Office of the Ohio Public Defender (OPD), with a copy of the envelope postmarked 2-4-98 (2 pages).

**Exhibit 5.2:** OPD's response to Petitioner's first letter, dated 2-6-98 (one page).

**Exhibit 5.3:** Petitioner's 2-11-98 response to OPD's 2-6-98 correspondence (dated by Petitioner on 2-11-98, received by OPD on 2-13-98), portions redacted to preserve privilege(s) (five pages).

**Exhibit 5.4:** An internal OPD e-mail, dated 3-15-98, from intake employee James Anadell to support staff personnel Mary Dunning and Assistant Public Defender (APD) Felice Harris, assigning Petitioner's case to APD Harris, informing APD Harris of steps taken so far regarding Petitioner's request for representation, and suggesting that APD Harris get the sentencing transcript (one page).

**Exhibit 5.5:** An internal OPD e-mail, dated 3-20-98, from APD Felice Harris to support staff personnel Debbie McCandlish, requesting a copy of Petitioner's sentencing transcript, and bearing hand-written notations by Ms. McCandlish dated 3-23-98 (one page).

**Exhibit 5.6:** A letter dated 3-23-98 from Ms. McCandlish to a court reporter requesting the transcript of Petitioner's sentencing hearing (one page).

**Exhibit 5.7:** Another copy of the internal OPD e-mail, dated 3-20-98, from APD Felice Harris to support staff personnel Debbie McCandlish – this one bears a hand-written notation by APD Harris dated 3-24-98 (one page).

**Exhibit 5.8:** An internal OPD document indicating payment to the court reporter for Petitioner's sentencing transcript by a voucher dated 4-15-98 (one page).

**Exhibit 5.9:** An internal OPD document reflecting APD Harris's resignation from her employment with OPD effective 4-18-04, portions redacted to protect APD Harris's privacy interests (one page).

4

**Exhibit 5.10:** An internal OPD e-mail, dated 5-5-98, from OPD paralegal Nancy DeCatur to APD Bob Lane (who was APD Harris's supervisor) regarding Ms. DeCatur's telephone contact with Petitioner's trial-level attorney Bryan Perkins, portions redacted to preserve privilege(s) (one page).

**Exhibit 5.11:** A letter dated 5-13-98 from APD Supervising Attorney Bob Lane to Petitioner, portions redacted to preserve privilege(s) (one page).

**Exhibit 5.12:** A letter from Petitioner to APD Bob Lane, which, Petitioner's counsel assume, should be dated 5-15-98, not 3-15-98 – see envelope postmarked 5-15-98 – responding to APD Bob Lane's 5-13-98 letter to Petitioner, portions redacted to preserve privilege(s) (three pages).

**Exhibit 5.13:** An internal OPD e-mail, dated 5-19-98, from intake employee James Anadell to support staff personnel Mary Dunning, copied to APD Bob Lane and APD Tom Wetterer, indicating the reassignment of Petitioner's case to APD Tom Wetterer (one page).

**Exhibit 5.14:** An internal OPD printout from the "Time Matters" computer program (used by OPD intake personnel to track case activity) which tracks certain activity in Petitioner's case starting on 2-6-98 and ending on 5-19-98 (three pages).

**Exhibit 5.15:** A letter dated 5-26-98 from APD Wetterer to Petitioner saying he will prepare and file a motion for delayed appeal for Petitioner, portions redacted to preserve privilege(s).

**III.   All Documents Are Relevant To Petitioner's Main Arguments And Arguments In The Alternative.**

Petitioner asserts that all of these documents are relevant to either his main argument for relief, or to his arguments in the alternative advanced in response to Respondent's attempts to defeat Petitioner's habeas claims.

**Exhibits 1.1, 1.2, and 2: Trial Attorney's Deposition And His Follow-up Letter To Petitioner's Habeas Counsel.**

Petitioner's trial and appellate attorney's deposition, and his follow-up letter to habeas counsel, prove that Petitioner is entitled to equitable tolling and habeas relief on the claims of ineffective assistance of appellate counsel and the right to a direct appeal. The deposition of

5

attorney Perkins proves at least the following points in support of Petitioner's argument in favor of equitable tolling, and in favor of relief on the merits of his claims.

1) Attorney Perkins, who represented Petitioner at trial, knew Petitioner wanted to appeal his conviction; knew the Petitioner wanted Perkins to represent him on appeal; and knew that Petitioner was indigent (others had paid Perkins's fee for his trial representation, and were talking with Perkins about paying him for the appeal). Exhibit 1.1, p. 30; Exhibit 1.2, pp. 41-42.

2) Perkins agreed to appeal Petitioner's conviction subject to fee negotiations he conducted with Petitioner's supporters, but not with Petitioner himself. Exhibit 1.1, pp. 23-26, 31-33.

3) Shortly after Petitioner's sentencing, Perkins had his one and only direct conversation with Petitioner regarding his appeal. Exhibit 1.1, pp. 23-26, 29.

4) Shortly after Petitioner's sentencing, he was transferred from a county jail to a state prison facility, after which Perkins had no communication whatsoever with Petitioner himself about the appeal at issue – Perkins never visited Petitioner in prison, never accepted any collect phone calls from Petitioner, and never had any written correspondence with Petitioner. Exhibit 1.1, pp. 25-29; Exhibit 1.2, p. 59.

5) Notwithstanding unsettled fee negotiations, because Perkins knew Petitioner wanted an appeal, Perkins attempted to perfect the appeal and preserve Petitioner's rights by filing a notice of appeal; however, the notice of appeal was filed under the wrong trial court case number (96-345 instead of 96-1386). Perkins filed the notice of appeal under the case number assigned to the first indictment handed down against Petitioner. Exhibit 1.1, pp. 37-40; Deposition Exhibit 3.

6) Before Perkins entered his appearance of counsel for Petitioner in the trial court, a superseding indictment issued which bore the case number under which Petitioner was eventually convicted and sentenced (96-1386). Perkins was aware of this superseding indictment and case number: it appears on the first letter he wrote Petitioner, and it appears on pre-trial motions he filed on Petitioner's behalf. Exhibit 1.1, pp. 15-20; Deposition Exhibit 2.

7) Perkins had received no money towards his fee, the filing fee, or the cost of paying for the trial transcript when he filed the notice of appeal in the wrong case number. Exhibit 1.2, pp. 41-42.

8) Perkins mistakenly filed a notice of appeal under the wrong case number. Perkins did not catch this error until eight years later when he checked the trial and appellate court dockets after learning that Petitioner's habeas counsel wanted a copy of his file, and wanted to take his deposition. Exhibit 1.1, pp. 6-7; Exhibit 1.2, pp. 60-61.

6

9) When Perkins filed the notice of appeal, the state appellate court's docket wound up containing an entry indicating a poverty affidavit had been contemporaneously filed, which operated to waive the initial filing fee and the final costs associated with what became an aborted-by-default appeal. Perkins agrees that the appellate court file contains no poverty affidavit. Perkins knew that the appellate court would not accept a notice of appeal without either the payment of a filing fee or a poverty affidavit. Exhibit 1.2, pp. 42-47, 58-59.

10) Perkins never procured a poverty affidavit from Petitioner, although he knew that Petitioner himself was indigent with respect to paying him or any other lawyer to prosecute and pay the costs associated with an appeal. Exhibit 1.2, pp. 41-42.

11) Perkins did not recall paying the filing fee on Petitioner's behalf in order to preserve his timely right to appeal (or at least that is what Perkins thought he was doing when he unwittingly filed the notice of appeal under the wrong case number). Per a request made during the deposition, after the deposition Perkins reviewed his cancelled checks during the relevant time period and confirmed by letter to habeas counsel that he had not paid the filing fee for Petitioner. Exhbit 1.2, pp. 59-60; Deposition Exhibit 2.

12) Perkins had done both appointed and retained appellate work before he represented Petitioner. Exhibit 1.1, pp. 5, 22-23. Perkins could have asked to have appellate counsel appointed for Petitioner in light of the fact he had not been retained nor given any money to cover the cost of preparing the trial transcript. Perkins never took steps to have appellate counsel appointed for Petitioner. Exhibit 1.2, pp. 66-68.

13) Perkins was surprised in hindsight that he did not have a larger file relevant to his representation of Petitioner. Exhibit 1.1, p. 6. Perkins acknowledged that the file he had did not contain copies of any documents related to his efforts to perfect Petitioner's appeal; nor did it contain notices sent to him by the appellate court, which notices Perkins acknowledged he must have received (although he had no specific recollection that he did receive them eight years ago). Exhibit 1.2, pp. 54-47.

14) Per a request made during the deposition, after the deposition Perkins looked for but did not find any additional files related to his work for Petitioner. Exhibit 1.2, pp. 59-60; Deposition Exhibit 2.

15) After attempting to perfect an appeal, Perkins initially failed to file a Criminal Docket Statement, which he eventually did after receiving a "show cause" Order from the state appellate court. Exhibit 1.2, pp. 50-52; Deposition Exhibits 5 & 6.

16) Upon the filing of the Criminal Docket Statement, the appellate court mailed a briefing schedule to Perkins, which he acknowledged he would have received, although he had no recollection of receiving it. Exhibit 1.2, pp. 50-52; Deposition Exhibit 6.

17) Perkins failed to follow the briefing schedule: he took no steps to perfect the record (had he done so, he would have discovered the error related to the trial court case number); he

    filed no brief.  The appeal filed under the wrong case number was dismissed for want of prosecution on December 5, 1996.  Deposition Exhibit 7.  Perkins did nothing in response to the dismissal of the appeal.  As with the briefing schedule, it seems from Perkins' deposition testimony that the dismissal of the appeal simply did not register on his professional radar screen.  Exhibit 1.2, pp. 68-69.

18) Overall, Perkins had ongoing contact with Petitioner's supporters, but he could not recall the names of persons with whom he had these discussions.  Perkins never reduced anything to writing regarding the fee or subsequent matters related to acquiring payment.  Perkins has no recollection of ever informing Petitioner or his supporters about the events related to Perkins' ineffective attempt to preserve Petitioner's appellate rights.  Perkins never received any payment towards the fee he established for prosecuting Petitioner's appeal.  Perkins' efforts to preserve Petitioner's appellate rights ended with a whimper, not a bang – it faded away.  Exhibit 1.2, pp. 68-69.  Perkins never directly told Petitioner, or Petitioner's supporters, that Petitioner would lose his right to appeal absent payment of Perkins' fee; Perkins never told them that the appeal he thought he had started was dismissed.

    These facts clearly support granting Petitioner equitable tolling.  Attorney Perkins' sloppy and constitutional ineffective interaction with Petitioner regarding the appeal corroborate why Petitioner believed Perkins was prosecuting an appeal.

    Additionally, these facts unquestionably support Petitioner's claim that Perkins' rendered constitutionally ineffective assistance of counsel with respect to Petitioner's right to appeal.  By failing to file a timely notice of appeal under the right case number; by failing to catch and correct this error in a timely manner; by failing to even attempt to perfect the record and file a brief; and by allowing Petitioner's appellate rights to "fade away" with a dismissal for want of prosecution, Perkins' conduct violated Petitioner's constitutional rights by falling below an objectively reasonably standard of performance, which presumptively prejudiced Petitioner.  See Griffin v. Illinois, 351 U.S. 12, 18 (1956); Evitts v. Lucey, 469 U.S. 387, 396 (1985); Douglas v. California, 372 U.S. 353, 358 (1963); Roe v. Flores-Ortega, 528 U.S. 470 (2000) (A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable); Dietz v. Money, 391 F. 3d 804, 801 (2004) ("This court has held

that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment."); White v. Schotten, 201 F.3d 743, 752 (6th Cir. 2000) (An attorney's failure to abide by "established deadlines in handling a client's appeal is conduct falling below the minimal standards of competency that federal case law has imposed upon counsel to satisfy constitutional safeguards"); and Ludwig v. U.S., 162 F.3d 456, 459 (6th Cir. 1998) (The failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment").

**Exhibits 3 and 4: Petitioner's Prison Records And Affidavit Filed In Support Of His Delayed Appeal In State Court.**

Perkins' deposition testimony corroborates the core, material facts set forth in the affidavit Petitioner filed in support of his motion for delayed appeal in state court. Exhibit 3. As far as Petitioner knew, Perkins was prosecuting his appeal. When the affidavit was executed, Petitioner (who was represented) apparently did not realize Perkins had filed a notice of appeal in the wrong case number, but that act – coupled with the abandonment of the appeal by default – equals the complete failure to file a timely notice of appeal that perfected the appeal Petitioner asked for and needed. Obviously, filing a notice of appeal in a dismissed case hardly undercuts Petitioner's assertion that Perkins failed to file a notice of appeal. To argue otherwise would render the right to appeal an absurdity (given some of Respondent's arguments before this Court, Petitioner has to wonder if Respondent intends to muster just this sort of argument).

Clearly, Perkins failed to communicate with Petitioner. As far as Petitioner knew when he executed the affidavit, it appears he thought Perkins failed to communicate with Petitioner's supporters. In essence, Petitioner is correct. If there's anything to be gleaned from Perkins' deposition testimony, it is the conclusion that there was a failure to communicate – a failure that

9

constitutes a violation of Petitioner's right to effective assistance of appellate counsel; and a failure that supports Petitioner's argument for equitable tolling.

The prison records in Exhibits 4.1 and 4.2 further corroborate Petitioner's affidavit and support his argument for equitable tolling. As will be detailed in later pleadings (at this stage, Petitioner's anticipate filing a motion for summary judgment), the prison records corroborate the fact that Petitioner suffered mental health issues that relate to his equitable tolling argument.

**Exhibit 5.1 through 5.15: Records Related To Petitioner's Contact With The Ohio Public Defender, Starting With His First Letter And Ending With a Letter From The Assistant Public Defender Who Eventually Filed The Motion For Delayed Appeal.**

This set of fifteen (15) documents pertains to the period of time from when Petitioner first contacted the Office of the Ohio Public Defender (OPD) through the assignment of his case to the Assistant Public Defender who filed the motion for delayed appeal.

Of these documents, Petitioner asserts that only the first – Petitioner's first letter to OPD dated 2-4-98 has any importance to the issues before this Court. This letter draws the line between the period between Petitioner's sentencing and when he reached out to new counsel after realizing that attorney Perkins failed to prosecute his appeal. Petitioner contends that all the time that passed after OPD received this first letter is reasonable in the context of any arguable equitable tolling analysis. That being said, Petitioner moves all of these documents into the record in order to meet and defeat whatever arguments Respondent comes up with to allege that all or part of this time counts against Petitioner's statute of limitations.

It is difficult to divine what Respondent's current position is with respect to the time that passed after Petitioner contacted OPD. Respondent's most recent filing (Warden Jackson's Status Report, Doc. 60, filed 2-5-05) is contradictory at best, and disingenuous at worst, when compared to the position Respondent took the motion to dismiss filed on 4-23-04 (Doc. 50).

In the motion to dismiss, Respondent distinguished two periods of time: first, the time it took OPD to process Petitioner's initial request; second, the time it took the assigned Assistant Public Defender to file the motion for delayed appeal after being assigned Petitioner's case. In that motion, Respondent conceded that she has no argument against Petitioner based on the first period of time, saying:

> **The public defender promptly responded to Mr. Woods** and requested that he fill out a questionnaire and financial statement, which the Public Defender received back from Mr. Woods [within a few days]. Doc. 50, p. 4.
>
> After receiving Mr. Woods' request for representation, the Public Defender was prompt and diligent in executing his legal obligation to evaluate the merits of Mr. Woods' case. Within a matter of days, the Public Defender responded to Mr. Woods' request and secured the documents necessary to determine his poverty status. Within a matter of weeks, the Public Defender obtained a transcription of Mr. woods' sentencing hearing, and by the 111th day after Mr. Woods requested counsel, the Public Defender agreed to represent him. **The amount of time it took the Public Defender to review Mr. Woods' case and decide to represent him was reasonable. It takes time to amass an old state-court record (even the Warden had to request a 30-day extension of time at the beginning of these proceedings to collect records), but the further delay of 94 days in filing a pro forma Motion for Delayed Appeal was not reasonable.**

Doc. 60, pp. 12-13 (emphasis added). While Petitioner contests Respondent's argument targeting the ninety-four days between the assignment of counsel and the filing of the motion, Petitioner again agrees that Respondent correctly conceded that she has no argument with the first one hundred eleven days. <u>See</u> Petitioner Woods' Memorandum In Opposition To Respondent's Motion To Dismiss, Doc. 51, p. 5, Paragraphs I and J.

Now comes Respondent's most recent filing, in which she states, in part:

> If, however, this Court should decide to hold an evidentiary hearing on the matter, **the Warden intends to call as witnesses each of the attorneys and staff members of the Office of the Ohio Public Defender identified in Mr. Woods' discovery** disclosure who were responsible for Mr. Woods' case. The Warden will call those witnesses to demonstrate that their failure to file timely pleadings on Mr. Woods' behalf is attributable to attorney neglect.

11

Doc. 60, p. 1 (emphasis added).  How can this be squared with Respondent's earlier position?  If, as the Warden correctly conceded, all the time between Mr. Woods' initial contact and the assignment of the case to a specific attorney was reasonable, then at most Respondent would have an argument for putting the assigned attorney on the stand (as it turns out, that attorney had to take early disability retirement due to a serious medical malady that renders him unable to testify – a matter Petitioner will discuss in more detail if need be – but there are other supervising lawyers who could speak to the period of time Respondent targeted in the motion to dismiss).

If Respondent's recent position amounts to some sort of ploy designed to avoid any hearing by suggesting that, if one is held, it would be a convoluted engagement involving testimony from various lawyers and their support staff, then clearly this Court will not countenance such a tactical maneuver.  Whatever Respondent's motivations, this much is clear: Respondent never asked for permission to depose any of those she now aims wildly at in her recent status report; nor did she move for an evidentiary hearing.  For those reasons alone, this Court should reject Respondent's apparent request for an evidentiary hearing involving those individuals Respondent does not even bother to list by name in her recent filing.

Again, Petitioner asserts that none of the OPD's staff have any evidence relevant to the issues before this Court because, on the face of the record, the period of time that passed between when Petitioner first contacted OPD and when his motion for delayed appeal was filed easily falls within the range of "reasonable."  If this Court sees differently, then, in the alternative, Petitioner suggests that, in lieu of an evidentiary hearing, this Court consider authorizing Respondent to take depositions only of those individuals for whom she can offer some rationale explanation as to why their testimony is necessary.  This Court should not have to waste its time

in an evidentiary hearing while Respondent fishes around for evidence to support whatever position it is she is advancing (or will decide to advance at some future date).

## IV.   Law In Support Of Petitioner's Motion To Expand The Record

Rule 7 of the Rules Governing Section 2254 Cases in the United States district courts, entitled "Expansion of Record," provides in pertinent part:

> (a) Direction for expansion
>
> If the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition.
>
> (b) Materials to be added
>
> The expanded record may include, without limitation, letters predating the filing of the petition in the district court, documents, exhibits, and answers under oath, if so directed, to written interrogatories propounded by the judge.  Affidavits may be submitted and considered as a part of the record.

Habeas Rule 7 provides for the expansion of the record with documents relevant to the determination of the merits of the petition including permitting a petitioner to substantiate his grounds for relief. See Turner v. Chavez, 586 F.2d 111, 113 (9th Cir. 1978).  In Jamison v. Collins, 2002 FED App. 0184P (6th Cir.), the Sixth Circuit Court of Appeals stated, "[t]he purpose of Rule 7 'is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing,'" citing 28 U.S.C. section 2254 (Rule 7, Advisory Committee Notes).  In some circumstances this Court may even have a duty to expand the record, see Jones v. Parke, 734 F.2d 1142, 1148 (6th Cir. 1984), with materials not included in the state proceedings. See Vasquez v. Hillery, 474 U.S. 254, 260 (1986), Coleman v. Kemp, 778 F.2d 1487, 1489 (11th Cir. 1985).

The exhibits submitted with this motion are relevant to Petitioner's ground for relief and will assist this Court in determining the merits of Petitioner's constitutional claims. Petitioner respectfully requests that the Court grant his Rule 7 motion.

>Respectfully Submitted,
>
>DAVID H. BODIKER
>OHIO PUBLIC DEFENDER
>
>_s/Gregory W. Meyers_____
>GREGORY W. MEYERS (0014887)
>Senior Assistant Public Defender
>
>T. KENNETH LEE  (0065158)
>Assistant State Public Defender
>
>Office of the Ohio Public Defender
>8 East Long Street, 11th FL
>Columbus, Ohio 43215
>614 466 5394
>614 728 3670 Fax
>
>COUNSEL FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that on January , 2005, a copy of the foregoing PETITIONER'S RULE 7 MOTION TO EXPAND THE RECORD was filed electronically on February 8, 2005. Notice of this filing will be sent to all parties by operation of the court's electronic filing system, through which parties may access copies of this document.

>_s/Gregory W. Meyers_____
>GREGORY W. MEYERS (0014887)
>COUNSEL FOR PETITIONER

# 211489