1    proceed a case with the appeal?

2        A.    Right.

3        Q.    And if your appellate

4    professional/business practice is the way you

5    characterize your trial practice, would it be correct

6    to assume before filing the notice you would have

7    gotten at least some retainer?

8        A.    No, not on the appeal.  I knew I had to

9    file to preserve his appellate rights.  But I also

10   know I never received any funds on the appeal.

11       Q.    So you remember, then, about Bruce?

12       A.    That I'm absolutely certain.

13       Q.    And you knew he was indigent?

14       A.    Correct.

15       Q.    I take it you also knew he was counting on

16   or hoping that whoever they were, whether they're

17   blood or -- whoever, his people were supposed to pony

18   up or rally the money?

19       A.    Correct.

20       Q.    But just as when we're retained, of

21   course, whether it's father for a juvenile at times

22   or running buddy for an arguable drug ne'er-do-well,

23   we represent clients, not the dollar, right?

24       A.    Correct.

25       Q.    And you knew Bruce wanted an appeal?

1        A.    Correct.

2        Q.    Then when you filed the appeal have you

3    had a chance to look back at the docketing statement

4    or the docket of the appellate number that was

5    assigned to this appeal, by chance?

6        A.    You mean whatever was on the -- I reviewed

7    the Internet.  I didn't review a docket statement,

8    per se, but the Internet would have had pretty much

9    what's on the docket statement.

10       Q.    Do you remember what the expected or

11   routine filing fee was for a Notice of Appeal back at

12   the time?

13       A.    No, I don't.  I think it is like $85 now.

14   I don't know if it was less.

15       Q.    I take it from your practice back then you

16   knew that you were going to face a filing fee when

17   you walked over there with the Notice of Appeal?

18       A.    Correct.

19       Q.    Would you have walked over?  Would it have

20   been something you would have done, throw a bunch of

21   stuff in a brief case for a day's work in the

22   courthouse rather than sending help over to do this?

23       A.    Could have been either way.  I did and

24   still do file a lot of my things.  But on the same

25   token, sometimes I'll have someone else do it.  I

1    have no independent recollection if I actually filed
2    this or not.  I wouldn't doubt it.
3        Q.    I notice from looking at the court of
4    appeals you can tell, can you not, from this court
5    document -- point out for me, by the way, Bryan, and
6    I'm sure in a general manner you assume we're showing
7    the real stuff, but if you ever see something I'm
8    showing you that doesn't look copacetic can you let
9    me know?
10       A.    Sure.
11       Q.    This notice appears to be file stamped in
12   the way you would imagine or be familiar with
13   documents filed in the First District Court of
14   Appeals; is that right?
15       A.    The only error I would see on this
16   document is it shows a copy filed on July 12th but
17   the prosecutor receiving it the 11th.  So the
18   prosecutor's stamp must have been off because it
19   wasn't served to the prosecutor until after it was
20   filed.  But other than that everything is accurate on
21   it.
22       Q.    Here's another copy of this.  Have you
23   seen any of the pleadings in Mr. Woods' habeas case?
24   Did Mr. Bodine show you any?
25       A.    I don't recall.  I don't think I did.

Page 44

1      Q.    You know that's where this litigation lies

2  now?

3      A.    Yes.

4      Q.    Federal District Court.  Same notice of

5  appeal.  Attached to which, under appellate number

6  96545.  Okay.  That was -- if you can tell from these

7  documents, that is the appellate court case number

8  being assigned to the appeal of trial court case

9  number 345?

10     A.    Correct.

11     Q.    And the very first entry there indicates a

12  waiver of costs due to, what at least the docket

13  reads POV.AFF.  Would you understand that to be short

14  for Poverty Affidavit?

15     A.    That would be my understanding.

16     Q.    So the very first indication there is

17  no-deposit-required-poverty affidavit, Bruce Woods?

18     A.    Correct.

19     Q.    Would it be correct that that entry would

20  indicate -- at least on its face that would indicate

21  that an affidavit of indigency was being filed for

22  Mr. Woods, right?

23     A.    That would appear to indicate that, yes.

24     Q.    I saw no copy of that in your file?

25     A.    I can tell you I never -- I have no

Page 45

1    recollection of ever even receiving a poverty

2    affidavit from Mr. Woods.

3         Q.    I can represent to you for the, kind of,

4    the follow-up topic/questions that those working for

5    Mr. Woods who have inspected the appellate file under

6    545 saw no poverty affidavit in the Court's own file.

7    Do you have a recollection -- if we assume there is

8    no affidavit in the court file corroborates your

9    recollection that you never obtained such affidavit

10   at the time you filed the notice of appeal; is that

11   right?

12        A.    Correct.

13        Q.    Nor at any other time did you ever obtain

14   a poverty affidavit?

15        A.    No, not to my recollection.

16        Q.    Do you have a recollection of paying?

17   Would you have done that in your practice?  Would you

18   have fronted a fee for a client?

19        A.    Sure.

20        Q.    Did you front the fee there?

21        A.    Not -- if there was a poverty affidavit

22   then there wouldn't have been a fee.  I'm looking at

23   this I can't tell if I would have.  It doesn't look

24   as if there would have been a fee for that.  I can

25   check my cancelled checks from July of '96.

1    Q.    In your practice back then are you saying

2    that you would have been willing to front a filing

3    fee even though you hadn't yet gotten a dime towards

4    the appellate representation fee?

5    A.    If that was the only way to preserve their

6    rights, then sure.  I mean, eating 60 or $85 wouldn't

7    have been the end of the world.

8    Q.    I guess, you also mentioned, at least back

9    then it wouldn't have been uncommon for Mr. Woods to

10   have remained in the county justice center jail for

11   as long as a month after a trial level sentence?

12   A.    Correct.

13   Q.    So it would have been available to you to

14   get an affidavit signed?

15   A.    If he was there for the thirty days.  I'm

16   sure he would have been there for a significant

17   period of time.

18   Q.    Do you have a recollection of having a

19   conversation with an appellate clerk to perfect this

20   appeal without payment knowing that your intention as

21   of July 12th, of course, was to proceed as retained,

22   not appointed, a conversation designed to make sure

23   that you got a notice of appeal in within 30 days?

24   Because the Notice of Appeal would have been filed

25   with the trial system where you probably would have

4c727fc3-f85d-4a22-9b9c-4cd6e8b1127b

Page 47

1    known more of the clerks, I assume, than at the

2    appellate court?

3         A.    I know now they are actually filed in the

4    court of appeals.  And I don't know when -- if that

5    was the case back in 1996.  Even though the rule says

6    to file with the trial court clerk, now we file them

7    in the court of appeals.

8         Q.    It would appear from this copy, at least

9    it was stamped in as the common pleas clerk?

10        A.    And to be honest, I think they still have

11   that stamp when you go up to that floor.  But I have

12   no recollection of having any conversation with the

13   clerk.

14        Q.    Have you ever been able to do that to make

15   sure time isn't missed?

16        A.    No, I have never -- I don't believe I have

17   ever discussed a situation like that with a clerk.

18        Q.    So if you had no such discussion, and if

19   we assume for the sake of discussion, I myself didn't

20   do the work of copying the court of appeals file, but

21   I have no reason to question the conclusion, there is

22   no affidavit in there?

23        A.    I wouldn't question that conclusion

24   either.  I know of no affidavit.  I can tell you I

25   did not obtain an affidavit of -- poverty affidavit

1    for him.

2         Q.    That first line indication on the very

3    first entry of the appellate docket case number 96545

4    is July 12th, the date of which we see from the other

5    document the Notice of Appeal was filed; is that

6    right?

7         A.    Correct.

8         Q.    There were other documents, I'm not sure

9    if it is attached here in that court of appeals case

10   when it's eventually dismissed, that indicate there

11   are no fees being collected.  Again, these are coming

12   out of court file so I am not going to mark them here

13   to ask you to -- you know, we'll get those in in a

14   more appropriate way.  But this document bears the

15   same appellate case number, does it not?

16        A.    Yes, it does.

17        Q.    545.  And it indicates poverty affidavit

18   status?

19        A.    Correct.

20        Q.    And hence, there's no fees being collected

21   on that case number?

22        A.    Correct.

23              (Exhibit 3 was marked for identification.)

24        Q.    I'll go ahead and mark these.  I'm going

25   to mark this as Exhibit 3, a document stapled on the

1    upper left that is four pages in number, also, in

2    connection with a different pleading bears Exhibit D.

3    Do you see that?

4         A.    Yes.

5         Q.    Now we have marked it Exhibit 3?

6         A.    Yes.

7         Q.    And it is four 8 and a half by 11 pages

8    first is the Notice of Appeal we've discussed?

9         A.    Right.

10        Q.    The second appears to be a

11   computer-generated docket statement, appellate case

12   number 96545?

13        A.    Yes.

14        Q.    And then eventually that case is dismissed

15   and this would appear to be the entry of Dismissal of

16   Appeal, December 5, '96?

17        A.    Correct.

18        Q.    In appellate case number 545, as you stand

19   out the computer-generated -- before I move on I'm

20   going to mark as Exhibit 4 what would be a -- looks

21   like a different run, if you will, of a

22   computer-generated docket related to court costs in

23   connection with appellate 96545.  Stapled on the

24   upper left is a two-page Exhibit 4, and I'll mark

25   that again and put it on the second page.  And that

1   seems, if I am correct, to be kind of the bookkeeping

2   end of the appellate court clerk system where they

3   are running what would otherwise have been the fees

4   associated with 96545, none of which are collected

5   but maybe just to balance out their books they

6   indicate what the costs were but not as collected

7   because the poverty affidavit is also indicated on

8   that sheet; is that correct?

9       A.   Correct.

10         (Exhibit 4 was marked for identification.)

11       Q.   That's marked Exhibit 4.  Now, on the

12   other form of the docket that has the docket entries

13   in connection with appellate case 545:  When you

14   first filed did you look back at enough of this to

15   recall that when you first filed the Notice of Appeal

16   you didn't file a criminal docketing statement?

17       A.   Correct.

18       Q.   Do you know why?

19       A.   If I recall, it had to do with the

20   financial arrangements with the court reporter.

21   Because they have to sign it before you get it and

22   file it.  And I remember having more than one

23   conversation with the court reporter about how much

24   money she wanted up front, and so forth.  And

25   eventually I believe the docket statement was filed

1    but it was made contingent upon -- she wasn't going

2    to do anything until a certain amount of money was

3    paid up front on it.  That's really all I recall

4    about the docket statement.  And then there are also

5    times, which could have been the case here, where I

6    will not file a docket statement right at the same

7    time that a Notice of Appeal is filed because a

8    Notice of Appeal obviously had the time limitations

9    on it, and I haven't got a docket statement back from

10   the court reporter so there might be a few days'

11   lapse in there before the docket statement gets

12   filed.

13          Q.    Eventually the entry we can see on the

14   docket indicates an order to show cause item about

15   six down dated 7/30/96?

16          A.    Correct.

17          Q.    Which, if I can show you this document,

18   looks like an order in the form of a letter addressed

19   to you at your Seventh Street address?

20          A.    Correct.

21          Q.    And the show cause basically is, where is

22   our criminal docketing statement?

23          A.    Correct.

24          Q.    If I indicated to you that we didn't find

25   this piece of paper in your file but rather we found

Page 52

1    this piece of paper in the appellate clerk's file,

2    why would this not have been in your Bruce Woods

3    file?

4         A.    If I received it it should have been in

5    this.  I don't know why it was not in there.

6         Q.    In the ministerial duties of probably the

7    court's administrator they are telling you on July

8    30th, get this thing in this seven days, and perhaps

9    true to your practice and probably elsewhere while

10   they are not going to be totally ironclad on that,

11   you eventually submitted a document statement on

12   August 12th?

13        A.    Correct.

14        Q.    You're remembering submitting a docketing

15   statement?

16        A.    Yes.

17        Q.    Our docket we're referring to indicates.

18   Refresh your recollection.  Does that look like a

19   copy of the docketing statement you submitted for

20   Mr. Woods?

21        A.    Yes.

22        Q.    And I'll show you the same thing on an 8

23   and a half by 14.  That copy came out of the

24   appellate court clerk's file.  So let me use this one

25   and I will mark that as Exhibit 5.  This is the sheet

1    true to all docketing statement where you didn't even

2    have some indication from the clerk of courts

3    regarding the preparation of the transcript; is that

4    right?  I mean, I'm sorry, the court reporter?

5         A.    Yes, it has to be signed by the court

6    reporter.

7         Q.    So on August 12th, after receiving a week

8    and a half or so earlier, I suppose, the letter from

9    the court of appeals you're affixing your signature

10   to this docket statement on August 12th, right?

11        A.    It's hard to read my own writing.

12        Q.    That one comes out --

13        A.    Yeah, that looks like August 12.

14              (Plaintiff's Exhibit 5 was marked for

15               identification.)

16        Q.    The court reporter, whose name I can't

17   make out the first name.  Is that -- do you recognize

18   that?

19        A.    Gail.

20        Q.    Oh, Gail.  She, too, is affixing a

21   signature on 8/12 of '96?

22        A.    Correct.

23        Q.    And in this docketing statement, you're

24   indicating, of course, you need the transcript.  You

25   can't very well do this type of appeal without the

1    whole transcript, right?

2         A.    Correct.

3         Q.    She's indicating on August 12th, she's

4    saying if she gets twelve hundred dollars, she's

5    indicating -- let me back this up.  She's indicating

6    the transcript is likely to be 600 pages, which she

7    could produce, if and only if she receives a twelve

8    hundred dollar deposit within a month by 9/12 of '96?

9         A.    Correct.

10        Q.    And were she to receive the deposit by

11   9/12 of '96 she anticipates in her certification she

12   could generate the transcript for appellate review by

13   November 12 of '96?

14        A.    Correct.

15        Q.    That's marked as 5 for purposes of the

16   depo.  That appears from the appellate court file to

17   have generated a fairly routine order, again, from a

18   judge or maybe their court administrator.  Are you

19   familiar with events set up, a deadline for the

20   filing of the record and they have set up a

21   anticipatory briefing schedule, assuming the record

22   will be filed and perfected by the deadline.  Is that

23   their normal practice?

24        A.    That's their normal practice, yes.

25        Q.    Do you remember that actually happening

1    here, that you got that notice?

2         A.   I don't remember that.  I'm sure I must

3    have but I don't recall that.

4         Q.   I'll show you a couple more documents

5    that, again, were copied by those working for

6    Mr. Woods from the first appellate district's file,

7    96545, this dated August 30th, and then what appears

8    to be a commensurate post-card type notice to

9    counsel.  Were you familiar with those?

10        A.   Yes.

11        Q.   You've been in receipt of those from the

12   court of appeals?

13        A.   Yes.

14        Q.   And this on one 8 and a half by 11 appears

15   to be copied, probably two different post-card

16   notices to you since you were the named counsel on

17   the Notice of Appeal, and to the prosecutor's office;

18   is that right?

19        A.   Correct.

20        Q.   And the post-card notices list, if you

21   will, the dates that appear in this court order dated

22   August 30th from the appellate court; is that right?

23        A.   Right.

24        Q.   And in those documents do we see the

25   indication they expect the record to be filed on

4c727fc3-f85d-4a22-9b9c-4cd6e8b1127b

Page 56

1    11/19 of '96, and from that point forward they put a

2    briefing schedule out?

3          A.    Correct.

4                (Exhibit 6 was marked for identification.)

5          Q.    I'm going to mark as Exhibit 6, the 8 and

6    a half by 11 Xerox of it, and I think you have

7    indicated you're familiar with the post-card

8    notifications coming out of the appellate clerk of

9    courts?

10         A.    Yes, I am.

11         Q.    I take it normally that would have gotten

12   stuck in your Bruce Woods file?

13         A.    Should have been, yes.

14         Q.    Did you remember seeing that when you

15   looked at the file to refresh your recollection?

16         A.    No, did not.

17         Q.    I could represent that we didn't notice

18   these documents in your file.  Does that suggest to

19   you the possibility you generated another Bruce Woods

20   file?

21         A.    Specific one for the appeal, I would doubt

22   it.  But the one thing I was surprised when I was

23   digging out the file is that there was not more -- I

24   expected to be more to the Bruce Woods file than what

25   I was able to find.  So would I expect there to be a

1    separate appellate file, no.  Would I expect that

2    there would be more to the file than what there was

3    in light of the trial and so forth?  Yes, I would

4    have expected that.

5        Q.   I take it if you are like most felony

6    level trial practitioners, a lot of your cases plead

7    out, and those that don't that go to trial -- and

8    that's what you're suggesting here.  You thought

9    there might have been more in it just because it was

10   a full blown jury trial?

11       A.   A typical jury trial I'm going to have a

12   big -- I guess they call them Read-well files that

13   may have three or four different folders in there

14   and, like I say, I was surprised that that was all

15   the file I had for Bruce Woods.  So there may very

16   possibly been another file but it wouldn't have

17   necessarily been a separate appellate file.

18       Q.   In the context now of recognizing there

19   might have been another file, coupled with, I think a

20   comment you made a bit ago about whether you might

21   have fronted the filing costs on the appeal and you

22   referenced you might be able to check -- review your

23   old check register or cancelled checks?

24       A.   I should still have, hopefully, have '96

25   somewhere.

1      Q.    Even though your business has changed, at

2   least the practice has changed?

3      A.    Correct.

4      Q.    Since the Seventh Street setup you had,

5   the partnership?

6      A.    Correct.

7      Q.    As you sit here today it is your best

8   sense that you have personally maintained these types

9   of records, the check, returned check or check

10  register and any other files, client files from that

11  era?

12     A.    That's not something that would come out

13  of the partnership account.  That was primarily for

14  business expenses.

15     Q.    The overhead of the rent, the phone, the

16  lights, that kind of thing?

17     A.    Anything that related to my clientele

18  would have come out of my account.  So if, in fact, I

19  did write a check for this, that would be in my

20  records.

21     Q.    So your partnership was formed not so much

22  to share profit as to share overhead?

23     A.    Correct.  We eventually, I think for a

24  year or two, '98 or '99, or probably '99 to 2000, we

25  did try putting the profits together.  That did not

Ace Reporting Services    (513) 241-3200
30 Garfield Place, Suite 620    Cincinnati, Ohio   45202

4c727fc3-f85d-4a22-9b9c-4cd6e8b1127b

Page 59

1    work out too well.  So at this time I can tell you

2    definitely my fee would have gone to me.  My expenses

3    related to my cases would have been paid by me.  But

4    things like rent, electric, so forth, would have been

5    paid out of, probably, a common account.

6         Q.   Do you recall whether you would have had

7    any correspondence with Mr. Woods for those with whom

8    you were communicating about the appellate fee?

9         A.   I would have thought, and I did expect

10   that I would have found something regarding

11   communications with Mr. Woods but there was not any

12   in the file that I have.  I would not have written

13   correspondence with any of the third parties.

14        Q.   Would you be able, in terms of time and

15   commitment to a former client, to represent that you

16   would be willing to check, to review your cancelled

17   checks or check register?

18        A.   Most certainly.

19        Q.   And to personally determine to your best

20   ability whether there might be more Bruce

21   Woods-related documents in your files?

22        A.   Sure.

23        Q.   I would appreciate that.  Can you give me

24   a sense of how long that might take you since we're

25   answering up to a federal magistrate in terms of this

Page 60

1    case right now?

2         A.    Two weeks.

3         Q.    That would be great.  Appreciate it.

4         A.    So I'll check my cancelled checks from --

5    it would have been in July of 1996.

6         Q.    Right.

7         A.    And then review the other closed files for

8    any other files I might have on Mr. Woods?

9         Q.    Right.  In the event that -- it would

10   sound like from what we discussed, Bryan, if you

11   might have generated a different preliminary

12   appellate file, for lack of my word, not yours.

13   Obviously, post the sentencing date of 6/14/96.

14        A.    I will check on that.

15        Q.    Tell me again -- maybe you mentioned it

16   earlier -- what did you look at to prep up for the

17   depo or to refresh your recollection about Mr. Woods'

18   case that alerted you to the fact that the Notice of

19   Appeal had gone in under the dismissed case number,

20   not the conviction case number?

21        A.    Because when I learned that the issue was

22   the case was not appealed, and while at the time it

23   didn't dawn on me that what I did as far as the

24   appeal.  And I was looking through the file and I

25   found a Notice of Appeal, and said, there was a

Page 61

1    Notice of Appeal filed on this.  There was an appeal

2    filed, and so forth.  And then as I looked closer

3    that's when I came to realize that it was filed under

4    the incorrect -- that there were two indictments

5    involved in that case.

6         Q.   Some of that information you can get on

7    the clerk's web site now in terms of tracking the

8    different numbers.  Even if some of the these --

9    appellate number 545 documents weren't in the Bruce

10   Woods file you could see some of that on the screen,

11   I take it?

12        A.   Sure.  I believe I probably did a search

13   under the civil docket which brings up the court of

14   appeals cases for Bruce Woods, and reviewed it in

15   that manner.

16        Q.   Eventually in appellate number 96545 the

17   appellate clerk of courts records would have revealed

18   that -- in keeping with your criminal docketing

19   statement and the Court's subsequent entry of late

20   August indicating deadline for perfection of the

21   record and the prospective briefing, the appellate

22   docket would reveal that the common pleas clerk of

23   courts did submit what they had available as a matter

24   of record in early November.  Can you see those

25   entries around November 7?

Page 62

1        A.    Yes.    Their documents would have been on

2    11/7, the transcript of docket and journal entry is

3    filed.    That's the common pleas court submitting

4    everything they have to the court of appeals.

5        Q.    The motions, the transcript of docket, not

6    the transcript of trial, is the common pleas level

7    docket?

8        A.    Correct.

9        Q.    Other than what you have remarked upon so

10    far regarding conversations about the finances

11    relative to being retained for the direct appeal, are

12    there any other recollections you have in a sense, at

13    least on the mile markers of memory?    You've got an

14    early summer conviction, mid summer, at least

15    perfection of the Notice of Appeal.    Now we're into

16    late fall, and the case is still alive, at least

17    under this case number.    What, if you remember, if

18    anything, is going on with you and anybody about

19    getting paid for the court reporter, at least?

20        A.    I recall vaguely conversations with people

21    who had made promises that they were going to get the

22    funds paid, but the funds were never received.    That

23    is really all that I recall regarding that time

24    period, what was going on then.    I just have a

25    recollection about talking to people.    Yeah, we're

1  going to get that taken care of, but it did not

2  happen.

3       Q.    Would I be correct that in -- let me just

4  ask you, the way you would have run your business

5  back then with respect to the debt due to the court

6  reporter as well as your expectation of a fee for

7  your time and expertise on the appeal, would you have

8  expected a paying appellate client to give you both

9  your appellate fee and the fee for the transcript

10  that you would, in turn, then run through your trust

11  account and pay the court reporter directly?

12       A.    Yes, that's how -- that would be my

13  expectation.

14       Q.    You wouldn't have asked nonprofessional

15  client types, go track Gail down and give her a check

16  for twelve hundred dollars?

17       A.    I doubt it.  I have done it in the past

18  with people where, for whatever reason they want a

19  copy of the transcript.  But I don't want to make the

20  commitment of ordering and be financially on the hook

21  for it and tell them, not necessarily for an appeal

22  but for other reasons that they may need it or I may

23  need it, tell them to contact the court reporter and

24  make arrangements to get it.  Because their practice

25  is that if I contact the court reporter they are

Page 64

1    going to generate it and they're going to expect that

2    I pay it.

3              Q.    A phone call alone is the lawyer's word,

4    I'll pay you for your time for the reporter?

5              A.    Right.  But in this case, that more than

6    likely would not have happened.  And I don't know why

7    I would have told them.

8              Q.    Having gone so far to have Gail, the

9    reporter, affix her signature on the same docket

10   statement you signed, would it be your recollection

11   you wanted to run those funds through you?

12             A.    Correct.  And I believe why that was put

13   on the docket statement was -- about her being

14   contingent upon the deposit was, she had asked me if

15   I was going to guarantee these funds.  And I was not,

16   obviously, not going to guarantee them.  I have to

17   get them from the client's family.

18             Q.    The appellate docket reflects that in

19   early November, around the 7th the common pleas clerk

20   is filing in portions of the record they have

21   available.

22             A.    Yes.

23             Q.    And from your public experience, I trust

24   you realize the clock is ticking, right?

25             A.    Correct.

Page 65

1       Q.   Do you have a recollection of receiving

2  the entry of dismissal?

3       A.   No, I don't.

4       Q.   Do you have any reason to doubt that --

5       A.   I have no reason to doubt.  I don't think

6  there's ever been a time I did not receive what the

7  court of appeals said they sent me.  I have no reason

8  to doubt it.  I just don't recall receiving it.

9       Q.   I think that would be the fourth page of

10  what was marked Exhibit 3 to your depo, is the order

11  saying by December 5th there has been no

12  follow-through, no prosecution of the appeal with

13  perfection of the record.  It's over.

14       A.   Correct.

15        (Exhibit 7 was marked for identification.)

16       Q.   And then what I will mark as Exhibit 7

17  would appear to be another copy of a post card

18  delivered to you as counsel of record indicating

19  that, in fact, the appeal had been dismissed?

20       A.   Correct.  And now that I think of it, this

21  is probably -- the post card is what I would have

22  received and not copy of the actual order.  If they

23  were operating under the same manner they are now,

24  you don't actually get a copy of the order, you get a

25  copy of the cards.

4c727fc3-f85d-4a22-9b9c-4cd6e8b1127b

1    Q.    I think many clerks went to that.  They

2    are saving money just sending those out, those

3    computer-generated postcards?

4    A.    Correct.

5    Q.    Postage and paper both.  Do you have a

6    recollection of learning one day, the light goes on,

7    that nothing happened.  In fact, the court said

8    nothing happened and dismissed it?

9    A.    I don't recall that.

10    Q.    Do you have a recollection in the time

11    that Bruce Woods' case has come back under your radar

12    screen because of this litigation, up right through

13    to this very question, ever, kind of log it in the

14    back, that the appeal you started with the Notice of

15    Appeal was either over or needed to be looked into or

16    something?

17    A.    I'm sure I would have.  I would have had

18    to have, I'm sure, received some type of notice but I

19    don't have an independent recollection of receiving

20    the card or how it was that I learned that that had

21    taken place.

22    Q.    Have you ever had a case where you were

23    appointed as appellate lawyer and then somebody

24    bumped you off as retained counsel?

25    A.    No, but I have had vice versa where I have

1    been retained to represent somebody on appeal when

2    they originally had appointed counsel.

3         Q.   That's what happened to you here at the

4    trial level.  The initial docketing for both 345 and

5    1386 indicate that Mr. McKevely was appointed

6    counsel, so apparently sort of bumped him off when

7    you were retained?

8         A.   Correct.

9         Q.   So this appeal, since Bruce was indigent

10   in your estimate, although he did, obviously, have

11   people representing to you that they would pay you to

12   represent him on appeal, when they eventually didn't,

13   there seems not in the court docket to have been any

14   effort invested to switch him into indigency status?

15        A.   Correct.

16        Q.   Which I trust you know could have been

17   done?

18        A.   Correct.

19        Q.   Would have cost you some time?

20        A.   Correct.

21        Q.   Either there was a poverty affidavit that

22   escapes your recollection and doesn't appear in the

23   file, but even without that July 12th indication, it

24   would have been possible to obtain an affidavit of

25   indigency from Mr. Woods?

1      A.    Correct.

2      Q.    And make it clear to the court of appeals

3   you were not being retained and he needed appointed

4   counsel?

5      A.    Correct.

6      Q.    You knew how to do that back then?

7      A.    I had never had that situation come up at

8   that particular time, but now I certainly understand

9   how to deal with that situation and it should have

10  been done then, also.

11     Q.    You've mentioned at least one occasion or

12  more, whatever, you've been retained, in at least my

13  phrase, bumped off appointed counsel for appeal?

14     A.    Correct.

15     Q.    At that stage if it is an inmate client

16  who, in fact, herself or himself is indigent, then

17  you pick up the case as retained appellant after the

18  transcript is generated at taxpayer cost?

19     A.    Correct.

20     Q.    Do you have any discrete recollections of

21  what you knew at the time to be sort of the final

22  interaction with the people who had talked about

23  paying you, or did it just end with a whimper or a

24  bang -- let me ask you.

25     A.    A whimper.  It was just -- I remember a

1   series of telephone calls of talking to people, and,

2   you know, the money will be down there next week.

3   We'll get it taken care of next week.  And then it

4   just sort of faded away as far as not receiving any

5   calls anymore and no funds arriving.

6       Q.   But whoever they were -- and I appreciate

7   it was eight years ago -- it wasn't just once or

8   twice I think you just put it.  It was kind of

9   if-come.  They kept you thinking, kept telling you

10  they were going to muster the money?

11      A.   Correct.

12      Q.   But there wasn't any grand finale, so to

13  speak?

14      A.   No.

15          MR. MEYER:  Can we have one minute?

16          (A recess was taken from 2:20 to 2:22.)

17          MR. MEYER:  Thank you.  Nothing further.

18          MR. BODINE:  I have nothing.

19

20

21                      (Signature waived.)
                        ----------------------------
22                      BRYAN PERKINS

23                      - - -

24      DEPOSITION CONCLUDED AT 2:22 P.M.

25                      - - -

1

2                      C E R T I F I C A T E

3    COMMONWEALTH OF KENTUCKY :
                              :        SS
4    COUNTY OF CAMPBELL       :

5          I, Sherry L. Music, the undersigned, a duly

6    qualified and commissioned notary public within and

7    for the Commonwealth of Kentucky, do hereby certify

8    that before the giving of his aforesaid deposition,

9    BRYAN PERKINS was by me first duly sworn to depose

10   the truth, the whole truth and nothing but the truth;

11   that the foregoing is the deposition given at said

12   time and place by BRYAN PERKINS; that said deposition

13   was taken in all respects pursuant to stipulations of

14   counsel; that I am neither a relative of nor employee

15   of any of the parties or their counsel, and have no

16   interest whatever in the result of the action; that I

17   am not, nor is the court reporting firm with which I

18   am affiliated, under a contract as defined in Civil

19   Rule 28(D).

20         IN WITNESS WHEREOF, I hereunto set my hand and

21   official seal of office at Newport, Kentucky, this

22   _____ day of _____, 2004.

23

24                              _____

     My commission expires:    Sherry L. Music
25   February 22, 2007          Notary Public

4c727fc3-f85d-4a22-9b9c-4cd6e8b1127b

4,000.00/1500.00

B9600345

Bruce Woods #341825

Kelly Wood
Rashum Rogers

3347 Bonaparte
45207
# 961-9115

Mother    Sandra Hill

10-18-66
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

3  Sh mad
estend home w/ gun
money for dughts
tied her al dughts up.

Hair, blond, relia. didnt matel. —    locked up nirles
Jenny 13,

Met lady earlier    — O'Connor
Cont Dte
She cant ID anyone.    29th, April

C.I.  Told Detin on tape, he on then,
during ded gun lmd.

Told lxg. from 9:00-10:00 am    Rewd
9:00 pm robbery.    Robbery - 85
O.+ shoppin for b-dy pm    Trffol Cn 91
— Kelly Powell    Astl Wpn - 85
Tri-County Mall
Recent for that. —

EXHIBIT

# BRYAN R. PERKINS
## Attorney at Law

Provident Bank Building
23 East Seventh Street
Suite 1116
Cincinnati, Ohio 45202

Telephone (513) 929-4449
fax (513) 929-4530

April 4, 1996

Mr. Bruce Woods #341825
Hamilton County Justice Center
1000 Sycamore Street
Cincinnati, Ohio 45202

Re:  State of Ohio v. Bruce Woods,  Case No.  B 96 1386

Dear Mr. Woods,

     Enclosed please find copies of the discovery motions which I filed on your behalf. Please retain these for your records.

     Once the Prosecutor responds I will meet with you to discuss their response and we will frame our defense accordingly.

     In the meantime, should you have any questions please feel free to call me

Sincerely,

Bryan R. Perkins
Attorney at Law

Enclosure
BRP/nw





C960545

IN THE COURT OF COMMON PLEAS
CRIMINAL DIVISION
HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :        Case No.: B9600345

      Plaintiff-Appellee,          :        (Judge O'Connor)

vs.                                      :

                                        **NOTICE OF APPEAL**

BRUCE WOODS                             :

      Defendant-Appellant          :

---

    Notice is hereby given that Dale Lusby, Defendant-Appellant, hereby appeals to the First Appellate Judicial District, from the judgment and sentence of this Court entered on this cause on June 14, 1996.

                                      Respectfully Submitted,

```
ORIG. COMP, PARTIES, SUMMONS
( ) CERT MAIL      ( ) SHERIFF     ( ) WAVE
( ) PROCESS SERVER    ( ) NONE
CLERKS FEES_____
SECURITY FOR COST_____
DEPOSITED BY  61871
FILING CODE    A-105
```

                                     Bryan R. Perkins (0061871)
                                      Attorney for Defendant-Appellant
                                      23 East Seventh Street
                                      Suite 1116
                                      Cincinnati, Ohio 45202
                                      (513)929-4449

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the foregoing Notice of Appeal was served upon the Hamilton County Prosecutor's Office by personal service on this ___ day of July, 1996.

                                      Bryan R. Perkins





**EXHIBIT**

D

```
12-11-96 H a m i l t o n   C o u n t y   C l e r k   O f   C o u r t s          8:46
                      C A S E   C O S T   S T A T E M E N T
```

---

```
Court Code: C      Case Number: 96-00545        Last Activity Date: 12-10-96

   STATE OF OHIO vs. BRUCE WOODS                Filing Date:  7-12-96

   Filing: A105  NOTICE OF APPEAL - CRIMINAL - POVERTY AFFIDAVIT

 Current Judge:                             Assign Date:    - -
Previous Judge:

    Disp: EODC  ENTRY OF DISMISSAL              Date: 12- 5-96

Referred From Case:                          CA600 Date: 12-10-96
Referred To Case:                        Applied Costs:         .00

      Total Case Credits:       $60.00-   Initial Payment Method:
      Total Case Debits:        $60.00
                             -------------  Last Billing Date:     - -
      Case Balance:              $.00
                                         Deposit Motion Flag:   N/A
      Accum. Disbursements:     $60.00
```

---

### P A R T Y   R E F E R E N C E

---

```
Party Dropped   Party #    Party Name & Address
Dropped Date                       Attorney #      Attorney Name & Address
```

---

```
  N          D-0001  BRUCE WOODS

                      61871   BRYAN R PERKINS
                              23 E 7TH ST
                              SUITE 1116
                              CINCINNATI              OH 45202

  N          P-0001  STATE OF OHIO

                      Z-9996   PARTY WITH NO ADDRESS
```

### D O C K E T   E N T R I E S

---

| Dock Nbr | Entry Type | Dock Code | Entry Date | Image Number | Docket Description/ Docket Comment | Amount | Applied |
|---|---|---|---|---|---|---|---|
| 9958 | C | 8UC1 | 12-10-96 | | UNCOLLECTED COSTS | $60.00- | Yes |
| 9960 | D | AEDA | 12- 5-96 | 15 | ENTRY DISMISSING APPEAL B960345 | $3.00 | Yes |
| 9962 | D | COA1 | 11- 7-96 | | NOTICE OF FILING OF RECORD EXCLUDING TRANSCRIPT OF PROCEEDINGS MAILED TO BRYAN R PERKINS AND COUNTY PROSECUTOR | | Yes |
| 9964 | D | COA1 | 11- 7-96 | | NOTICE OF FILING OF RECORD EXCLUDING TRANSCRIPT OF PROCEEDINGS MAILED TO BRYAN R PERKINS AND COUNTY PROSECUTOR | | Yes |
| 9966 | D | COA2 | 11- 7-96 | | TRANSCRIPT OF DOCKET AND JOURNAL ENTRIES FILED | | Yes |
| 9968 | F | NOJS | 9- 5-96 | | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. | | Yes |
| 9970 | D | ARCS | 8-30-96 | 2 | REGULAR CALENDAR SCHEDULING ORDER, ENTERED. 11/19/96 RECORD DUE. 01/03/97 APPELLANT'S BRIEF DUE 02/17/97 APPELLEE'S BRIEF DUE | $3.00 | Yes |
| 9972 | D | ADSF | 8-12-96 | | DOCKET STATEMENT FILED. B9600345 | $1.00 | Yes |
| 9974 | F | NOJS | 8- 1-96 | | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. | | Yes |
| 9976 | D | EOSC | 7-30-96 | 19 | ORDER TO SHOW CAUSE | $3.00 | Yes |
| 9978 | D | DDDD | 7-12-96 | | COPY SENT BY ORDINARY MAIL TO HAMILTON COUNTY PROSECUTORS | | Yes |
| 9980 | D | CCCC | 7-12-96 | | COMMON PLEAS TRIAL COURT # B-9600345 | | Yes |
| 9984 | D | BBBB | 7-12-96 | | NOTICE OF APPEAL FILED. | | Yes |
| 9986 | D | AAAA | 7-12-96 | | APPEAL - ON QUESTIONS OF LAW | | Yes |
| 9988 | D | POST | 7-12-96 | | POSTAGE: COST DESK | $2.00 | Yes |
| 9990 | D | CCAT | 7-12-96 | | COURT AUTOMATION | $6.00 | Yes |

```
12-11-96 H a m i l t o n   C o u n t y   C l e r k   O f   C o u r t s        8:
                              D O C K E T   E N T R I E S
                      Court Code: C    Case Number: 96-00545
-----------------------------------------------------------------------------------
Dock  Entry  Dock   Entry   Image         Docket Description/
Nbr   Type   Code   Date    Number        Docket Comment                Amount   Applied
-----------------------------------------------------------------------------------
9992   D     CLRT   7-12-96               COMPUTER LEGAL RESEARCH         $3.00   Yes
9994   D     C      7-12-96               COURT INDEX: TAXED IN COST     $14.00   Yes
9996   D     CLKP   7-12-96               CLERK FEE FOR EACH APPEAL      $25.00   Yes
9998   P     NDRP   7-12-96               NO DEPOSIT REQUIRED-POV.AFF.            Yes
                                          BRUCE WOODS
                                                                        ---------
** Case Balance **** Case Balance **** Case Balance ** ===)             $0.00
```

```
                          Total Deposits:        $0.00
                             Total Costs:       $60.00
                           Total Credits:       $60.00-
                        Total Money Out:         $0.00

                       Unapplied Deposits:       $0.00
                         Unapplied Costs:        $0.00
```

```
-----------------------------------------------------------------------------------
  Account           Account Name            Amount          Applied
-----------------------------------------------------------------------------------
 2000-0132    COURT INDEX                    14.00             14.00
 2000-0211    CLERK FEES                     35.00             35.00
 2000-0278    COMPUTERIZED LEGAL RESEARCH     3.00              3.00
 2000-0279    COURT AUTOMATION                6.00              6.00
 2000-0752    POSTAGE                         2.00              2.00
 8001-0001    UNCOLLECTED COSTS - POVERTY    60.00 CR          60.00 C
                                           -----------       -----------
                                               .00               .00
```



EXHIBIT

Gregory Hartmann, Hamilton County Clerk of Courts

Hamilton County Clerk of Courts

**Schedules**                                              **Document Listing**

APPEARANCE DOCKET                                    C 9600545

Attorney - Plaintiff
Attorney - Defendant              BRYAN R PERKINS            61871
Judge -

STATE OF OHIO     vs.     BRUCE WOODS

Filed: 7/12/1996 A105 - NOTICE OF APPEAL - CRIMINAL - POVERTY AFFIDAVIT
Total Deposits $.00                    Total Costs $60.00

BRUCE WOODS

Appellant(s)

vs.

STATE OF OHIO

Appellee(s)

| IMAGE | DATE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| | 7/12/1996 | NO DEPOSIT REQUIRED-POV.AFF. BRUCE WOODS | |
| | 7/12/1996 | APPEAL - ON QUESTIONS OF LAW | |
| | 7/12/1996 | NOTICE OF APPEAL FILED. | |
| | 7/12/1996 | COMMON PLEAS TRIAL COURT # B-9600345 | |
| | 7/12/1996 | COPY SENT BY ORDINARY MAIL TO HAMILTON COUNTY PROSECUTORS | |
| 19 | 7/30/1996 | ORDER TO SHOW CAUSE | |
| | 8/1/1996 | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. | |
| | 8/12/1996 | DOCKET STATEMENT FILED. B9600345 | |
| 2 | 8/30/1996 | REGULAR CALENDAR SCHEDULING ORDER, ENTERED. 11/19/96 RECORD DUE. 01/03/97 APPELLANT'S BRIEF DUE02/17/97 APPELLEE'S BRIEF DUE | |
| | 9/5/1996 | NOTICE OF ORDER OR JUDGMENT SENT BY ORDINARY MAIL TO ALL PARTIES REQUIRED BY LAW. | |
| | 11/7/1996 | TRANSCRIPT OF DOCKET AND JOURNAL ENTRIES FILED | |
| | 11/7/1996 | NOTICE OF FILING OF RECORD EXCLUDING TRANSCRIPT OF PROCEEDINGS MAILED TO BRYAN R PERKINS AND COUNTY PROSECUTOR | |
| | 11/7/1996 | NOTICE OF FILING OF RECORD EXCLUDING TRANSCRIPT OF PROCEEDINGS MAILED TO BRYAN | |

R PERKINS AND COUNTY PROSECUTOR

15    12/5/1996    ENTRY DISMISSING APPEAL B960345

          12/13/1996    NOTICE OF ORDER OR JUDGMENT SENT BY
                        ORDINARY MAIL TO ALL PARTIES REQUIRED BY
                        LAW.

IN THE COURT OF APPEALS

FIRST APPELLATE DISTRICT OF OHIO

HAMILTON COUNTY, OHIO

STATE OF OHIO                    :          APPEAL NO: C-960545
                                            TRIAL NO. B-9600345
   Appellee,

vs.                                         ENTRY DISMISSING APPEAL

BRUCE WOODS

   Appellant.



        This cause came on to be considered upon the appeal from the
trial court, and

        The Court, being fully advised, *sua sponte* dismisses the
appeal for failure of the appellant to show good cause why he has
failed to comply with the Ohio Rules of Appellate Procedure, to
wit:  the transcript of proceedings was due to be filed on
11/19/96.

        It is further Ordered that a certified copy of this judgment
shall constitute the mandate to the trial court pursuant to Rule
27, Ohio Rules of Appellate Procedure.


TO THE CLERK:                        (COPIES SENT TO ALL COUNSEL)

ENTER UPON THE JOURNAL OF

THE COURT  _12/5/96_

PER ORDER OF THE COURT.

BY: _____

        Presiding Judge

## Criminal Docket Statement
### (Must Be Typed and Filed In Duplicate and Served On Opposing Counsel)

Rev. 3/95

**1. Case Caption**

State of Ohio, Plaintiff

vs.

Bruce Woods, Defendant

FILED
COURT OF APPEALS
AUG 12 1996
JAMES CISSEL
CLERK OF COURTS
HAMILTON COUNTY

| | |
|---|---|
| 2. Appeal No. | C960545 |
| 3. Trial No. | B9600345 |
| 4. Trial Judge | O'Connor |
| 5. Related Appeals: | |
| 6. Date of Judgment/ | |
| Order Appealed From: | June 14, 1996 |
| 7. Date Appeal Filed: | July 12, 1996 |

**8. Counsel For Appellant**

Bryan R. PErkins (0061871)
23 East Seventh Street
Suite 1116
Cincinnati, Ohio 45202
(513) 929-4449

**9. Counsel For Appellee**

Joseph T. Deters (0012084)
914 Main Street
Suite 200
Cincinnati, Ohio 45202
(513) 632-5766

**10 (B). Criminal Status**

| | | |
|---|---|---|
| Counsel was appointed for trial. | Yes | (No) |
| Counsel was appointed for appeal. | Yes | (No) |
| Stay was granted by trial court. | Yes | (No) |
| Length of sentence | | |

Counsel will make a reasonable effort to contact the client prior to merit hearing so that counsel can advise the court of the clients status and desire to proceed with the appeal.

(Yes)    No

If answered no, please explain:

**11. Record**

There will be a partial transcript of proceedings filed.    Yes
  The parts to be ordered are:
There will be a complete transcript of proceedings filed.    (Yes)
*If either of the above are applicable the court reporter's certification below must be completed.*

*If neither of the above are applicable then one of the following must be circled:*
  There will be a statement filed pursuant to App. R. 9(C).    Yes
  There will be an agreed statement filed pursuant to App. R. 9(D).    Yes
  There is no transcript, statement or agreed statement to be filed.    Yes
  *Circling any of the above three will be deemed sufficient compliance with App. R. 9(C) and Local Rule 5.*

**12. Court Reporter's Certification**

The transcript as ordered consists of approximately ___600___ pages and pursuant to Local Rule 10, the transcript will be prepared and ready for filing on __11-12-96__ pursuant to receiving deposit of $1200 by 9-12-96.
  Date: __8-12-96__    Signature __Clara J. McCubrex__

**13. Brief**

Upon the filing of the complete record I request ___60___ days to file the brief and assignments of error.

**14. Nature of the Appeal**

Please Check All That Apply and Specify Whenever Space Is Provided:

| | | |
|---|---|---|
| ☐ Arson | ☐ DUI | ☐ Sex Offense |
| ☐ Assault | ☒ Kidnapping | ☐ Theft Offense |
| ☐ Attempt | ☐ Murder | ☐ Traffic Offense |
| ☐ Automobile Offense | ☐ Death Penalty | ☐ Weapons Offense |
| ☒ Burglary | ☐ Post Conviction | ☐ Other |
| ☐ Complicity, Conspiracy | ☐ Probation | |
| ☐ Drug Offense | ☒ Robbery | |

**15. Probable Issues for Review:**

☐ Counsel was Recently Appointed and is Not Yet Able to Identify Probable Issue(s) For Review.

- - - OR - - -

Please Check All That Apply and Specify Whenever Space Is Provided:

| | | | |
|---|---|---|---|
| ☒ Allied Offenses | ☐ Prosecutor | Trial Matters | |
| ☐ Constitutional Law | Search and Seizure | ☒ Evidence | |
| ☐ Counsel -- Effective Assistance | ☐ Arrest | ☐ Expert Witnesses | EXHIBIT |
| ☐ Crim. R. 11 | ☐ Miranda | ☐ Jury Instructions | 5 |
| ☐ Expungement | ☐ Warrant | ☐ Witnesses | |
| ☐ ID/Photos | ☐ Other: | ☐ Other: | |
| ☐ Indictment/Complaint | ☐ Sentencing | ☒ Weight of Evidence | |
| ☐ Lesser Included Offenses | ☐ Speedy Trial | ☐ Other | |
| ☐ Procedure/Rules | ☒ Sufficient Evidence/Crim. R. 29 | | |
| ☐ Probation | | | |

**16. Cases and/or Statutes to be Discussed:**

**17. Certificate of Service**

I certify that I have mailed or otherwise delivered a copy of this docket statement to all counsel of record or the parties if unrepresented.
  Date: __8/12/96__    Signature _____

HAMILTON COUNTY COMMON PLEAS COURT
ROOM 315, HAMILTON COUNTY COURTHOUSE
1000 MAIN STREET
CINCINNATI, OHIO 45202

IN ACCORDANCE WITH APPELLATE RULE 30(A),
YOU ARE HEREBY GIVEN NOTICE THAT THE
FOLLOWING ORDER OR JUDGMENT HAS BEEN
JOURNALIZED ON THE 30TH DAY OF
AUGUST , 1996, IMAGE NUMBER 2.

REGULAR CALENDAR
SCHEDULING ORDER, ENTERED.
11/19/96 RECORD DUE.
01/03/97 APPELLANT'S BRIEF DUE
02/17/97 APPELLEE'S BRIEF DUE

NOTICE IS SENT BY ORDINARY MAIL TO
ALL PARTIES REQUIRED BY LAW.
Deputy:  David P. Gilb
JAMES CISSELL
CLERK OF COURTS

Case No. C 96-00545
STATE OF OHIO
- v s -
BRUCE WOODS

---------------------------------

STATE OF OHIO

---

HAMILTON COUNTY COMMON PLEAS COURT
ROOM 315, HAMILTON COUNTY COURTHOUSE
1000 MAIN STREET
CINCINNATI, OHIO 45202

IN ACCORDANCE WITH APPELLATE RULE 30(A),
YOU ARE HEREBY GIVEN NOTICE THAT THE
FOLLOWING ORDER OR JUDGMENT HAS BEEN
JOURNALIZED ON THE 30TH DAY OF
JULY , 1996, IMAGE NUMBER 19.

ORDER TO SHOW CAUSE

NOTICE IS SENT BY ORDINARY MAIL TO
ALL PARTIES REQUIRED BY LAW.
Deputy:  David P. Gilb
JAMES CISSELL
CLERK OF COURTS

Case No. C 96-00545
STATE OF OHIO
- v s -
BRUCE WOODS

---------------------------------

STATE OF OHIO



HAMILTON COUNTY COMMON PLEAS COURT
ROOM 315, HAMILTON COUNTY COURTHOUSE
1000 MAIN STREET
CINCINNATI, OHIO 45202

IN ACCORDANCE WITH APPELLATE RULE 30(A),
YOU ARE HEREBY GIVEN NOTICE THAT THE
FOLLOWING ORDER OR JUDGMENT HAS BEEN
JOURNALIZED ON THE 5TH DAY OF
DECEMBER , 1996, IMAGE NUMBER 15.

CASE NO. C 94-00545
STATE OF OHIO
- V S -
BRUCE WOODS

ENTRY DISMISSING APPEAL
B960345

-------------------------------------

NOTICE IS SENT BY ORDINARY MAIL TO
ALL PARTIES REQUIRED BY LAW.
Deputy:  David P. Gilb
        JAMES CISSELL
        CLERK OF COURTS

STATE OF OHIO