## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE WOODS, | : | |
|    Petitioner, | : | Case No. 1:00CV803 |
| v. | : | Judge Spiegel |
| WANZA JACKSON, Warden, | : | Magistrate Judge Black |
|    Respondent. | : | |

_____

### BRIEF OF RESPONDENT JACKSON
_____

 

Respectfully submitted,

JIM PETRO  (0022096)
Attorney General


STUART A. COLE   (0020237)
Assistant Attorney General
Corrections Litigation Section
150 E. Gay St., 16th Floor
Columbus, Ohio 43215
(614) 644-7233
(614) 728-9327 (fax)
scole@ag.state.oh.us

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................ ii

Introduction ............................................................................................ 1

State Court Proceedings ....................................................................... 2

Argument ............................................................................................... 4

    Woods is not entitled to any equitable tolling for his untimely habeas corpus petition ................................................................. 4

    A.    Introduction ............................................................................. 4

    B.    Woods is not entitled to any equitable tolling from January 4, 1997 when his conviction became final until he contacted the Ohio Public Defender on February 4, 1998. ........................................................... 6

    C.    Woods is not entitled to any equitable tolling from February 4, 1998 when he first contacted the Ohio Public Defender until August 28, 1998 when he filed his motion for delayed appeal. ........................................ 9

    D.    By waiting almost an additional year to file his habeas petition after the United States Supreme Court rejected his case, Woods forfeited any lingering right to habeas review that he may have had. .................... 11

Conclusion ............................................................................................ 14

Certificate of Service ............................................................................. 15

Appendix ............................................................................................... 16

    *Elliott v. DeWitt*, 10 Fed. Appx. 311 (6th Cir. 2001)

    *Brown v. United States*, 20 Fed. Appx. 373 (6th Cir. 2001)

## TABLE OF AUTHORITIES

**Page**

Federal Cases

*Allen v. Yukins*, 366 F.3d 396 (6th Cir.),
    cert. denied, 125 S. Ct. 200 (2004) .......................................................... 9

*Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988) ...................................................... 5

*Artuz v. Bennett*, 531 U.S. 4 (2000) ...................................................................... 4

*Brown v. United States*, 20 Fed. Appx. 373 (6th Cir. 2001) ................................ 8

*Coleman v. Thompson*, 501 U.S. 722 (1991) ..................................................... 12

*Dunlap v. United States*, 250 F.3d 1001 (6th Cir.),
    cert. denied, 534 U.S. 1057 (2001) .......................................................... *passim*

*Elliott v. Dewitt*, 10 Fed. Appx. 311 (2001) ......................................................... 6

*Johnson v. McCaughtry*, 265 F.3d 559 (7th Cir. 2001),
    cert. denied, 535 U.S. 937 (2002) ............................................................ 12

*Jurado v. Burt*, 337 F.3d 638 (6th Cir. 2003) ...................................................... 2, 8

*Searcy v. Carter*, 246 F.3d 515 (6th Cir.),
    cert. denied, 534 U.S. 905 (2001) ............................................................ 4

*Johnson v. United States,* 125 S.Ct. 1571 (2005) ............................................ 1, 8, 12

*Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003) ............................................... 8, 10

Federal Rules and Statutes

28 U.S.C. §2244 ..................................................................................................... 4

**INTRODUCTION**

As a consequence of a multitude of discovery, the factual history of this case has been clarified and there is little that remains in dispute in this long pending federal habeas corpus action.[1] For example it is now known that defense counsel Brian Perkins (hereinafter "Perkins") failed to provide Woods with effective appellate representation subsequent to Woods' conviction. It is further beyond serious dispute that in the years following his conviction that both Woods, and Woods' current counsel, manifested an exceptional indifference to the time dictates set forth by the AEDPA statute of limitations.

Moreover, all the parties would seem to agree that Woods' habeas corpus action is untimely under the dictates of the Anti-Terrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA") statute of limitations. The only question, and the issue upon which the Sixth Circuit ordered a remand, is whether Woods can demonstrate an entitlement to equitable tolling. Like the petitioner in *Johnson v. United States,* 125 S.Ct. 1571, 1580 (2005), Woods apparently now believes that this Court is required to grant him equitable tolling "no matter how long he may have slumbered before starting [his delayed direct appeal and federal habeas] proceeding." It is Respondent's position, however, that in light of the remarkable concessions made by Woods at his April 20, 2005 deposition, coupled with Woods' inexcusable delay in pursuing habeas corpus relief, **both before and after** his representation by current counsel, Woods is not entitled to any equitable tolling whatsoever, let alone the massive equitable tolling that would be necessary to render this action timely.

---

[1] In response to a request from Respondent's former counsel, this case was previously remanded to this Court from the Sixth Circuit for the further factual development that has now transpired.

1

## **STATE-COURT PROCEEDINGS**

Bruce Woods was convicted after a jury trial in the Hamilton County Common Pleas Court of three counts of aggravated burglary with firearm specifications, two counts of robbery and two counts of kidnapping with firearm specifications. On June 14, 1996, Woods was sentenced to an aggregate term of incarceration of seventy-five (75) to one-hundred-twenty-five (125) years plus twelve (12) years for the firearm specifications. (Respondent's Motion to Dismiss, Exhibit A). Woods concedes that at the time of sentencing he was advised, and in fact understood, his appellate rights. (Woods deposition, Tr. 12).

In accordance with Woods stated desire to pursue an appeal, on July 12, 1996, Perkins filed a notice of appeal. (Woods deposition, Exhibit 2). Unfortunately, although correctly citing the date of Woods' conviction, this pleading misidentified Woods' criminal case number[2]. Thereafter, **neither Woods nor Perkins took any action whatsoever to prosecute a Woods appeal.** As a consequence of this failure to litigate, the Ohio Court of Appeals dismissed Woods' appeal on December 15, 1996. (Woods deposition, Exhibit 3).

Woods did not appeal the denial of his appeal to the Ohio Supreme Court.

Six-hundred-twenty-two (622) days later, on August 28, 1998, Woods filed a motion for leave to file a delayed appeal. (Respondent's Motion to Dismiss, Exhibit B) The Ohio Court of Appeals overruled the motion. (Respondent's Motion to Dismiss, Exhibit C). Woods' subsequent appeal to the Ohio Supreme Court was denied on

---

[2] In past pleadings Woods has seemed to assume that equitable tolling is warranted by a showing of appellate counsel ineffectiveness. This position has been explicitly rejected by the Sixth Circuit. Specifically, in *Jurado v. Burt,* 337 F.3d 638, 644-45 (6th Cir. 2003), the Sixth Circuit recognized that unreasonable and mistaken appellate counsel actions are **not** a ground for equitable tolling.

2

February 3, 1999.  (Respondent's Motion to Dismiss, Exhibit D).  Woods filed a petition for *certiorari* in the United States Supreme Court, which was denied on October 13, 1999.  (Respondent's Motion to Dismiss, Exhibit E).

Three-hundred-forty-three (343) days later, on September 21, 2000, Woods filed the instant application for federal habeas corpus.[3]

---

[3] Respondent notes in passing that in addition to failing to identify a single appellate claim in **any** of his state or federal pleadings, it is now Woods' position that the very issue is "privileged".  (Woods deposition Tr. 18).

## **ARGUMENT**

**WOODS IS NOT ENTITLED TO ANY EQUITABLE TOLLING FOR HIS UNTIMELY HABEAS CORPUS PETITION.**

*A.    Introduction*

The ADEPA one-year statute of limitation set forth in 28 U.S.C. §2244 states, in relevant part, as follows:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The statute of limitations runs from the date on which the judgment of conviction becomes final on direct appeal or upon the expiration of the time for seeking direct review, but the statute is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts.  *See* 28 U.S.C. 2244(d)(2); *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000).  The Sixth Circuit has held that a motion for a delayed appeal may toll the limitations period while it is pending, but it does not start the limitations period anew.  *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir.), *cert. denied*, 534 U.S. 905 (2001)

Because the AEDPA statute of limitations is not jurisdictional, it is still possible under exceptional circumstances for a habeas petitioner to maintain a viable habeas action upon a determination that equitable tolling is appropriate.  In *Dunlap v. United*

4

*States*, 250 F.3d 1001 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001), the Sixth Circuit limited equitable tolling to the rare case where an inmate has satisfied the following factors set out in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988):

1. The petitioner's lack of notice of the filing requirement;

2. The petitioner's lack of constructive knowledge of the filing requirement;

3. Diligence in pursuing ones rights;

4. Absence of prejudice to the respondent; and

5. The petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Id.* The Petitioner has the burden of demonstrating a majority of these factors on balance to be entitled to equitable tolling.

Woods claims an entitlement to equitable tolling for three distinct time periods:

1. The date upon which he could no longer seek a timely direct review of his conviction in the Ohio appellate courts until the date that he contacted the Ohio Public Defender.

2. The date that Woods contacted the Ohio Public Defender until the date that the Ohio Public Defender filed Woods' delayed appeal motion.

3. The date that Woods' delayed appeal motion was denied until the date that Woods filed his federal habeas petition.

For reasons to follow, Respondent submits that Woods is not entitled to equitable tolling for **any** of the periods at issue.

> **B.** ***Woods is not entitled to any equitable tolling from January 4, 1997 when his conviction became final until he contacted the Ohio Public Defender on February 4, 1998.***

As a consequence of Woods' failure to pursue a timely direct appeal from his conviction, Woods' conviction became final thirty (30) days after the trial court's December 05, 1996 dismissal of Woods' appeal, or on January 4, 1997.

Woods claims that he is entitled to equitable tolling for any and all time between January 4, 1997, the date that his conviction became final, and September 21, 2000, the date that he filed his habeas corpus petition. With respect to the period of time that elapsed prior to his initial contact with the Ohio Public Defender, Woods entirely bases this "right" to equitable tolling upon Woods' professed belief an appeal was pending.[4]

As discussed above, in order to determine whether Woods is in fact entitled to equitable tolling for each time period in question, this Court must employ the standards articulated by the Sixth Circuit in *Dunlap*. The first *Dunlap* issue relates to Woods actual or constructive knowledge of the AEDPA statute of limitations.[5] Although Woods apparently believes that his professed ignorance of both the status of his pending appeal and the AEDPA statute of limitations provides some short of shield to any timeliness problems, the Sixth Circuit has found otherwise. Specifically, in *Elliott v. Dewitt*, 10 Fed. Appx. 311 (2001) (Exhibit A) the Sixth Circuit held that an attorney's failure to notify petitioner of the state appellate court's decision which results in a missed filing deadline is **not** a basis for equitable tolling. In so ruling the Sixth Circuit

---

[4] On its face this allegation is rather curious in light of Woods' open acknowledgement that neither Woods nor his family paid Perkins a penny to pursue an appeal, (Woods deposition Tr. 14-16), and that neither Woods nor his family had any communication with Perkins regarding the status of the appeal. (Woods deposition Exhibit 1, ¶9).

[5] Apparently unfamiliar with the standards of *Dunlap,* Woods' current counsel, questioned "the possible material relevance [of Woods'] understanding of the statute of limitations" at Woods deposition, Tr. 38.

6

emphasized that it is **the responsibility of the Petitioner** to monitor the status of his appeal and diligently pursue relief.

The next *Dunlap* factor relates to Woods' diligence in the pursuit of his rights. In his deposition Woods again and again refused to be pinned down with even the most approximate date as to when Woods allegedly realized that Perkins was not gratuitously pursuing an appeal in which Woods had not been provided with a single pleading.[6]

Q: So when did you first start to believe that you did not have an appeal?

A: For sure? When did I know I didn't have an appeal for sure?

Q: When did you begin to suspect that you didn't have an appeal?

A: That's a good question. You're asking for a specific date, time?

* * *

A: I don't know the approximate time**.** It had to be when I was at Lucasville because I was watching TV and it was right there.

* * *

Q: So my question again is, when did you begin to suspect that you, in fact, did not have an appeal? I'm not asking for a date, I'm asking for an approximate month, even season, if you want.

A: I'm not for sure.

Q: So your testimony today is, is it fair to say that you have no idea whatsoever when you began to suspect that you didn't have an appeal pending?

A: I knew that. I knew the fact that I wasn't getting any legal mail and everybody else was. When they called your name for legal mail and I kept getting passed over, I knew something was wrong. I also knew that when I would call home and I would say, did you call Mr. Perkins, they would say, he's not there, he's out of the office. I knew something was wrong.

---

[6] Respondent again notes that it borders on the incredulous to accept Woods claim that despite no payment to Perkins nor **any** evidence of a pending appeal, that Woods nevertheless believed that his conviction was being appealed.

7

\* \* \*

Q:  Once you were in the penitentiary after you were convicted, from then on you had no contact with Mr. Perkins?

A:  Correct.

Q:  So you began to suspect fairly soon that something might be going wrong then

A:  I waited.  I waited - - From the time I got to the penitentiary, I waited. Not because I wanted to.

About the only thing that one can be sure of from the above quoted Woods testimony is that Woods was **not** remotely diligent under any sense of the word. Indeed, in addition to his inability to identify when he first realized that he did not have a pending state appeal, in his deposition at Tr. 30-31, Woods openly acknowledged that at no time did he make a single effort to monitor any aspect of his appeal.  [petitioner has an affirmative "duty to monitor the status of his appeal."  *Brown v. United States*, 20 Fed. Appx. 373, 375 (6th Cir. 2001) (Exhibit B).]  Under these circumstances, the alleged ineffectiveness of Perkins is utterly irrelevant.  Because Woods is seeking equitable tolling, the determinative question is whether or not Woods was diligent in pursuing his rights.  *See, Johnson v. United States, supra*.  Woods had the duty to monitor his own appeal irrespective of Perkins' actions.

As such, the facts at bar far exceed the situation in *Jurado v. Burt,* 337 F.3d 638 (6th Cir. 2003), wherein the petitioner was held not to have been diligent despite being given erroneous and unreasonable advice by defense counsel.  Surely if equitable tolling was not appropriate in *Jurado,* where the petitioner detrimentally relied upon the incorrect advice of his attorney, then it is not appropriate here, where for no rational reason Woods simply chose to assume that appeal was pending.

8

The next *Dunlap* equitable tolling factor concerns prejudice to the respondent. However, as held by the Sixth Circuit at *Vroman v. Brigano,* 346 F.3d 598, 605 (6th Cir. 2003), "absence of prejudice is a factor to be considered only after a factor that might justify tolling identified." *See also, Allen v. Yukins,* 366 F.3d 396, 404 (6th Cir.), *cert. denied*, 125 S. Ct. 200 (2004).

As thus demonstrated, Woods could hardly have been more unreasonable in his conscious decision to remain ignorant of the legal requirement for filing his petition. Woods has failed miserably at establishing a right to equitable tolling from the period of time from January 4, 1997 until he contacted the Ohio Public Defender on February 4, 1998.

> **C.  Woods is not entitled to any equitable tolling from February 4, 1998 when he first contacted the Ohio Public Defender until August 28, 1998 when he filed his motion for delayed appeal.**

Over six hundred days after he was sentenced, on February 4, 1998, Woods current counsel, the Ohio Public Defender, received a letter from Woods asking them to represent him. Although numerous communications between Woods and the Ohio Public Defender ensued, it was not until over six months later, on August 28, 1998, that the Ohio Public Defender finally filed a motion for delayed appeal in the Ohio Court of Appeals. In his deposition Woods repeatedly testified that he was not at all concerned with respect to this lengthy period of time of no pending litigation. (Woods deposition, Tr. 36-37).

It is not entirely clear why Woods believes that he is entitled to equitable tolling for the period of time that transpired subsequent to February 4, 1998. Certainly Woods cannot seriously claim that the Ohio Public Defender lacked either actual or constructive

9

notice of the filing requirements of AEDPA. More likely, Woods is claiming that the Ohio Public Defender acted diligently in the six (6) month period between the time that he contacted him and the time that his delayed direct appeal was filed. The trouble with this argument, is that it erroneously entirely focuses upon Woods' unexplained need to take six months to prepare a delayed direct appeal while ignoring the incredible three-hundred-forty-three (343) day period of time that subsequently elapsed between the United States Court denial of *certiorari* on October 13, 1999 and Woods' September 21, 2000 filing of his habeas corpus petition.

In *Vroman v. Brigano,* 346 F.3d 598 (6th Cir. 2003), faced with facts that pale in comparison to the delay at bar, the Sixth Circuit explicitly rejected the argument that it was bound to consider the time taken to pursue a particular state action in isolation. In *Vroman,* the petitioner argued that he was entitled to equitable tolling because his state post-conviction petition was filed only one day late. Because of this mere one day delay, Vroman's entire post-conviction litigation was deemed untimely and thus no tolling of the AEDPA statute of limitation resulted. While sympathetic to the argument that due diligence could arguably be reflected in the fact that the post-conviction petition was only filed a day late, the Sixth Circuit nevertheless affirmed the district court dismissal of Vroman's petition for being untimely. In language particularly applicable to Woods, the Sixth Circuit held in *Vroman,* 346 F.3d at 605, emphasis added, footnote omitted:

> This argument, however, focuses on Vroman's diligence in pursuing his rights in Ohio state post-conviction proceedings. Vroman fails to address is lack of diligence in timely filing a petition for habeas relief. **While Vroman concentrates his argument on the fact that at most his state filing was one day late, this court must determine whether to**

10

> **equitably Vroman's AEDPA statute of limitations for more than one year.**
>
> \* \* \*
>
> Vroman's appeal was denied by an Ohio appellate court on April 15, 1997, thereby informing Vroman more than eleven months prior to his habeas filing deadline that the Ohio courts did not consider his September 24, 1996, petition properly filed. Vroman's decision to proceed solely to the Ohio Supreme Court, rather than filing his federal habeas petition and protecting his federal constitutional rights, demonstrates a lack of diligence.

Here, as in *Vroman,* there has been no showing whatsoever of an entitlement to equitable tolling for the period of time that elapsed subsequent to Woods' communications with his current counsel, the Ohio Public Defender. Indeed, to the contrary, despite the fact that Woods' petition for writ of habeas corpus was already years late when the United States Supreme Court denied *certiorari* with respect to Woods' motion for delayed appeal, Woods, inexplicably, **while represented by current counsel,** waited another 353 days before filing his September 21, 2000 habeas corpus petition in this Court. Under these circumstances Woods is not entitled to any equitable tolling for the period commencing from February 4, 1998, the date that he contacted the Ohio Public Defender until the filing of his August 28, 1998 motion for delayed appeal.

**D.** ***By waiting almost an additional year to file his habeas petition after the United States Supreme Court rejected his case, Woods forfeited any lingering right to habeas review that he may have had.***

As noted above, Woods does not and cannot deny that from he had actual notice of the filing requirements of AEDPA from the time that he was represented by current counsel until well over two years thereafter when he finally filed his instant habeas petition. Recently, in *Johnson v. United States,* 125 S.Ct. 1571, 1580 (2005), the United

11

States Supreme Court provided guidance on how a court should "implement the statutory mandate that a petitioner act with due diligence" as it held,

> Diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction….

Here, even ignoring the extended Woods period of inaction prior to the Ohio Public Defender's arrival upon the scene, viewed in its entirety there is absolutely nothing in the record to reflect a diligent pursuit of Woods' appellate rights.[7]

Whether attributable to his own neglect or that of his habeas counsel, the procedural history of this case demonstrates that Woods is not entitled to equitable tolling of the AEDPA statute of limitations. The purpose of the one-year statute of limitations imposed by the AEDPA was to "curb undue delays and abuses of the writ of habeas corpus." *Dunlap*, 250 F.3d at 1006.

Woods has failed miserably to satisfy the "high hurdle" erected by *Dunlap*. Rather than demonstrating that he was diligent in the monitoring of his case and in pursuit of his statutory right to habeas review, Woods has done nothing more than attack his trial attorney, with whom he maintained no contact and to whom he did not pay a penny. Again, however, a habeas petitioner "bears the risk in federal habeas for all attorney errors made in the course of the representation" because "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991). In order to minimize that risk, habeas petitioners must exercise reasonable diligence in overseeing the actions of their attorneys. *See Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir.), *cert. denied*, 535

---

[7] Of course there similarly can be no denying that the Ohio Public Defender was aware, and apparently chose to ignore, the period of inaction that transpired from the denial of Woods initial appeal until the time that he contacted them over fourteen (14) months later.

12

U.S. 937 (2002). ["[M]any clients, whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands."]

      Here, Woods did not exercise anything approaching due diligence. There were no circumstances beyond his control that prevented him from filing his habeas petition on time. His own absolute failure to monitor the status of his direct appeal, the delay attributed to filing of his delayed appeal motion, and the final painfully long delay in filing his habeas petition were delays of Woods own accord or those of his habeas counsel. There are no "extraordinary circumstances" so as to justify equitable tolling.

## **CONCLUSION**

For the foregoing reasons, Respondent respectfully moves this Court to dismiss Woods' petition for writ of habeas corpus. In light of the discovery conducted by the parties and discussed herein, an evidentiary hearing regarding Woods' diligence in pursuing his rights and his reasonableness in remaining ignorant of his need to file an appeal is not necessary.

    Respectfully submitted,

    JIM PETRO
    Attorney General

    /s/ Stuart A. Cole
    STUART A. COLE   (0020237)
    Assistant Attorney General
    Corrections Litigation Section
    150 E. Gay St., 16th Floor
    Columbus, Ohio 43215
    (614) 644-7233
    (614) 728-9327 (fax)
    scole@ag.state.oh.us

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2005, a copy of the foregoing *Brief* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                /s/ Stuart A. Cole
                                                Stuart A. Cole
                                                Assistant Attorney General

# APPENDIX