UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRUCE WOODS,

    Petitioner,                                              Case No. 1:00cv803

vs.

                                                             Judge Spiegel
WANZA JACKSON,                                  M.J. Black

    Respondent.

_____

**PETITIONER'S MOTION FOR SUMMARY JUDGMENT**
_____

       Petitioner Woods moves this Court for summary judgment finding that (1) he is entitled to equitable tolling; and (2) he is entitled to habeas relief on the merits of his claim that he was denied his constitutional rights to a direct appeal in state court.

                                                            Respectfully Submitted,

                                                            DAVID H. BODIKER
                                                            OHIO PUBLIC DEFENDER

                                                            _s/Gregory W. Meyers_____
                                                           GREGORY W. MEYERS (0014887)
                                                          Senior Assistant Public Defender

                                                          Office of the Ohio Public Defender
                                                          8 East Long Street, 11th FL
                                                          Columbus, Ohio 43215
                                                          614 466 5394
                                                          614 728 3670 Fax

                                                          COUNSEL FOR PETITIONER

## MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

**I.     Overview.**

Through no fault of his own, Petitioner was deprived of his constitutional right to a direct appeal in state court after he was convicted before a jury. Respondent's efforts to block Petitioner for having his day in court – one, fair shot at direct appeal – should come to and end.

Petitioner is entitled to summary judgment based upon the facts presented through various pleadings of record; the law of this case; and the law governing equitable tolling and the merits of his claim that his constitutional rights to a direct appeal were violated in state court.

Petitioner's summary judgment motion relies on various facts, some of which have not been formally accepted into the record. This Court granted Petitioner's Rule 5 Motion to expand the record (Docs. 57 and 64). Pending before this Court are Petitioner's Rule 7 Motion to expand the record (Doc. 61), and Respondent's Rule 7 Motion (Doc. 70). Petitioner presents this summary judgment motion on the assumption that this Court will grant the pending motions, since neither party has opposed the other's record-expansion motions.

**II.     Procedural posture.**

On February 19, 2004, the Sixth Circuit remanded Petitioner's case "for the district court to develop the factual record regarding Woods' entitlement to equitable tolling." <u>Woods v. Brigano</u>, Case No. 02-4264, 2004 U.S. App. Lexis 3344, *6-7 (6th Cir). On March 9, 2004, Judge Spiegel referred "this matter to the assigned Magistrate Judge to hold an evidentiary hearing to develop the factual record as contemplated by the Sixth Circuit's order remanding the case to this Court." Order 3-9-04 p. 3.

After being remanded by the Sixth Circuit Court of Appeals, Judge Spiegel issued an Order on March 9, 2004, "refer[ring] this mater to the assigned Magistrate Judge to hold an

evidentiary hearing to develop the factual record as contemplated by the Sixth Circuit's order remanding the case to this Court." Doc. # 40. Thereafter, the parties engaged in motion practice and voluntarily disclosed documents in response to their respective discovery demands. Doc. # 43 (Respondent's Discovery Request); Doc. # 47 (Petitioner's Response to Respondent's Discovery Request); Doc. # 48 (Petitioner's Motion For Discovery); Doc. # 49 (Respondent's Response to Petitioner's Discovery Requests).

After the mutual disclosure of documents, Respondent moved for dismissal, Doc. # 50, which Petitioner opposed, Doc. # 51. This Court issued an Order denying Respondent's motion to dismiss; granting Petitioner's request to depose attorney Perkins, who represented him at trial; denying Petitioner's request to depose attorney McEvilley, who represented him during pre-trial proceedings; and saying in part:

> *This Court cautions respondent that the factual and legal issues are not as clear cut as respondent suggests* …. Thus far, the only new pertinent facts learned by respondent [regarding the equitable tolling issue] are when petitioner sought representation from the public defender's office (February 4, 1998) for the purpose of pursuing a delayed direct appeal and when the public defender agreed to represent petitioner (May 26, 1998). (Doc. 50 at 4-5). Other than petitioner's representation that he instructed his trial counsel to file a notice of appeal, the record is void of information as to what arrangements, if any, petitioner made with his trial counsel to pursue an appeal, what actions counsel took, and what counsel communicated to petitioner with respect to his appeal. *It would be helpful to this Court to learn what occurred from trial counsel's perspective.*

Doc. # 53 (Order dated 5-28-04 and filed 6-5-04; emphasis added; footnote omitted).

The evidence adduced on remand proves that Petitioner and his counsel acted in ways that entitle Petitioner to equitable tolling for the period of time from when he was convicted, through when he first contacted OPD, and through the time when OPD filed Petitioner's motion for delayed appeal. The law of this case entitles Petitioner to legal tolling for the time between the denial of certiorari and the filing of his habeas petition. Woods v. Brigano, at *2.

3

### III.     Law mandating summary judgment.

####     A.     Summary judgment law.

The standard for granting summary judgment in federal court is well-known: "The judgment sought shall be rendered forthwith if the pleadings, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The rules governing habeas cases do not alter the standard established through the Federal Rules of Civil Procedure. Rules Governing 2254 Cases, Rule 11. Summary judgment is appropriate in resolving habeas corpus proceedings where the material facts are not in dispute. See Browder v. Director, Illinois Dept. of Corrections, 434 U.S. 257, 266 n. 10 (1978); Blacklidge v. Allison, 431 U.S. 63, 80 (1977); Marzano v. Kinchelo, 915 F.2d 549, 552 (9th Cir. 1990); Valles v. Lynaugh, 835 F.2d 126, 127 (5th Cir. 1988); Jeffries v. Blodgett, 771 F.Supp. 1520 (W.D. Wash. 1991). The facts of Petitioner's case show that defense counsel violated his Sixth Amendment right to effective assistance of counsel and he was prejudiced.

####     B.     Law dictating habeas merits relief.

In circumstances like those presented here, where a convicted defendant wants a direct appeal, the failure to perfect an appeal constitutes a per se violation of his constitutional rights subject to habeas relief. Respondent concedes that "it is now known that defense counsel Brian Perkins ... failed to provide Woods with effective appellate representation subsequent to Woods' conviction." Brief of Respondent Jackson, p. 1 (Doc. 71). See Ludwig v. United States, 162 F.3d 456, 459 (6th Cir.1998) (failure to perfect a direct appeal in derogation of a request to do so is a per se violation of the Sixth Amendment, regardless of whether the appeal would have been successful). In fact, such deficiencies have been held to constitute ineffective assistance of

4

counsel per se. See Rodriquez v. United States, 395 U.S. 327, 330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969) ("Those whose right to appeal has been frustrated should be treated exactly like any other appellant; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage of the proceedings."); Roe v. Flores-Ortega, 528 U.S. 470 (2000) (A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable); and Ludwig v. U.S., 162 F.3d 456, 459 (6th Cir. 1998) (The failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment"); see also Griffin v. Illinois, 351 U.S. 12, 18 (1956); Evitts v. Lucey, 469 U.S. 387, 396 (1985); and Douglas v. California, 372 U.S. 353, 358 (1963).

    **C.**    **Law dictating equitable tolling.**

The basic equitable tolling factors are set forth as follows in Dunlap v. United States, 250 F.3d 1001, 1008 (6th Cir. 2001): "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." Not all of which apply of necessity to every case. Here, Petitioner knew something had to be done to initiate an appeal. He reasonably relied upon his lawyer to conclude that his lawyer was perfecting the appeal for him.

The following conclusions derive from applying Dunlap's factors to Petitioner's case:

1) The time between when Petitioner was sentenced and when he first contacted the Office of the Ohio Public Defender (OPD) after realizing his lawyer failed to perfect a timely appeal;

2) The time between Petitioner's first contact with OPD and when OPD assigned the case to an Assistant Public Defender after others conducted a basic "merits review;"

5

3) The time between when Petitioner's case was assigned to an Assistant Public Defender and when the motion for delayed appeal was filed in state court; and

4) The time between the state-court final adjudication of the motions for delayed appeal and the filing of the habeas petition.

What follows focuses on facts that demonstrate Petitioner's entitlement to equitable tolling. Once this framework is laid, there can be no question that Respondent would suffer no prejudice from having to do what should have been done years ago – give Petitioner a fair fight on direct appeal. Perkins' ineffectiveness years ago constitutes an unwarranted windfall for Respondent, who is in no position to cry foul now simply because a lawyer for the prosecution would have to defend the state's interest on what should have been a routine direct appeal long ago.

**IV.   Facts support summary judgment.**

Petitioner contends that:

1) his trial/appellate counsel's deposition testimony makes it clear that Petitioner suffered ineffective assistance of appellate counsel, which created a state impediment to his right to pursue habeas relief;

2) based on his appellate counsel's conduct, Petitioner's conduct, and applicable precedent, Petitioner is entitled to equitable tolling and habeas relief based on the period of time between his sentencing and when he contacted the Ohio Public Defender's Office (OPD);

3) no impediments bar relief based on what happened after Petitioner contacted OPD.

Attorney Perkins' deposition makes it clear that (1) he knew wanted an appeal; (2) he knew Petitioner was indigent; (3) he led Petitioner to believe the appeal would proceed; (4) he had, it appears, only one discussion about the appeal with Petitioner; (5) he had ongoing discussions with more than one member of Petitioner's family about getting paid to do the appeal; (6) he filed a notice of appeal in the wrong case number, somehow managing to avoid

6

paying the filing fee and winding up with a docket entry indicating a poverty affidavit had been filed when, in fact, it had not been filed; (7) he not only failed to perfect a timely appeal in the correct case number, he failed to protect Petitioner by asking the appellate court to appoint counsel; (8) he failed to prosecute the appeal (not knowing at the time the notice had been filed in connection with the dismissed case number); (9) he did not recall the dismissal entry, saying that the whole appeal issue faded away with a whimper, not a bang; and (10) he has no writing or letter of any kind making it clear to Petitioner or any of his family members that he was not pursuing the appeal he attempted to initiate.

Respondent argues that the fact Perkins was never paid renders Petitioner's reliance unreasonable. Brief of Respondent Jackson, p. 6 n.4 (Doc. 71). Perkins deposition and its exhibits refute that argument. No matter what happened on the money front, the fact is Perkins not only realized he was obligated to perfect Petitioner's appeal based on his discussions with Petitioner, Perkins attempted to perfect the appeal. Were Respondent's correct that this cases rises and falls on a dollar bill, Perkins never would have invested the efforts he did to file a notice of appeal.

Petitioner contends that he is entitled to summary judgment based upon the following facts, which appear in the record as Exhibits to Petitioner's Rule 5 and Rule 7 Motions:

**Rule 7 Exhibits 1.1 and 1.2:** Deposition transcript (Ex. 1.1 contains pages 1 through 40; Ex. 1.2 contains pages 41 through 70 plus the deposition exhibits) of Petitioner's trial and appellate attorney, Bryan Perkins, taken on 12-14-04, and the seven (7) Deposition Exhibits attached thereto, consisting of:

**Deposition Exhibit 1:** Attorney Perkins handwritten notes from his first contact with Petitioner;

**Deposition Exhibit 2:** A letter dated 4-4-96 from Perkins to Petitioner that bears the correct trial-court case number (versus the number under which attorney Perkins eventually filed a notice of appeal);

**Deposition Exhibit 3:** A notice of appeal Perkins filed for Petitioner under the wrong trial-court case number (96-345 instead of 96-1386);

**Deposition Exhibit 4:** The State appellate court docket generated in connection with the notice of appeal Perkins filed under the wrong trial-court case number, and showing that (A) the docket reflected the filing of an apparently non-existent Poverty Affidavit (which operated a waiver of the filing fee and other costs), and (B) the appeal was dismissed without counsel being appointed or a brief being filed;

**Deposition Exhibit 5:** The Criminal docket Statement Perkins eventually filed in the appellate case reflecting the fact that the Court Reporter expected a down payment towards the cost of the trial transcript before it would be prepared and filed for appeal – this document also relates back to the wrong trial-court case number;

**Deposition Exhibit 6:** A sheet of paper containing copies of two notices sent by the appellate court to Perkins pertaining to a show cause order for the missing Criminal Docket Statement (which should have been filed with the notice of appeal), and a scheduling order issued upon the filing of the Criminal Docket Statement; and

**Deposition Exhibit 7:** A sheet of paper containing a copy of the notice sent by the appellate court to Perkins informing him that the appeal had been dismissed on 12-5-96.

**Rule 5 Exhibit 1:** Hamilton County Clerk of Courts Docket Sheet for Common Pleas Case Number 96-345. This docket reflects activity related to the first indictment filed against Petitioner in connection with the convictions underlying his habeas petition. This indictment was replaced by a superseding indictment; but the first indictment was not immediately dismissed. As reflected in the docket, the indictment was dismissed during on 6-12-96, which was after Petitioner was convicted but before he was sentenced on the same criminal charges in the superseding indictment. Notwithstanding the fact that this case had been dismissed, the docket records a notice of appeal filed on 7-12-96, and the dismissal of that appeal on 12-5-96.

**Rule 5 Exhibit 2:** Hamilton County Clerk of Courts Docket Sheet for Common Pleas Case Number 96-1386. This docket reflects activity related to the superseding indictment filed against Petitioner. The superseding indictment contained the same criminal charges, but added a specification referred to as a prior offense of violence, which increased the potential sentences for the underlying crimes. This docket records the fact that the jury returned guilty verdicts on all counts on 5-31-96, and that Petitioner was sentenced on 6-14-96. There is no docket entry recording a timely notice of appeal. There is an entry on 8-28-98 recording the filing of a motion for delayed appeal, which Ohio courts denied, leading to the instant habeas litigation.

**Rule 5 Exhibit 3:** Hamilton County Clerk of Courts Docket Sheet for the Court of Appeals Case Number 96-545. This docket shows a notice of appeal filed on 7-12-96 in connection with the first indictment, Case Number 96-345, notwithstanding the fact that the case number being appealed had been dismissed on 6-12-96. The docket shows that this appeal was

dismissed on 12-5-96. In addition, Exhibit 3 contains a copy of the notice of appeal filed 7-12-96, a Criminal Docket Statement filed 8-12-96, and the 12-5-96 entry dismissing the appeal for want of prosecution.

**Rule 7 Exhibit 2:** A letter dated 12-29-04 from Perkins to Petitioner's habeas counsel written to address two questions asked at the deposition that could not be answered until attorney Perkins (1) searched for addition files related to Petitioner (none found), and (2) reviewed his cancelled checks from 1996 to determine if he had paid a filing fee when he filed a notice of appeal for Petitioner under the wrong trial-court case number (no check found).

**Rule 7 Exhibit 3:** Petitioner's affidavit that was attached to his State court motion for delayed appeal.

**Rule 7 Exhibits 4.1 and 4.2:** Petitioner's prison records from the Ohio Department of Rehabilitation and Corrections, produced by Respondent in response to Petitioner's discovery request, which, among other things, corroborate mental health issues relevant to Petitioner's equitable tolling argument. Exhibit 3.1 contains pages 1 through 19; Exhibit 3.2 contains pages 20 through 42 (page numbers added to originals on lower right-hand corner).

**Rule 7 Exhibits 5.1 through 5.15:** Includes fifteen (15) documents Petitioner disclosed to Respondent during discovery, relating to Petitioner's contact with the Ohio Public Defender's Office (OPD) and OPD's response to Petitioner's request for help:

    **Rule 7 Exhibit 5.1:** Petitioner's first letter to the Office of the Ohio Public Defender (OPD), with a copy of the envelope postmarked 2-4-98 (2 pages).

    **Rule 7 Exhibit 5.2:** OPD's response to Petitioner's first letter, dated 2-6-98 (one page).

    **Rule 7 Exhibit 5.3:** Petitioner's 2-11-98 response to OPD's 2-6-98 correspondence (dated by Petitioner on 2-11-98, received by OPD on 2-13-98), portions redacted to preserve privilege(s) (five pages).

    **Rule 7 Exhibit 5.4:** An internal OPD e-mail, dated 3-15-98, from intake employee James Anadell to support staff personnel Mary Dunning and Assistant Public Defender (APD) Felice Harris, assigning Petitioner's case to APD Harris, informing APD Harris of steps taken so far regarding Petitioner's request for representation, and suggesting that APD Harris get the sentencing transcript (one page).

    **Rule 7 Exhibit 5.5:** An internal OPD e-mail, dated 3-20-98, from APD Felice Harris to support staff personnel Debbie McCandlish, requesting a copy of Petitioner's sentencing transcript, and bearing hand-written notations by Ms. McCandlish dated 3-23-98 (one page).

    **Rule 7 Exhibit 5.6:** A letter dated 3-23-98 from Ms. McCandlish to a court reporter requesting the transcript of Petitioner's sentencing hearing (one page).

**Rule 7 Exhibit 5.7:** Another copy of the internal OPD e-mail, dated 3-20-98, from APD Felice Harris to support staff personnel Debbie McCandlish – this one bears a hand-written notation by APD Harris dated 3-24-98 (one page).

**Rule 7 Exhibit 5.8:** An internal OPD document indicating payment to the court reporter for Petitioner's sentencing transcript by a voucher dated 4-15-98 (one page).

**Rule 7 Exhibit 5.9:** An internal OPD document reflecting APD Harris's resignation from her employment with OPD effective 4-18-04, portions redacted to protect APD Harris's privacy interests (one page).

**Rule 7 Exhibit 5.10:** An internal OPD e-mail, dated 5-5-98, from OPD paralegal Nancy DeCatur to APD Bob Lane (who was APD Harris's supervisor) regarding Ms. DeCatur's telephone contact with Petitioner's trial-level attorney Bryan Perkins, portions redacted to preserve privilege(s) (one page).

**Rule 7 Exhibit 5.11:** A letter dated 5-13-98 from APD Supervising Attorney Bob Lane to Petitioner, portions redacted to preserve privilege(s) (one page).

**Rule 7 Exhibit 5.12:** A letter from Petitioner to APD Bob Lane, which, Petitioner's counsel assume, should be dated 5-15-98, not 3-15-98 – see envelope postmarked 5-15-98 – responding to APD Bob Lane's 5-13-98 letter to Petitioner, portions redacted to preserve privilege(s) (three pages).

**Rule 7 Exhibit 5.13:** An internal OPD e-mail, dated 5-19-98, from intake employee James Anadell to support staff personnel Mary Dunning, copied to APD Bob Lane and APD Tom Wetterer, indicating the reassignment of Petitioner's case to APD Tom Wetterer (one page).

**Rule 7 Exhibit 5.14:** An internal OPD printout from the "Time Matters" computer program (used by OPD intake personnel to track case activity) which tracks certain activity in Petitioner's case starting on 2-6-98 and ending on 5-19-98 (three pages).

**Rule 7 Exhibit 5.15:** A letter dated 5-26-98 from APD Wetterer to Petitioner saying he will prepare and file a motion for delayed appeal for Petitioner, portions redacted to preserve privilege(s).

**Rule 7 Motion Exhibits 1.1, 1.2, and 2: Trial Attorney's Deposition And His Follow-up Letter To Petitioner's Habeas Counsel.**

Petitioner's attorney's deposition, and his follow-up letter to habeas counsel, prove that Petitioner is entitled to equitable tolling and habeas relief on the claims of ineffective assistance of appellate counsel and the right to a direct appeal. The deposition of attorney Perkins proves

10

the following points in support of Petitioner's argument in favor of equitable tolling, and in favor of relief on the merits of his claims.

1) Attorney Perkins, who represented Petitioner at trial, knew Petitioner wanted to appeal his conviction; knew Petitioner wanted Perkins to represent him on appeal; and knew Petitioner was indigent (others had paid Perkins's fee for his trial representation, and were talking with Perkins about paying him for the appeal). Exhibit 1.1, p. 30; Exhibit 1.2, pp. 41-42.

2) Perkins agreed to appeal Petitioner's conviction subject to fee negotiations he conducted with Petitioner's supporters, but not with Petitioner himself. Exhibit 1.1, pp. 23-26, 31-33.

3) Shortly after Petitioner's sentencing, Perkins had his one and only direct conversation with Petitioner regarding his appeal. Exhibit 1.1, pp. 23-26, 29.

4) Shortly after Petitioner's sentencing, he was transferred from a county jail to a state prison facility, after which Perkins had no communication whatsoever with Petitioner about the appeal at issue. Perkins never visited Petitioner in prison, never accepted any collect phone calls from Petitioner, and never had any written correspondence with Petitioner. Exhibit 1.1, pp. 25-29; Exhibit 1.2, p. 59.

5) Notwithstanding unsettled fee negotiations, because Perkins knew Petitioner wanted an appeal, Perkins attempted to perfect the appeal and preserve Petitioner's rights by filing a notice of appeal; however, the notice of appeal was filed under the wrong trial court case number (96-345 instead of 96-1386). Perkins filed the notice of appeal under the case number assigned to the first indictment handed down against Petitioner. Exhibit 1.1, pp. 37-40; Deposition Exhibit 3; Rule 5 Motion Exhibits 1, 2 and 3..

6) Before Perkins entered his appearance of counsel for Petitioner in the trial court, a superseding indictment issued which bore the case number under which Petitioner was eventually convicted and sentenced (96-1386). Perkins was aware of this superseding indictment and case number: it appears on the first letter he wrote Petitioner, and it appears on pre-trial motions he filed on Petitioner's behalf. Exhibit 1.1, pp. 15-20; Deposition Exhibit 2; Rule 5 Motion Exhibit 2.

7) Perkins had received no money towards his fee, the filing fee, or the cost of paying for the trial transcript when he filed the notice of appeal in the wrong case number. Exhibit 1.2, pp. 41-42.

8) Perkins mistakenly filed a notice of appeal under the wrong case number. Perkins did not catch this error until eight years later when he checked the trial and appellate court dockets after learning that Petitioner's habeas counsel wanted a copy of his file, and wanted to take his deposition. Exhibit 1.1, pp. 6-7; Exhibit 1.2, pp. 60-61.

11

9) When Perkins filed the notice of appeal, the state appellate court's docket wound up containing an entry indicating a poverty affidavit had been contemporaneously filed, which operated to waive the initial filing fee and the final costs associated with what became an aborted-by-default appeal. Perkins agrees that the appellate court file contains no poverty affidavit. Perkins knew that the appellate court would not accept a notice of appeal without either the payment of a filing fee or a poverty affidavit. Exhibit 1.2, pp. 42-47, 58-59.

10) Perkins never procured a poverty affidavit from Petitioner, although he knew that Petitioner himself was indigent with respect to paying him or any other lawyer to prosecute and pay the costs associated with an appeal. Exhibit 1.2, pp. 41-42.

11) Perkins did not recall paying the filing fee on Petitioner's behalf in order to preserve his timely right to appeal (or at least that is what Perkins thought he was doing when he unwittingly filed the notice of appeal under the wrong case number). Per a request made during the deposition, after the deposition Perkins reviewed his cancelled checks during the relevant time period and confirmed by letter to habeas counsel that he had not paid the filing fee for Petitioner. Exhibit 1.2, pp. 59-60; Deposition Exhibit 2.

12) Perkins had done both appointed and retained appellate work before he represented Petitioner. Exhibit 1.1, pp. 5, 22-23. Perkins could have asked to have appellate counsel appointed for Petitioner in light of the fact he had not been retained nor given any money to cover the cost of preparing the trial transcript. Perkins never took steps to have appellate counsel appointed for Petitioner. Exhibit 1.2, pp. 66-68.

13) Perkins was surprised in hindsight that he did not have a larger file relevant to his representation of Petitioner. Exhibit 1.1, p. 6. Perkins acknowledged that the file he had did not contain copies of any documents related to his efforts to perfect Petitioner's appeal; nor did it contain notices sent to him by the appellate court, which notices Perkins acknowledged he must have received (although he had no specific recollection that he did receive them eight years ago). Exhibit 1.2, pp. 54-47.

14) Per a request made during the deposition, after the deposition Perkins looked for but did not find any additional files related to his work for Petitioner. Exhibit 1.2, pp. 59-60; Deposition Exhibit 2.

15) After attempting to perfect an appeal, Perkins initially failed to file a Criminal Docket Statement, which he eventually did after receiving a "show cause" Order from the state appellate court. Exhibit 1.2, pp. 50-52; Deposition Exhibits 5 & 6.

16) Upon the filing of the Criminal Docket Statement, the appellate court mailed a briefing schedule to Perkins, which he acknowledged he would have received, although he had no recollection of receiving it. Exhibit 1.2, pp. 50-52; Deposition Exhibit 6.

17) Perkins failed to follow the briefing schedule: he took no steps to perfect the record (had he done so, he would have discovered the error related to the trial court case number); he

12

filed no brief. The appeal filed under the wrong case number was dismissed for want of prosecution on December 5, 1996. Deposition Exhibit 7. Perkins did nothing in response to the dismissal of the appeal. As with the briefing schedule, the dismissal of the appeal did not register on his professional radar screen. Exhibit 1.2, pp. 68-69.

18) Overall, Perkins had ongoing contact with Petitioner's supporters, but he could not recall the names of persons with whom he had these discussions. Perkins never reduced anything to writing regarding the fee or subsequent matters related to acquiring payment. Perkins has no recollection of ever informing Petitioner or his supporters about the events related to Perkins' ineffective attempt to preserve Petitioner's appellate rights. Perkins' efforts to preserve Petitioner's appellate rights ended with a whimper, not a bang – it faded away. Exhibit 1.2, pp. 68-69. Perkins never directly told Petitioner, or Petitioner's supporters, that Petitioner would lose his right to appeal absent payment of Perkins' fee; Perkins took no efforts to secure appointed counsel for Petitioner; and Perkins never told them that the appeal he thought he had started was dismissed.

These facts clearly support granting Petitioner equitable tolling. Attorney Perkins' sloppy and constitutional ineffective interaction with Petitioner regarding the appeal corroborate why Petitioner believed Perkins was prosecuting an appeal.

Petitioner said nothing in his deposition that can be taken to have put into dispute his reasonable reliance on Perkins for the period of time Petitioner believed Perkins was prosecuting his appeal. See generally Petitioner's Deposition, attached as an exhibit to Respondent's Rule 7 Motion.

Additionally, these facts unquestionably support Petitioner's claim that Perkins' rendered constitutionally ineffective assistance of counsel with respect to Petitioner's right to appeal. By failing to file a timely notice of appeal under the right case number; by failing to catch and correct this error in a timely manner; by failing to even attempt to perfect the record and file a brief; and by allowing Petitioner's appellate rights to "fade away" with a dismissal for want of prosecution, Perkins' conduct violated Petitioner's constitutional rights by falling below an objectively reasonably standard of performance, which presumptively prejudiced Petitioner.

**Exhibits 3 and 4: Petitioner's Prison Records And Affidavit Filed In Support Of His Delayed Appeal In State Court.**

Perkins' deposition testimony corroborates the core, material facts set forth in the affidavit Petitioner filed in support of his motion for delayed appeal in state court. Exhibit 3. As far as Petitioner knew, Perkins was prosecuting his appeal. When the affidavit was executed, Petitioner did not realize Perkins had filed a notice of appeal in the wrong case number, but that act – coupled with the abandonment of the appeal by default – equals the complete failure to file a timely notice of appeal that perfected the appeal Petitioner asked for and needed. The prison records in Exhibits 4.1 and 4.2 further corroborate Petitioner's affidavit and support his argument for equitable tolling.

**Exhibit 5.1 through 5.15: Records Related To Petitioner's Contact With The Ohio Public Defender, Starting With His First Letter And Ending With a Letter From The Assistant Public Defender Who Eventually Filed The Motion For Delayed Appeal.**

This set of fifteen (15) documents pertains to the period of time from when Petitioner first contacted the Office of the Ohio Public Defender (OPD) through the assignment of his case to the Assistant Public Defender who filed the motion for delayed appeal.

Of these documents, Petitioner asserts that only the first – Petitioner's first letter to OPD dated 2-4-98 has any importance to the issues before this Court. This letter draws the line between the period between Petitioner's sentencing and when he reached out to new counsel after realizing that attorney Perkins failed to prosecute his appeal. Petitioner contends that all the time that passed after OPD received this first letter is reasonable in the context of any equitable tolling analysis.

**V.    Conclusion.**

There is no material dispute with respect to any facts that justify equitably tolling Petitioner's time for filing his habeas petition; nor is there any material dispute with respect to the facts that entitle him to habeas relief. Therefore, Petitioner respectfully requests that this Court grant summary judgment in favor of Petitioner.

    Respectfully Submitted,

    DAVID H. BODIKER
    OHIO PUBLIC DEFENDER

    _s/Gregory W. Meyers_____
    GREGORY W. MEYERS (0014887)
    Senior Assistant Public Defender

    Office of the Ohio Public Defender
    8 East Long Street, 11th FL
    Columbus, Ohio 43215
    614 466 5394
    614 728 3670 Fax

    COUNSEL FOR PETITIONER

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PETITIONER'S MOTION FOR SUMMARY JUDGMENT was filed electronically on July 1, 2005. Notice of this filing will be sent to all parties by operation of the court's electronic filing system, through which parties may access copies of this document.

    _s/Gregory W. Meyers_____
    GREGORY W. MEYERS (0014887)
    COUNSEL FOR PETITIONER

#219858