# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Bruce Woods,
      Petitioner,


      vs                             Case No. 1:00cv803
                                    (Spiegel, J.; Black, M.J.)

Wanza Jackson,
      Respondent.

---

# REPORT AND RECOMMENDATION

---

      Petitioner, an inmate in state custody at the Warren Correctional Institution in Lebanon, Ohio, has filed through counsel a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  After vacating the District Court's Order dismissing this case on statute of limitations grounds pursuant to 28 U.S.C. § 2244(d), the United States Court of Appeals for the Sixth Circuit remanded the case to the District Court to develop the factual record regarding petitioner's entitlement to equitable tolling of the statute.  (Doc. 39).  With respect to this matter, respondent filed a brief and petitioner filed a motion for summary judgment which respondent opposed.  (Docs. 71, 72, 73).

## Procedural Background

      The Hamilton County Grand Jury initially indicted petitioner in case number 96-345 and then issued a superseding indictment in case number 96-1386.  (Doc. 57).  Petitioner was convicted by a jury in the Hamilton County Court of Common Pleas of three counts of aggravated burglary with firearm specifications, two

counts of robbery, and two counts of kidnapping with firearm specifications.  (Doc. 4, Ex. A).  Before sentencing, the trial court dismissed the original indictment. (Doc. 57).  On June 14, 1996, petitioner was ordered to serve an indefinite sentence of seventy-five years to one-hundred and twenty-five years, with an additional twelve years for the firearm specifications.  (Doc. 4, Ex. A)

Petitioner was advised by the trial court of his right to take an appeal.  (Doc. 8, A-39 - A-40).  Petitioner informed Brian Perkins, counsel whom he had retained for trial, that he wished to pursue an appeal.  (Doc. 61, Deposition of Brian Perkins, Tr. 25, 30; Doc. 70, Deposition of Bruce Woods, Tr. 15).  Mr. Perkins agreed to handle the criminal appeal.  (Doc. 70, Woods Deposition, Tr. 15, 16, 22). Although Mr. Perkins did not receive funds to file an appeal, he filed a timely notice of appeal in case number 96-345, albeit the case in which the indictment against petitioner had been dismissed.  (Doc. 57, Ex. 1; Doc. 61, Ex. 3, Tr. 41). Not only was the July 12, 1996 notice of appeal filed in the wrong case, but it also listed the wrong defendant.  (Doc. 61, Ex. 3; Tr. 37).  On July 30, 1996, the Ohio Court of Appeals issued an order to show cause because the docketing statement had not been filed.  (*Id.,* Ex. 4, Tr. 51).  Mr. Perkins subsequently filed the docketing statement, naming himself as counsel for appellant.  (*Id.,* Ex. 5; Doc. 61, Tr. 49).  On December 5, 1996, the Ohio Court of Appeals dismissed the appeal because appellant failed to file the trial transcript.  (*Id.,* Ex. 4; Doc. 61, Tr. 25). Mr. Perkins made no effort to have counsel appointed for petitioner when petitioner's relatives failed to pay him for his services.  (Doc. 61, Tr. 67-68). There is also no evidence in the record that Mr. Perkins made any attempt to correct his filing in the wrong case, and, in fact, he did not realize his mistake until sometime in 2004, six months before his deposition was taken in the instant case. (Doc. 61, Tr. 37; *see* Doc. 57).  Although Mr. Perkins does recall speaking with relatives of petitioner concerning the funding of the appeal, he does not recall taking any collect calls from petitioner concerning the appeal.  (Doc. 61, Tr. 29, 62, 69).

When petitioner did not receive any legal mail in prison, and when his family reported that Mr. Perkins was not returning their calls, petitioner began to suspect that something was wrong.  (Doc. 70, Tr. 27-28).  Petitioner did not attempt to contact the Ohio Court of Appeals to determine the status of his appeal. (Doc. 70, Tr. 30).  He was not immediately concerned about his appeal because his attorney told him it would take time.  (*Id.,* Tr. 29).  It was not until 1998, when petitioner was watching a story on television about another inmate's appeal, that it

dawned on him that an appeal may not have been filed in his case. (*Id.*, Tr. 29, 31-32). While petitioner thought that he may have discovered the absence of an appeal a few months before he contacted the Public Defenders Office, he could not pinpoint the date. (*Id.*, Tr. 31-32, 46). Petitioner indicated that he did remember that once he realized that his attorney may have been remiss in filing his appeal, he quickly requested assistance from the Public Defender's Office. (*Id.,* Tr. 46).

On February 2, 1998, petitioner contacted the Public Defender's Office asking for assistance with his appeal. (Doc. 61, Ex. 5.1; Doc. 70, Tr. 34). On February 6, 1998, the Office responded by acknowledging receipt of petitioner's request for legal assistance and directing him to fill out a questionnaire and financial statement. (Doc. 61, Ex. 5.2; Doc. 70, Tr. 35). Petitioner promptly filled out the questionnaire. (Doc. 61, Ex. 5.3; Doc. 70, Tr. 35). On March 15, 1998, the case was assigned to an attorney in the Public Defender's Office, advising the attorney that no notice of appeal had been filed. (Doc. 61, Ex. 5.4). The Memo further stated:

> Sentencing entry was filed 6.14.96, so you're really late on this one. If I were you, I'd order a transcript of the sentencing hearing before I did anything else to see what went down.

The Office ordered a transcription of the sentencing hearing on March 23, 1998. (*Id.*, Ex. 5.6). Subsequently, the assigned attorney resigned, apparently due to health problems. (*Id.*, Ex. 5.9). On May 13, 1998, the Chief Appellate Counsel informed petitioner that he was reviewing his case to determine whether or not the office would represent him in court. (*Id.*, Ex. 5.11). After the case had been reassigned, the new assistant public defender, on May 26, 1998, informed petitioner that a motion for delayed appeal would be filed. (*Id.,* Exs. 5.13, 5.15).

On August 28, 1998, petitioner through counsel filed a motion for leave to file a delayed appeal pursuant to Ohio R. App. P. 5. (Doc. 4, Ex. B; Doc. 8, A-9). He alleged that he had requested that trial counsel file an appeal on his behalf. (Doc. 8, Petitioner's Affidavit at A-17). Petitioner represented that after sentencing, he did not receive any correspondence from his attorney pertaining to his appeal, and that his attorney refused his phone calls, as well as those made on his behalf. (*Id.*). Petitioner explained that he failed to promptly investigate the status of his appeal because his fellow inmates assured him that an appeal could take years. (*Id.*). When he did learn that no appeal had been taken, petitioner

stated that he contacted the Public Defender's Office for assistance in filing a motion for a delayed appeal. (*Id.*).

On October 10, 1998, the Court of Appeals overruled petitioner's motion for leave to file a delayed appeal on the ground that petitioner had failed to provide "sufficient reasons for his failure to perfect an appeal as of right." (Doc. 4, Ex. C). Petitioner appealed to the Supreme Court of Ohio, which Court denied review on February 3, 1999. (*Id.,* Ex. D).

Petitioner filed a petition for certiorari in the United States Supreme Court. On October 4, 1999, the United States Supreme Court denied the petition for a writ of certiorari. (*Id.,* Ex. E).

On September 21, 2000, petitioner filed the instant petition for writ of habeas corpus asserting that he was denied his right to an appeal and to effective assistance of counsel in pursuing an appeal. (Doc. 1 at 4).

On January 22, 2001, respondent filed a motion to dismiss the petition for a writ of habeas corpus, arguing that the petition is barred from review by the one year statute of limitations set forth in 28 U.S.C. § 2244(d), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Public. L. No. 104-132, 110 Stat. 1214. (Doc. 4).

On October 4, 2001, this Court declined to adopt the Magistrate Judge's Report and Recommendation finding the petition time-barred, and denied respondent's first motion to dismiss, finding that petitioner was entitled to equitable tolling of the statute of limitations. (Doc. 17). The Court found that petitioner's counsel failed to timely file a direct appeal, and that petitioner's failure to inquire into the progress of his appeal and realize that his appeal was not timely brought by his trial counsel was reasonable because petitioner presented evidence that the appeals process took years to complete. (Doc. 17 at 8). The Court held that petitioner "was deprived of his right to a direct appeal when the trial court failed to ensure that counsel was appointed and a timely appeal was filed." (Doc. 17 at 8). Thus, state action delayed petitioner's pursuit of his appeal. (Doc. 17 at 8). The Court concluded that since petitioner received ineffective assistance of counsel and was therefore denied the right of direct appeal, equitable tolling of the AEDPA statute of limitations was warranted. (Doc. 17 at 10).

Although the Court did not specify exactly what period was tolled, it appears that the Court intended to toll the limitation period from the time petitioner's conviction became final on July 14, 1996, (*i.e.*, 30 days after his time for filing a direct appeal expired under Ohio Appellate Rule 4(A)), until he filed his motion for delayed appeal on August 28, 1998.

On October 31, 2001, respondent filed a second motion to dismiss, arguing that the petition for writ of habeas corpus is still barred by the statute of limitations even taking into account the equitable tolling by the Court.  (Doc. 18).  Respondent argued that the period of time during which petitioner filed a petition for certiorari before the United States Supreme Court did not toll the limitations period because it was not a request for "state" review under the tolling provision of 28 U.S.C. § 2244(d)(2).[1]  On October 4, 2002, the District Court granted this second motion to dismiss, with a certificate of appealability.  (Docs. 30, 31).

Petitioner filed his notice of appeal on October 31, 2002.  (Doc. 32).  On February 20, 2004, the United States Court of Appeals for the Sixth Circuit found petitioner's appeal controlled by the intervening decision of *Abela v. Martin,* 348 F.3d 164 (6th Cir. 2003), which concluded that petitions for Supreme Court review do toll the limitations period.  The Court of Appeals therefore vacated the dismissal of the petition but also remanded the case to the district court "to develop the factual record regarding Woods' entitlement to equitable tolling."  (Doc. 39).  While the state had argued in its briefs that petitioner's two year delay in moving for leave to file a delayed appeal demonstrated a lack of diligence on his part, and that his reliance on the assurances of state inmates that appeals take years was unreasonable, at appellate oral argument, the state's counsel requested that the case be remanded "for further factual development regarding Woods' diligence in pursuing his rights and his reasonableness in remaining ignorant of his need to file an appeal," including "when Woods first requested appellate representation and when he first received it."  (Doc. 39 at 4).  Petitioner's counsel "agreed that a hearing was needed."  (*Id.*).

On March 9, 2004, the District Judge referred this matter to the Magistrate Judge "to hold an evidentiary hearing to develop the factual record as contemplated

---

[1]  Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

by the Sixth Circuit's order remanding the case."  (Doc. 40).

Thereupon, the parties engaged in discovery, taking the depositions of petitioner's trial counsel, Brian Perkins, and of petitioner, and exchanging documents.  (Docs. 61, 70).  Pursuant to petitioner's and respondent's motions, this Court expanded the record to include these depositions, as well as state court docket sheets, internal memorandum and correspondence from the Public Defender's Office involving petitioner's delayed appeal, and other documents.  (See Docs. 57 and 61, Ex. 5).

As a result, the factual findings contained herein in the first full paragraph and the second paragraph on page two, *supra,* and the first full paragraph on page three, *supra,* are based on this additional evidence provided by the parties.  Thus, because the need for an evidentiary hearing has been obviated by means of expansion of the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, *see Boyco v. Parke,* 259 F.3d 781, 790 (7th Cir. 2001), the undersigned Magistrate Judge proceeds to issue his Report and Recommendation on the basis of the record.[2]

## OPINION

Under 28 U.S.C. § 2244(d)(1), a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of:  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the

---

[2]  Respondent has stated that an evidentiary hearing is unnecessary.  (Doc. 55).  Petitioner has apparently abandoned his initial position that an evidentiary hearing *may* be necessary by filing a motion for summary judgment which by definition suggests that there are no genuine issues of material fact in dispute.  (Docs. 56, 72; *see* Doc. 67).

exercise of due diligence.  Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

During the one-year limitations period, petitioner was entitled to the benefits of the tolling provision set forth in 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review.  *See* 28 U.S.C. § 2244(d)(2).[3]

For purposes of the tolling provision set forth in 28 U.S.C. § 2244(d)(2), "the statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until the conclusion of time for seeking Supreme Court review of the state's final judgment on that application independent of whether the petitioner actually petitions the Supreme Court to review the case." *Abela v. Martin,* 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc) (overruling *Isham v. Randle,* 226 F.3d 691, 695 (6th Cir. 2000), *cert. denied,* 531 U.S. 1201 (2001)), *cert. denied,* 541 U.S. 1070 (2004); *see also Granger v. Hurt,* No. 02-3088, 2004 WL 162549, at *3 (6th Cir. Jan. 23, 2004) (unpublished) (holding in light of *Abela* that the statute of limitations was "tolled" from the date petitioner filed his motion for delayed appeal in the Ohio courts until the ninety-day period expired for filing a petition to the United States Supreme Court for writ of certiorari from the Supreme Court of Ohio's final ruling dismissing the motion for delayed appeal).

This tolling provision, however, does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully expired." *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998).[4] Once the limitations period is expired, state collateral review proceedings can no

---

[3] *See also Bennett v. Artuz,* 199 F.3d 116, 119 (2nd Cir. 1999), *aff'd,* 531 U.S. 4 (2000); *Gaskins v. Duval,* 183 F.3d 8, 10 (1st Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998) (per curiam); *Hoggro v. Boone,* 150 F.3d 1223, 1226 (10th Cir. 1998); *Lovasz v. Vaughn,* 134 F.3d 146, 148-49 (3rd Cir. 1998); *cf. Morris v. Bell,* 124 F.3d 198 (table), No. 96-5510, 1997 WL 560055, at *3 (6th Cir. Sept. 5, 1997) (unpublished), *cert. denied,* 522 U.S. 1149 (1998).

[4] *See also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000); *Sorce v. Artuz,* 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein); *Blasi v. Attorney General of Pennsylvania,* 30 F.Supp.2d 481, 485 (M.D. Pa. 1998).

longer serve to avoid the statute of limitations bar. *Rashid,* 991 F. Supp. at 259; *cf. Cox v. Angelone,* 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

Similarly, a motion for delayed appeal tolls the running of the statute of limitations, but does not cause the statute to begin running anew. *Searcy v. Carter,* 246 F.3d 515, 519 (6th Cir.), *cert. denied,* 534 U.S. 905 (2001).

The statute of limitations may be equitably tolled in limited circumstances. *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.), *cert. denied,* 534 U.S. 1057 (2001); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988). In determining whether the statute of limitations should be equitably tolled, the court must consider the following factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap,* 250 F.3d at 1008 (citing *Andrews,* 851 F.2d at 151).

The absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling. *Dunlap,* 250 F.3d at 1009; *Andrews,* 851 F.2d at 151(citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)). The absence of prejudice may only be considered when other factors of the test are met. *Id.* In determining whether to equitably toll a period of limitations, the court may consider additional factors and may decline to consider factors which are not relevant to the particular case. *Miller,* 305 F.3d at 495 (citing *Cook,* 295 F.3d at 521). Whether a petitioner is entitled to equitable tolling must be decided on a case-by-case basis. *Id.*

In its October 24, 2001 Order, the District Court did not count against the statute of limitations the time from when petitioner's conviction became final on July 14, 1996, (*i.e.,* 30 days after his time for filing a direct appeal expired under Ohio Appellate Rule 4(A)), until petitioner filed his motion for delayed appeal on August 28, 1998. To exclude this time period from the limitations period, the Court relied on § 2244(d)(1)(B), which provides that the limitation period does not

start running until an impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action. (Doc. 17 at 5). The Court also relied on a non-statutory basis, the doctrine of equitable tolling, to toll that same time period. The District Court concluded:

> The Court finds Petitioner's third argument in his Objections to be the most compelling. Since under Ohio law, every Defendant has a right to appeal and a right to appellate counsel, the delayed appeal process is the state procedural safeguard that should protect those rights. When the state process fails to protect these rights, the process becomes part of the impediment to review.

> The Court agrees with Petitioner that the failure of his trial counsel to file a timely appeal and the trial court's failure to assess whether Petitioner fully understood and intelligently relinquished the right to an appeal prevented Petitioner from obtaining a timely direct appeal and vindication of his appellate rights (doc. 14).

> Petitioner correctly cites to precedent establishing that if the Court were to find procedural default for the failure to file a timely appeal, then ineffective assistance of counsel constitutes cause for the procedural default. *Murray v. Carrier,* 477 U.S. 478 (1986). Petitioner also correctly cites to precedent that Sixth Amendment requires that the responsibility for the default be imputed to the State, because it cannot conduct trial or appeals whereby persons are subject to incarceration without adequate legal assistance. *Evitts v. Lucey,* 469 U.S. 387, 389, 392 n. 5, 396-397, 399 (1985).

> Petitioner's counsel failed to timely file a direct appeal. Petitioner relied on this inadequate assistance of counsel and did not inquire into the progress of appeal because another prisoner assured him that the appeals process takes years. The Magistrate Judge found that this reliance was unreasonable (doc. 12). The Court disagrees based on the numerous cases cited by Petitioner in which the appeals process took years to complete and concludes that Petitioner's failure to realize that his direct appeal had not been timely brought by his trial counsel to be reasonable.

Because Woods was deprived of his right to a direct appeal when the trial court failed to ensure that counsel was appointed and a timely appeal was filed, state action delayed Woods' pursuit of his appeal. Therefore, it is possible for the AEDPA time limit to be subject to equitable tolling. *Calderon v. U.S. District Court for the Central District of California,* 128 F.3d 1283 (9th Cir. 1998). As such, the Court finds that the AEDPA's time limit in this case should be tolled and that Respondent's Motion to Dismiss should be denied.

(Doc. 17 at 78).

Since the issuance of the District Court decision in 2001, the federal courts, including the Sixth Circuit, have had the opportunity to flush out the meaning of 28 U.S.C. § 2244(d)(1)(B) and elaborate on the application of the equitable tolling doctrine in the context of the AEDPA statute of limitations. Accordingly, in addition to delineating the newly found facts in this case, this Report and Recommendation also brings to bear the case law which has developed since the District Court's Order.

To invoke 28 U.S.C. § 2244(d)(1)(B), a petitioner must establish that "(1) he was prevented from filing a petition, (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell,* 334 F.3d 433, 436 (5th Cir. 2003). This section of the statute requires a "causal relationship between the unconstitutional state action and being prevented from filing the petition." *Winkfield v. Bagley,* 66 Fed.Appx. 578, 582 (6th Cir. May 28, 2003) (quoting *Dunker v. Bissonnette,* 154 F.Supp.2d 95, 105 (D.Mass. 2001)), *cert. denied,* 540 U.S. 969 (2003); *see Colwell v. Tanner,* 79 Fed.Appx. 89, 93 (6th Cir. Oct. 9, 2003), *cert. denied,* 541 U.S. 974 (2004); *Waldron v. Jackson,* 348 F.Supp.2d 877, 883 (N.D. Ohio 2004); *Felton v. Cockrell,* No. 3:03-CV-0764-L, 2003 WL 21946862, at *3 (N.D. Texas Aug. 13, 2003).

The newly adduced evidence in this case reveals that petitioner advised his retained counsel that he wished to file an appeal, that counsel filed a notice of appeal in the wrong case, that counsel failed to prosecute the appeal, that the appeal was dismissed, and that counsel failed to further protect petitioner's appellate rights by correcting the error, appealing the dismissal, or requesting that counsel be appointed for petitioner. The parties agree that petitioner was a victim of ineffective assistance of counsel on appeal. (Doc. 71 at 1; Doc. 72 at 6). On the

other hand, the record establishes that petitioner was properly advised of his appellate rights by the trial court, and because petitioner chose to rely on his retained counsel on appeal, the trial court did not shirk its duties of appointing counsel on petitioner's behalf or in assessing whether petitioner intelligently relinquished his right to an appeal.

Ineffective assistance of appellate counsel has been construed as state action for purposes of  section 2244(d)(1)(B), but this is not a settled issue.[5]  *Winkfield,* 66 Fed.Appx. at 582; *Waldron,* 348 F.Supp.2d at 883; *cf. Collier v. Dretke,* No. 3:03-CV-2744-L, 2004 WL 1585903, at *2 (N.D. Texas July 13, 2004) (court assumes, without deciding, that ineffective assistance of appellate counsel constitutes state action), Report and Recommendation adopted, No.  Civ.A.3103CV744-L, 2004 WL 1944030 (N.D. Tex. Aug. 31, 2004); *Felton,* 2003 WL 21946862, at *3 (same); *Dean v. Pitcher,* No. Civ. 02-71203-DT, 2002 WL 31875460, at *3 (E.D. Mich. Nov. 7, 2002) (same).  *But see Dunker,* 154 F.Supp.2d at 105 (actions of appointed counsel do not constitute state action because under civil rights law state appointed attorneys are not state actors).

Petitioner must further demonstrate that his appellate counsel's mishandling of his direct appeal prevented him from filing a timely habeas corpus petition.  The mere fact that counsel failed to perfect a direct appeal or delayed in notifying petitioner of the dismissal of his direct appeal does not impede or preclude petitioner from seeking habeas corpus relief.  *See Winkfield,* 66 Fed.Appx. at 582-583; *Collier,* 2004 WL 1585903, at *2; *Miles v. Dretke*, No. 3:03-CV-2725-K, 2004 WL 827941, at *4 (N.D. Tex. April 15, 2004), Report and Recommendation

---

[5]  In *Winkfield*, the Sixth Circuit cited *Murray v. Carrier,* 477 U.S. 478, 488 (1986) for the proposition that ineffective assistance of counsel is imputed to the state.  The U.S. Supreme Court indicated in *Murray* that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State." 477 U.S. at 488.  *Murray* was referring to the situation where a defendant commits a procedural default in state court (such as failure to properly raise an issue on appeal or failure to raise an objection at trial), and ineffective assistance of counsel may serve as cause to excuse that default and thereby permit the federal court to adjudicate the claim.  In the  statute of limitations context, however, the courts have generally not relied on ineffective assistance of counsel to excuse the late filing of the habeas corpus petition.  *See* page 15, *infra.*  Because the case law with respect to equitably tolling the statute of limitations and the state court procedural default situations has gone in two distinct directions, and, in any event, as the contexts are clearly different, it remains questionable whether *Murray* applies to the instant situation.

11

adopted, No. 3-03-CV-2725-K (N.D. Tex. May 5, 2004); *Felton*, 2003 WL 21946862, at *3; *cf. Dunker,* 154 F.Supp.2d at 106 (attorney's delay in filing motion for new trial did not prevent petitioner from filing a habeas corpus petition although such a petition might be challenged on exhaustion grounds).

Although not stated directly in these decisions, the courts seem to rely on the notion that the causal connection is too attenuated. The district court in *United States ex rel. Willhite v. Walls*, 241 F.Supp.3d 882 (N.D.Ill. 2003) elaborated on this point in a situation where petitioner did not timely receive an appellate court order:

> However, Willhite's allegations of a state-imposed impediment pertain only to his timely filing of a petition for leave to appeal to the Supreme Court of Illinois. He makes no allegation of any state action that prevented him from filing the instant petition for a writ of habeas corpus. Section 2244(d)(1)(B) expressly pertains only to state-imposed impediments that prevent prisoners from filing a *federal* petition for a writ of habeas corpus. Willhite cites no authority–nor has the court's own research revealed any–to support the conclusion that an impediment to filing a petition for review in state court constitutes an impediment to filing a federal habeas petition, within the meaning of section 2244(d)(1)(B).

241 F.Supp.3d at 886-887.

Section 2244(d)(1)(B) has been applied to situations where the connection between the state action and the ability to file a habeas corpus petition is more direct, specifically where prison officials interfere with an inmate's ability to prepare and file habeas petitions by refusing access to legal materials in derogation of the inmates' constitutional right to access to the courts. *See Shannon v. Newland,* 410 F.3d 1083, 1087 (9th Cir. 2005) (and cases cited therein). In *Egerton v. Cockrell,* 334 F.3d 433 (5th Cir. 2003), the Fifth Circuit held that 28 U.S.C. § 2244(d)(1)(B) applies when the AEDPA is absent from a prison law library, there are no alternative means of advising prisoners of their rights, and the prisoner remains actually ignorant of the existence of the statute. 334 F.3d at 437-438. The Fifth Circuit found that the absence of legal materials, which include the "procedural rules" for proper filing of the petition, prevents the filing of the habeas application. *Id.*; *see Favors v. Cockrell,* No. 4:03-CV-0092-A, 2003 WL

12

21940728, at *2 (N.D. Texas Aug. 13, 2003) (and cases cited therein).

*Waldron v. Jackson,* 348 F.Supp.2d 877, 883 (N.D. Ohio 2004), a case with facts which are very similar to the instant case, does not require a direct relationship between the state action and the filing of the habeas corpus petition. The district court found that counsel's failure to perfect a timely appeal prevented petitioner from filing a timely habeas corpus petition, in part because petitioner's claim could not have been brought in a habeas corpus action until the claim in the petition had first been exhausted in state court by filing a motion for a delayed appeal. 348 F.Supp.2d at 884, 886. The court reasoned:

> Abruptly left without assistance of counsel, Mr. Waldron may not have been ultimately prevented from filing a habeas petition but was prevented from filing a timely habeas petition. To find no causal relationship between the ineffective assistance of counsel, the resulting delay associated with his Rule 5(A) motion [*i.e.,* his motion for leave to file a delayed appeal], and the untimely habeas petition ignores reality and fails to fully incorporate the purpose behind a defendant's constitutional right to effective assistance of counsel on their initial appeal. . . .

> Accordingly, the state-created impediment does not simply evaporate once Mr. Waldron's counsel failed to file a timely appeal; rather, its effects reverberate over time, forcing the filing of a delayed appeal and necessarily delaying the filing of his habeas petition. To find Mr. Waldron's petition untimely because he did not more quickly overcome the state-created impediment would necessarily punish him for a constitutional violation by the State. Such a result is precisely what Section 2244(d)(1)(B) is designed to avoid by ensuring that a state-created impediment does not prevent the timely filing of a habeas petition.

348 F.Supp.2d at 885. The *Waldron* decision concludes that petitioner's counsel's ineffectiveness in failing to perfect a first appeal of right constituted a state-created impediment which cannot be rectified absent the allowance of such an appeal and that the statute of limitations did not begin to run until the disposition of petitioner's motion for a delayed appeal by the state appellate courts and the United States Supreme Court. *Id.* In reaching this result, the District Court

13

concedes that the Sixth Circuit decision in *Winkfield* "appears somewhat inconsistent with" and "not entirely supportive of" the approach taken in *Waldron.* 348 F.Supp.2d at 885 & n. 4.

There are other cases with respect to the AEDPA statute of limitations that make the *Waldron* reasoning questionable.

First, courts have rejected arguments that petitioner is entitled to (non-statutory) equitable tolling on the ground that he needed to first exhaust his state court remedies because the tolling provisions of § 2244(d)(2) are already designed to accommodate the exhaustion requirement. *Franklin v. Bagley,* 27 Fed. Appx. 541, 542-543, 2001 WL 1590593, at **2 (6th Cir. Dec. 10, 2001); *Smith v. McGinnis,* 208 F.3d at 17-18; *Williams v. Price,* No. CIV.01-CV-74016-DT, 2002 WL 551037, at *3 (E.D. Mich. March 29, 2002); *see Riley v. Snider,* 208 F.3d 227 (table), No. 99-6339, 2000 WL 231833, at **1 (10th Cir. Mar. 1, 2000) (petitioner's unawareness that the months he spent pursuing his time-barred state appeal did not count to toll the statute of limitations was insufficient to justify equitable tolling). The *Waldron* Court's reliance on the exhaustion argument to justify tolling pursuant to §2244(d)(1)(B) is inconsistent with most courts' refusal to equitably toll the statute on this basis.

Second, courts have found an affirmative duty on the part of the petitioner to monitor his appeal. *Cruz v. Small,* 44 Fed.Appx. 792, 793-794 (9th Cir. Aug. 15, 2002), *cert. denied,* 537 U.S. 1121 (2003); *Brown v. United States,* 20 Fed.Appx. 373, 375 (6th Cir. Sept. 21, 2001); *Rodriguez v. People of the State of New York,* No. 01Civ. 9374KMWAJP, 2003 WL 289598, at *19 &n.23, *20 (S.D.N.Y. Feb. 11, 2003) (and cases cited therein); *United States ex rel. Mendez v. Pierson,* No. 00 C 7552, 2001 WL 1671173 at *2 (N.D. Ill. Dec. 27, 2001). The *Waldron* decision, however, fails to assign petitioner any responsibility for overcoming the "impediment." In this case, if petitioner had promptly checked with the Ohio Courts as to the status of his appeal, which he concedes he did not do, then his counsel's actions would not have posed the impediment he alleges.

Acknowledging that the application of section 2244(d)(1)(B) to this case is a close question, the undersigned finds that petitioner has not shown that his counsel's failure properly to pursue a direct appeal "prevented" petitioner from filing a timely habeas corpus application within the meaning of § 2244(d)(1)(B), because petitioner has failed to "allege facts that establish that he was so inhibited

14

by the state's action that he was unable to file and state a legal cause of action before the limitation period expired." *Winkfield,* 66 Fed.Appx. at 583 (quoting *Neuendorf v. Graves,* 110 F.Supp.2d 1144, 1153 (N.D. Iowa 2000)).  While appellate counsel's ineffectiveness delayed the state appeal, it did not prevent petitioner from filing his habeas corpus petition.[6]

The undersigned next turns to the non-statutory basis for excusing petitioner's late filing, equitable tolling.  Generally, error of an attorney, including error amounting to ineffective assistance of counsel, is not a basis for equitable tolling.  *See Jurado v. Burt,* 337 F.3d 638, 644-645 (6th Cir. 2003); *Beery v. Ault,* 312 F.3d 948, 951 (8th Cir. 2002) (ineffective assistance of counsel generally does not warrant equitable tolling), *cert. denied,* 539 U.S. 933 (2003); *Molo v. Johnson,* 207 F.3d 773, 775 (5th Cir. 2000) (denial of appeal due to ineffective assistance of counsel does not equitably toll AEDPA statute of limitations); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) (lawyer's mistake not valid basis for equitable tolling); *Sandvik v. United States*, 177 F.3d 1269, 1270 (11th Cir. 1999) (attorney negligence not a basis for equitable tolling); *Rodriquez v. People of the State of New York*, No. 01Civ.9374KMWAJP, 2003 WL 289598, at *20 (S.D.N.Y. Feb. 11, 2003) (and cases cited therein); *Collier v. Dretke*, 2004 WL 1585903, at *3 (ineffective assistance of appellate counsel does not warrant equitable tolling); *Godfrey v. Beightler*, No. C-2-01-397, 2002 WL 485015, at *2 (S.D. Ohio) (ineffective assistance of counsel does not support equitable tolling), *aff'd,* 54 Fed. Appx. 431, 2002 WL 31805606 (6th Cir. 2002), *cert. denied,* 540 U.S. 865 (2003); *see also Brown v. United States*, 20 Fed. Appx. 373, 375, 2001 WL 1136000, at **3 (6th Cir. Sept. 21, 2001)(unpublished); *Elliott v. DeWitt*, 10 Fed. Appx. 311, 313, 2001 WL 523527, at **2 (6th Cir. March 8, 2001)(unpublished).  *But cf. Spitsyn v. Moore,* 345 F.3d 796, 799-801 (9th Cir. 2003) (although equitable tolling generally not applied in non-capital cases where attorney negligence caused untimely filing, equitable tolling is appropriate when delay resulted from "sufficiently egregious performance of counsel.")

Assuming, *arguendo,* that ineffective assistance of appellate counsel delayed the start date of the running of the statute of limitations pursuant to § 2244(d)(1)(B), that impediment was removed when petitioner obtained new

_____

[6] Had petitioner filed his habeas corpus petition before exhausting state court remedies, the federal court could have stayed his petition.

counsel on May 26, 1998 through the Public Defender's Office.  Alternatively, assuming, *arguendo,* that ineffective assistance of appellate counsel equitably tolls the limitations period, tolling would have ceased on  May 26, 1998 when petitioner received counsel through the Public Defender's Office.

The statute would not be equitably tolled during the time that the assistant public defender prepared the motion for delayed appeal or the time necessary to prepare the habeas corpus petition.  *Colwell v. Tanner,* 79 Fed. Appx. 89, 92 (6th Cir. Oct. 9, 2003), *cert. denied,* 541 U.S. 974 (2004); *Dickens v. Johnson,* No. 2:00-CV-0110, 2001 WL 257977 at *7 (N.D. Tex. March 13, 2001), Report and Recommendation adopted, No. 2:00-CV-0110, 2001WL 327736 (N.D. Tex. Mar. 30, 2001); *Lookingbill v. Johnson,* 242 F.Supp.2d 424, 435 (S.D. Tex. 2000); *cf. Fuller v. Thomas,* 110 Fed.Appx. 496, 499 (6th Cir. Aug. 24, 2004), *cert. denied,* 125 S.Ct. 1311 (2005);  *Lucidore v. New York State Division of Parole,* No. 99 Civ. 2936 AJP, 1999 WL 566362, at *6 (S.D.N.Y. Aug. 3, 1999) (needing time to review the record does not toll limitations period), *aff'd,* 209 F.3d 107 (2nd Cir.), *cert. denied,* 531 U.S. 873 (2000).

The statute of limitations ran for approximately three months from May 26, 1998 until August 28, 1998 when the Public Defender's Office filed petitioner's motion for a delayed appeal.  The statute was again tolled until the United States Supreme Court denied certiorari.  *See Abela v. Martin,* 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc); *Searcy v. Carter,* 246 F.3d 515, 519 (6th Cir.), *cert. denied,* 534 U.S. 905 (2001).  At that point, petitioner had nine months to file his habeas corpus petition.  Petitioner, however, did not file his petition until eleven and one-half months later, and, accordingly, it was two and one half months late.

Since it would not have been reasonable to expect petitioner to discover that an appeal had not properly been filed immediately after the time for filing an appeal expired, 28 U.S.C. §2244(d)(1)(a) -- which starts the running of the limitation period from the date the judgment becomes final -- does not apply in this case.  *See Granger v. Hurt,* 90 Fed.Appx. 97 (6th Cir. Jan. 23, 2004) (discovery of counsel's failure to file appeal upon expiration of appeal time "ignores the reality of the prison system and imposes an unreasonable burden on prisoners seeking to appeal").  However, 28 U.S.C. §2244(d)(1)(D) -- which starts the running of the statute of limitations from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence -- does govern this case.  *See Granger,* 90 Fed. Appx. 97 (§2244(d)(1)(D) applied in case

16

factually similar to the instant case); *Cooper v. Bravo,* 36 Fed. Appx. 343, 346, 347 (10th Cir. Jan. 11, 2002) (same). Giving petitioner the benefit of the doubt, the undersigned assumes that petitioner could not have reasonably discovered that his counsel was ineffective and that he was denied an appeal until February 2, 1998, when he actually contacted the Public Defender's Office. The statute of limitations ran then for approximately six months until it was tolled by the motion for a delayed appeal. It resumed running on October 5, 1999, after the United States Supreme Court denied review. Since petitioner had only six months left before the statute expired and waited eleven and one half months to file his federal petition, his petition was untimely.

In conclusion, based on the newly adduced facts in this case: (1) petitioner is not entitled to equitable tolling or tolling pursuant to 28 U.S.C. § 2244(d)(1)(B); (2) even if he were so entitled, his petition would still be untimely; and (3) the petition is time-barred under 28 U.S.C. § 2244(d)(1)(D) which properly governs this case.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) should be DISMISSED with prejudice on the ground that it is barred from review under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).

2.  Petitioner's motion for summary judgment (Doc. 72) should be DENIED.

3.  A certificate of appealability should issue because jurists of reason would find it debatable whether the procedural ruling that the petition should be dismissed as barred by the one-year statute of limitations governing habeas corpus cases set forth in 28 U.S.C. § 2244(d) is correct and whether the petition states a valid claim of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

4.  The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of an Order adopting this report and recommendation would be taken in "good faith" and, therefore, GRANT petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: November 8, 2005                    s/Timothy S. Black
hr                                        Timothy S. Black
                                          United States Magistrate Judge


J:\ROSENBEH\2254(2005)\00-803R&Raftremand.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

————————————————————

Bruce Woods,
      Petitioner,

      vs                                  Case No. 1:00cv803
                                         (Spiegel, J.; Black, M.J.)

Wanza Jackson,
      Respondent.

————————————————————

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).