UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRUCE WOODS,

    Petitioner,                                       Case No.  1:00cv803

vs.

                                                  Judge Spiegel
WANZA JACKSON,                                M.J. Black

    Respondent.

---

**PETITIONER WOODS' OBJECTIONS TO
THE 11-8-05 REPORT AND RECOMMENDATION**

---

| | |
|---|---|
| DAVID H. BODIKER | JIM PETRO |
| OHIO PUBLIC DEFENDER | OHIO ATTORNEY GENERAL |
| | |
| GREGORY W. MEYERS (0014887) | STUART A. COLE (0020237) |
| Senior Assistant Public Defender | Assistant Attorney General |
| 8 East Long Street | 150 East Gay Street, 16th Floor |
| Columbus, Ohio  43215 | Columbus, Ohio  43215 |
| Phone: (614) 466-5394 | Phone: (614) 644-7233 |
| Fax: (614) 728-3670 | Fax: (614) 728-9327 |
| | |
| COUNSEL FOR PETITIONER | COUNSEL FOR RESPONDENT |

**I.     Overview of Argument.**

This Court should reject the Magistrate Judge's Report and Recommendation (R&R) and rule that Woods time filed a habeas petition raising claims that entitled him to relief. Respondent's efforts to block Petitioner from having one, fair shot at direct appeal should come to an end.

Woods was a victim of ineffective assistance of appellate counsel, which created a time-tolling impediment to his ability to prosecute a timely direct appeal of his criminal convictions in state court. Through new counsel, he filed a delayed appeal in state court when he discovered his initial counsel failed to perfect the appeal. The impediment remained in place until his new counsel filed documents seeking a delayed appeal. From that point forward, Woods was entitled to statutory tolling while his delayed-appeal litigation was pending, and before the one-year statute-of-limitations ran for filing a habeas petition.

Assuming arguendo (1) that the impediment of ineffective counsel was removed before new counsel filed a state-court pleading asking for a delayed appeal, and/or (2) that Woods AEDPA statute of limitations began when he realized he had been victimized by ineffective counsel, Woods is entitled to equitable tolling. The R&R's holding to the contrary inequitably punishes Woods for the malfeasance of his ineffective counsel; unfairly permits the state to profit from ineffective assistance of counsel; and places unrealistic demands on inmates and new counsel that mechanically gut federal habeas, statutory tolling, and equitable tolling.

II.  **Facts in support of habeas relief also support finding that the ineffectiveness of Woods' counsel created an impediment entitling Woods to statutory tolling; or, in the alternative, these facts entitle Woods to equitable tolling.**

  A.  **Facts underlying claim for relief and timeliness arguments.**

The R&R incorrectly concluded that Woods' petition is time barred; and the R&R incorrectly overruled Woods' summary judgment motion. Woods contends that the facts of record entitle him to a finding that he filed a timely habeas petition, and to habeas relief. Most of these facts were developed through discovery after this Court referred Woods' case to the Magistrate Judge after the Sixth Circuit's remand. The facts are contained in the following exhibits attached to these Objections, which exhibits were admitted into the record through Woods' Rule 7 and Rule 5 motions, and Respondent's Rule 7 motion:

**Exhibits 1 and 2 =  Rule 7 Exhibits 1.1 and 1.2:** Deposition transcript of Petitioner's trial and appellate attorney, Bryan Perkins, taken on 12-14-04, and the seven (7) Deposition Exhibits attached thereto. Exhibit 1 (#1.1 to the Rule 7 Motion) contains pages 1 through 40; Exhibit 2 (#1.2 to the Rule 7 Motion) contains pages 41 through 70 plus the deposition exhibits, consisting of:

  **Deposition Exhibit 1:** Attorney Perkins handwritten notes from his first contact with Petitioner;

  **Deposition Exhibit 2:** A letter dated 4-4-96 from Perkins to Petitioner that bears the correct trial-court case number (versus the number under which attorney Perkins eventually filed a notice of appeal);

  **Deposition Exhibit 3:** A notice of appeal Perkins filed for Petitioner under the wrong trial-court case number (96-345 instead of 96-1386);

  **Deposition Exhibit 4:** The State appellate court docket generated in connection with the notice of appeal Perkins filed under the wrong trial-court case number, and showing that (A) the docket reflected the filing of an apparently non-existent Poverty Affidavit (which operated a waiver of the filing fee and other costs), and (B) the appeal was dismissed without counsel being appointed or a brief being filed;

  **Deposition Exhibit 5:** The Criminal docket Statement Perkins eventually filed in the appellate case reflecting the fact that the Court Reporter expected a down payment towards the cost of the trial transcript before it would be prepared and filed for appeal – this document also relates back to the wrong trial-court case number;

**Deposition Exhibit 6:** A sheet of paper containing copies of two notices sent by the appellate court to Perkins pertaining to a show cause order for the missing Criminal Docket Statement (which should have been filed with the notice of appeal), and a scheduling order issued upon the filing of the Criminal Docket Statement; and

**Deposition Exhibit 7:** A sheet of paper containing a copy of the notice sent by the appellate court to Perkins informing him that the appeal had been dismissed on 12-5-96.

**Exhibit 3 = Rule 5 Exhibit 1:** Hamilton County Clerk of Courts Docket Sheet for Common Pleas Case Number 96-345. This docket reflects activity related to the first indictment filed against Petitioner in connection with the convictions underlying his habeas petition. This indictment was replaced by a superseding indictment; but the first indictment was not immediately dismissed. As reflected in the docket, the indictment was dismissed during on 6-12-96, which was after Petitioner was convicted but before he was sentenced on the same criminal charges in the superseding indictment. Notwithstanding the fact that this case had been dismissed, the docket records a notice of appeal filed on 7-12-96, and the dismissal of that appeal on 12-5-96.

**Exhibit 4 = Rule 5 Exhibit 2:** Hamilton County Clerk of Courts Docket Sheet for Common Pleas Case Number 96-1386. This docket reflects activity related to the superseding indictment filed against Petitioner. The superseding indictment contained the same criminal charges, but added a specification referred to as a prior offense of violence, which increased the potential sentences for the underlying crimes. This docket records the fact that the jury returned guilty verdicts on all counts on 5-31-96, and that Petitioner was sentenced on 6-14-96. There is no docket entry recording a timely notice of appeal. There is an entry on 8-28-98 recording the filing of a motion for delayed appeal, which Ohio courts denied, leading to the instant habeas litigation.

**Exhibit 5 = Rule 5 Exhibit 3:** Hamilton County Clerk of Courts Docket Sheet for the Court of Appeals Case Number 96-545. This docket shows a notice of appeal filed on 7-12-96 in connection with the first indictment, Case Number 96-345, notwithstanding the fact that the case number being appealed had been dismissed on 6-12-96. The docket shows that this appeal was dismissed on 12-5-96. In addition, Exhibit 3 contains a copy of the notice of appeal filed 7-12-96, a Criminal Docket Statement filed 8-12-96, and the 12-5-96 entry dismissing the appeal for want of prosecution.

**Exhibit 6 = Rule 7 Exhibit 2:** A letter dated 12-29-04 from Perkins to Petitioner's habeas counsel written to address two questions asked at the deposition that could not be answered until attorney Perkins (1) searched for addition files related to Petitioner (none found), and (2) reviewed his cancelled checks from 1996 to determine if he had paid a filing fee when he filed a notice of appeal for Petitioner under the wrong trial-court case number (no check found).

**Exhibit 7 = Rule 7 Exhibit 3:** Petitioner's affidavit that was attached to his State court motion for delayed appeal.

4

**Exhibits 8 and 9 = Rule 7 Exhibits 4.1 and 4.2:**  Petitioner's prison records from the Ohio Department of Rehabilitation and Corrections, produced by Respondent in response to Petitioner's discovery request, which, among other things, corroborate mental health issues relevant to Petitioner's equitable tolling argument.  Exhibit 8 (#3.1 to the Rule 7 Motion) contains pages 1 through 19; Exhibit 9 (#3.2 to the Rule 7 Motion) contains pages 20 through 42 (page numbers added to originals on lower right-hand corner).

**Exhibit 10 = Rule 7 Exhibits 5.1 through 5.15:**  Includes fifteen (15) documents Petitioner disclosed to Respondent during discovery, relating to Petitioner's contact with the Ohio Public Defender's Office (OPD) and OPD's response to Petitioner's request for help:

**Rule 7 Exhibit 5.1:**  Petitioner's first letter to the Office of the Ohio Public Defender (OPD), with a copy of the envelope postmarked 2-4-98 (2 pages).

**Rule 7 Exhibit 5.2:**  OPD's response to Petitioner's first letter, dated 2-6-98 (one page).

**Rule 7 Exhibit 5.3:**  Petitioner's 2-11-98 response to OPD's 2-6-98 correspondence (dated by Petitioner on 2-11-98, received by OPD on 2-13-98), portions redacted to preserve privilege(s) (five pages).

**Rule 7 Exhibit 5.4:**  An internal OPD e-mail, dated 3-15-98, from intake employee James Anadell to support staff personnel Mary Dunning and Assistant Public Defender (APD) Felice Harris, assigning Petitioner's case to APD Harris, informing APD Harris of steps taken so far regarding Petitioner's request for representation, and suggesting that APD Harris get the sentencing transcript (one page).

**Rule 7 Exhibit 5.5:**  An internal OPD e-mail, dated 3-20-98, from APD Felice Harris to support staff personnel Debbie McCandlish, requesting a copy of Petitioner's sentencing transcript, and bearing hand-written notations by Ms. McCandlish dated 3-23-98 (one page).

**Rule 7 Exhibit 5.6:**  A letter dated 3-23-98 from Ms. McCandlish to a court reporter requesting the transcript of Petitioner's sentencing hearing (one page).

**Rule 7 Exhibit 5.7:**  Another copy of the internal OPD e-mail, dated 3-20-98, from APD Felice Harris to support staff personnel Debbie McCandlish – this one bears a hand-written notation by APD Harris dated 3-24-98 (one page).

**Rule 7 Exhibit 5.8:**  An internal OPD document indicating payment to the court reporter for Petitioner's sentencing transcript by a voucher dated 4-15-98 (one page).

**Rule 7 Exhibit 5.9:**  An internal OPD document reflecting APD Harris's resignation from her employment with OPD effective 4-18-04, portions redacted to protect APD Harris's privacy interests (one page).

**Rule 7 Exhibit 5.10:**  An internal OPD e-mail, dated 5-5-98, from OPD paralegal Nancy DeCatur to APD Bob Lane (who was APD Harris's supervisor) regarding Ms. DeCatur's

5

telephone contact with Petitioner's trial-level attorney Bryan Perkins, portions redacted to preserve privilege(s) (one page).

**Rule 7 Exhibit 5.11:** A letter dated 5-13-98 from APD Supervising Attorney Bob Lane to Petitioner, portions redacted to preserve privilege(s) (one page).

**Rule 7 Exhibit 5.12:** A letter from Petitioner to APD Bob Lane, which, Petitioner's counsel assume, should be dated 5-15-98, not 3-15-98 – see envelope postmarked 5-15-98 – responding to APD Bob Lane's 5-13-98 letter to Petitioner, portions redacted to preserve privilege(s) (three pages).

**Rule 7 Exhibit 5.13:** An internal OPD e-mail, dated 5-19-98, from intake employee James Anadell to support staff personnel Mary Dunning, copied to APD Bob Lane and APD Tom Wetterer, indicating the reassignment of Petitioner's case to APD Tom Wetterer (one page).

**Rule 7 Exhibit 5.14:** An internal OPD printout from the "Time Matters" computer program (used by OPD intake personnel to track case activity) which tracks certain activity in Petitioner's case starting on 2-6-98 and ending on 5-19-98 (three pages).

**Rule 7 Exhibit 5.15:** A letter dated 5-26-98 from APD Wetterer to Petitioner saying he will prepare and file a motion for delayed appeal for Petitioner, portions redacted to preserve privilege(s).

**Exhibit 11 = Respondent's Rule 7 Exhibit One:** Woods' deposition transcript.

These exhibits prove the following facts in support of Woods' arguments in favor of statutory tolling, equitable tolling, and for relief on the merits of his claims.

1) Attorney Perkins, who represented Petitioner at trial, knew Petitioner wanted to appeal his conviction; knew Petitioner wanted Perkins to represent him on appeal; and knew Petitioner was indigent (others had paid Perkins's fee for his trial representation, and were talking with Perkins about paying him for the appeal). Exhibit 1, p. 30; Exhibit 2, pp. 41-42.

2) Perkins agreed to appeal Petitioner's conviction subject to fee negotiations he conducted with Petitioner's supporters, but not with Petitioner himself. Exhibit 1, pp. 23-26, 31-33.

3) Shortly after Petitioner's sentencing, Perkins had his one and only direct conversation with Petitioner regarding his appeal. Exhibit 1, pp. 23-26, 29.

4) Shortly after Petitioner's sentencing, he was transferred from a county jail to a state prison facility, after which Perkins had no communication whatsoever with Petitioner about the appeal at issue. Perkins never visited Petitioner in prison, never accepted any collect phone calls from Petitioner, and never had any written correspondence with Petitioner. Exhibit 1, pp. 25-29; Exhibit 2, p. 59.

5) Notwithstanding unsettled fee negotiations, because Perkins knew Petitioner wanted an appeal, Perkins attempted to perfect the appeal and preserve Petitioner's rights by filing a notice of appeal; however, the notice of appeal was filed under the wrong trial court case number (96-345 instead of 96-1386). Perkins filed the notice of appeal under the case number assigned to the first indictment handed down against Petitioner. Exhibit 1, pp. 37-40, and Deposition Exhibit 3; Exhibits 3, 4, and 5.

6) Before Perkins entered his appearance of counsel for Petitioner in the trial court, a superseding indictment issued which bore the case number under which Petitioner was eventually convicted and sentenced (96-1386). Perkins was aware of this superseding indictment and case number: it appears on the first letter he wrote Petitioner, and it appears on pre-trial motions he filed on Petitioner's behalf. Exhibit 1, pp. 15-20, and Deposition Exhibit 2; Exhibit 4.

7) Perkins had received no money towards his fee, the filing fee, or the cost of paying for the trial transcript when he filed the notice of appeal in the wrong case number. Exhibit 2, pp. 41-42.

8) Perkins mistakenly filed a notice of appeal under the wrong case number. Perkins did not catch this error until eight years later when he checked the trial and appellate court dockets after learning that Petitioner's habeas counsel wanted a copy of his file, and wanted to take his deposition. Exhibit 1, pp. 6-7; Exhibit 2, pp. 60-61, and Deposition Exhibit 3; Exhibit 3; Exhibit 5.

9) When Perkins filed the notice of appeal, the state appellate court's docket wound up containing an entry indicating a poverty affidavit had been contemporaneously filed, which operated to waive the initial filing fee and the final costs associated with what became an aborted-by-default appeal. Perkins agrees that the appellate court file contains no poverty affidavit. Perkins knew that the appellate court would not accept a notice of appeal without either the payment of a filing fee or a poverty affidavit. Exhibit 2, pp. 42-47, 58-59; Exhibit 5.

10) Perkins never procured a poverty affidavit from Petitioner, although he knew that Petitioner himself was indigent with respect to paying him or any other lawyer to prosecute and pay the costs associated with an appeal. Exhibit 2, pp. 41-42.

11) Perkins did not recall paying the filing fee on Petitioner's behalf in order to preserve his timely right to appeal (or at least that is what Perkins thought he was doing when he unwittingly filed the notice of appeal under the wrong case number). Per a request made during the deposition, after the deposition Perkins reviewed his cancelled checks during the relevant time period and confirmed by letter to habeas counsel that he had not paid the filing fee for Petitioner. Exhibit 2, pp. 59-60, and Deposition Exhibit 2; Exhibit 6.

12) Perkins had done both appointed and retained appellate work before he represented Petitioner. Exhibit 1, pp. 5, 22-23. Perkins could have asked to have appellate counsel appointed for Petitioner in light of the fact he had not been retained nor given any money to

7

cover the cost of preparing the trial transcript. Perkins never took steps to have appellate counsel appointed for Petitioner. Exhibit 2, pp. 66-68.

13) Perkins was surprised in hindsight that he did not have a larger file relevant to his representation of Petitioner. Exhibit 1, p. 6. Perkins acknowledged that the file he had did not contain copies of any documents related to his efforts to perfect Petitioner's appeal; nor did it contain notices sent to him by the appellate court, which notices Perkins acknowledged he must have received (although he had no specific recollection that he did receive them eight years ago). Exhibit 2, pp. 54-47.

14) Per a request made during the deposition, after the deposition Perkins looked for but did not find any additional files related to his work for Petitioner. Exhibit 2, pp. 59-60, and Deposition Exhibit 2; Exhibit 6.

15) After attempting to perfect an appeal, Perkins initially failed to file a Criminal Docket Statement, which he eventually did after receiving a "show cause" Order from the state appellate court. Exhibit 2, pp. 50-52, and Deposition Exhibits 5 and 6; Exhibit 5.

16) Upon the filing of the Criminal Docket Statement, the appellate court mailed a briefing schedule to Perkins, which he acknowledged he would have received, although he had no recollection of receiving it. Exhibit 2, pp. 50-52, and Deposition Exhibit 6.

17) Perkins failed to follow the briefing schedule: he took no steps to perfect the record (had he done so, he would have discovered the error related to the trial court case number); he filed no brief. The appeal filed under the wrong case number was dismissed for want of prosecution on December 5, 1996. Deposition Exhibit 7. Perkins did nothing in response to the dismissal of the appeal. As with the briefing schedule, the dismissal of the appeal did not register on his professional radar screen. Exhibit 2, pp. 68-69.

18) Overall, Perkins had ongoing contact with Petitioner's supporters, but he could not recall the names of persons with whom he had these discussions. Perkins never reduced anything to writing regarding the fee or subsequent matters related to acquiring payment. Perkins has no recollection of ever informing Petitioner or his supporters about the events related to Perkins' ineffective attempt to preserve Petitioner's appellate rights. Perkins' efforts to preserve Petitioner's appellate rights ended with a whimper, not a bang – it faded away. Exhibit 2, pp. 68-69. Perkins never directly told Petitioner, or Petitioner's supporters, that Petitioner would lose his right to appeal absent payment of Perkins' fee; Perkins took no efforts to secure appointed counsel for Petitioner; and Perkins never told them that the appeal he thought he had started was dismissed.

19) Nothing in Woods' deposition contradicts the finding that Woods reasonably relied on Perkins until Woods contacted the Office of the Ohio Public Defender. Exhibit 11.

20) Perkins' deposition testimony corroborates the core, material facts set forth in the affidavit Petitioner filed in support of his motion for delayed appeal in state court. Exhibit 7. As far as Petitioner knew, Perkins was prosecuting his appeal. When the affidavit was executed,

8

    Petitioner did not realize Perkins had filed a notice of appeal in the wrong case number, but that act – coupled with the abandonment of the appeal by default – equals the complete failure to file a timely notice of appeal that perfected the appeal Petitioner asked for and needed. The prison records in Exhibits 8 and 9 further corroborate Petitioner's affidavit and support his argument for equitable tolling.

21) Upon receiving Woods' request for help, the attorneys at the Office of the Ohio Public Defender (OPD) acted reasonably and diligently to collect facts necessary to determine that Woods had a meritorious case, and that they would represent him. Upon making the decision to represent Woods, OPD acted reasonably and diligently to prosecute a motion for delayed appeal, to seek review of the denial of that motion, and to file Woods' habeas petition. Exhibit 10.

    **B.**    **Woods is entitled to statutory tolling.**

    These facts demonstrate that Woods was a victim of ineffective assistance of appellate counsel; that this ineffectiveness operated as an impediment to the exercise of his rights to pursue a direct appeal; and that Woods and his new counsel promptly filed his motion for delayed appeal and his habeas petition. The R&R's conclusion to the contrary is wrong.

    Respondent concedes that "it is now known that defense counsel Brian Perkins ... failed to provide Woods with effective appellate representation subsequent to Woods' conviction." Brief of Respondent Jackson, p. 1 (Doc. 71); see also R&R p. 10. Such deficiencies equal per se ineffective assistance of counsel, Roe v. Flores-Ortega, 528 U.S. 470 (2000); Ludwig v. U.S., 162 F.3d 456, 459 (6th Cir. 1998), which creates an impediment that tolls time until it is lifted.

    This Court correctly concluded in its 10-24-01 Order that, due to ineffectiveness of counsel, time was tolled from the date on which a notice of appeal should have been filed (7-14-96) to the date on which, through new counsel, Woods filed a motion for delayed appeal (8-28-98). Doc. 17 at 78, quoted in R&R at 8-9. Starting from the filing of the delayed appeal motion, all other periods of time should be deemed tolled until the United States Supreme Court denied certiorari. Counting from that date forward, Woods then had the one-year AEDPA statute of limitations period, which he satisfied by filing his habeas petition within one year.

9

Attorney Perkins' deposition makes it clear that (1) he knew Woods wanted an appeal; (2) he knew Woods was indigent; (3) he led Woods to believe the appeal would proceed; (4) he had, it appears, only one discussion about the appeal with Woods; (5) he had ongoing discussions with more than one member of Woods' family about getting paid to do the appeal; (6) he filed a notice of appeal in the wrong case number, somehow managing to avoid paying the filing fee and winding up with a docket entry indicating a poverty affidavit had been filed when, in fact, it had not been filed; (7) he not only failed to perfect a timely appeal in the correct case number, he failed to protect Woods by asking the appellate court to appoint counsel; (8) he failed to prosecute the appeal (not knowing at the time the notice had been filed in connection with the dismissed case number); (9) he did not recall the dismissal entry, saying that the whole appeal issue faded away with a whimper, not a bang; and (10) he has no writing of any kind documenting any effort to tell Woods or his family members that he was not pursuing the appeal he attempted to initiate.

Respondent argued below that the fact Perkins was never paid renders Woods' reliance unreasonable. Brief of Respondent Jackson, p. 6 n.4 (Doc. 71). Perkins deposition and its exhibits refute that argument. No matter what happened on the money front, the fact is Perkins not only realized he was obligated to perfect Woods' appeal based on his discussions with him, but Perkins attempted to perfect the appeal. Were Respondent's correct that this case rises and falls on a dollar bill, Perkins never would have tried to perfect an appeal.

Perkins' conduct created an impediment that tolled time until the impediment was lifted when his new counsel filed a motion for delayed appeal in state court. The facts set forth above demonstrate that new counsel diligently pursued Woods' interest, thus entitling Woods to statutory tolling from the date on which the motion for delayed appeal was filed (8-28-98) until

the date on which the certiorari petition was denied regarding this delayed-appeal litigation (10-4-99).

The R&R incorrectly faults Woods' new counsel, holding in effect that new counsel blew Woods' statute of limitations by spending time to collect records necessary to determine whether Woods had a viable case, and then spent time to prepare his filing once the decision was made that he had a viable case. R&R at 16. Boiled down to its base, the R&R's logic penalized Woods because new counsel failed to file the motion for delayed appeal on the day the Ohio Public Defender's Office received Wood's first letter asking for help; and, in the alternative, for failing to file the motion on the date OPD agreed to represent Woods. See R&R at 16 (time not tolled while counsel evaluated the case then prepared the motion for delayed appeal; same for the habeas petition).

This analysis should be rejected. It operates to penalize Woods for seeking new counsel's help instead of trying to solve this problem on his own with pro se litigation. And it operates to violate Woods' constitutional right to access the courts by starting his AEDPA clock the second he realized his first lawyer left him in the lurch. If an indigent inmate untrained in the law reasonably relies on new counsel to exercise his right to pursue a delayed direct appeal, then he cannot fairly be trapped in a Catch 22 that punishes him for relying on new counsel to help him vindicate his right to access a state court at the cost of losing his right to pursue habeas relief.

Prisoners like Woods have a constitutional right to access the courts. They must be provided with "adequate law libraries or adequate assistance from persons trained in the law" to vindicate this right. Bounds v. Smith, 430 U.S. 817, 828 (1977). This right rests in the Fourteenth Amendment's guarantee of procedural and substantive due process. See Jackson v.

11

Procunier, 789 F.2d 307, 310-11 (5th Cir. 1986); Green v. Warden, 699 F.2d 364, 369 (7th Cir. 1983); Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990). States must "assure the indigent defendant an adequate opportunity to present [her or] his claims fairly." Bounds, 430 U.S. at 823 (quoting Ross v. Moffit, 417 U.S. 600, 616 (1974)). States must also "enable the prisoner to discover grievances, and to *litigate effectively* once in court." Lewis v. Casey, 518 U.S. 343, 354 (1996) (citing Bounds, 430 U.S. at 825-26 and n. 14; emphasis in original). The right of access is applicable to civil and criminal, matters. Wolff v. McDonnell, 418 U.S. 539, 577-80 (1974).

Woods properly elected to exercise his right of access by seeking new counsel. The R&R improperly denies Woods access to a federal habeas court by starting the statute-of-limitations clock when Woods contacted new counsel. If this Court rejects the argument that this right-to-access extends the statutory tolling until new counsel filed the motion for delayed appeal, then Woods contends that his constitutional right-to-access functions to entitled him to equitable tolling.

In the R&R, the Magistrate Judge recognized that his conclusions conflict with those reached in Waldron v. Jackson, 348 F.Supp.2d 877 (N.D. Ohio 2004), where the Court deemed a habeas petition timely in nearly identical circumstances. R&R p. 13. Woods' counsel filed a timely notice of appeal in the wrong case; Waldron's counsel filed a notice of appeal four days late in the correct case. For both counsel, the filing of the notice of appeal "demonstrate[d] that [they] understood [that their clients'] desire to appeal was unequivocal." Waldron, 348 F.Supp.2d at 884. Based on the rational and the holding in Waldron, Woods objects to the R&R.

The R&R reached the untenable conclusion that appellate counsel's ineffectiveness thwarted a timely state appeal, but it did not thwart a timely habeas petition, saying Woods could

12

have filed a habeas petition within one year of date his notice of appeal was due irrespective of the fact that none of his habeas claims would have been exhausted. Filing a motion for delayed appeal exhausts state remedies and "is a condition to seeking habeas corpus relief in the federal courts," Dombkowski v. Johnson, 488 F.2d 68, 70 (6th Cir. 1973). Accord Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994); Hargrove v. Brigano, 300 F.3d 717, 720 (6th Cir. 2002); Waldron at 884.

The R&R leaps to the wholly unsupported conclusion that, had Woods filed a completely unexhausted petition (not a mixed petition), the federal court could have stayed his petition while he exhausted state remedies. R&R at 15 and note 6. Not only does this fly in the face of long established habeas jurisprudence requiring petitioners to exhaust claims,[1] but it imposes a burden on pro se inmates that '"ignores the reality of the prison system and imposes an unreasonable burden on prisoners seeking to appeal." Granger v. Hurt, 90 Fed. Appx. 97, 100 (6th Cir. Jan. 23, 2004)." Waldron at 887. How could an inmate fairly be required to initiate habeas proceedings while he sits in prison under the reasonable but mistaken belief that his lawyer is pursuing a state-court direct appeal? Moreover, the R&R's conclusion on this front would require inmates with unexhausted claims to engage in the vain act of filing a habeas petition with unexhausted claims. "Equity ... does not require the doing of a vain act." Crosby v. Bowater Inc., 382 F.3d 587, 597 (6th Cir. 2004), cert den. 125 S. Ct. 1844 (2005). See also Cary v. Curtis, 44 U.S. 236, 246 (1845); NLRB v. Armitage Sand & Gravel, Inc., 495 F.2d 759 (6th Cir. 1974).

---

[1] Compare Waldron, 348 F.Supp.2d at 884 ("In his objections to the Magistrate Judge's R&R, Mr. Waldron explains the causal relationship as follows: 1) his counsel was ineffective by failing to file a timely notice of appeal; 2) his Rule 5(a) delayed appeal was only necessary because of his appellate counsel's ineffective assistance; 3) he could not have brought this habeas action

### C.    Woods is entitled to equitable tolling.

Petitioner knew something had to be done to initiate an appeal. He reasonably relied upon his lawyer's representation that he would file an appeal; and he reasonably believed that his lawyer was perfecting the appeal for him. In the alternative to statutory tolling, Woods is entitled to equitable tolling in the interests of justice and fairness. Conversely, Respondent is not entitled to the windfall benefit of avoiding a direct appeal, which, at minimum, would result in a substantial reduction of Woods' sentence.[2]

The basic equitable tolling factors are set forth as follows in Dunlap v. United States, 250 F.3d 1001, 1008 (6th Cir. 2001): "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." Not all of which apply of necessity to every case.

Contrary to the R&R, applying Dunlap's factors to Woods' case justifies equitable tolling for:

1) The time between when Petitioner was sentenced and when he first contacted the Office of the Ohio Public Defender (OPD) after realizing his lawyer failed to perfect a timely appeal;

2) The time between Petitioner's first contact with OPD and when OPD assigned the case to an Assistant Public Defender after others conducted a basic "merits review;"

---

until the claim contained in the petition had first been presented to and exhausted in state court, including the filing of a delayed appeal. Each of these three assertions are unassailable ...."). 

[2] At minimum, the state trial court erred by imposing consecutive three-year sentences for the "firearm specifications." Under Ohio law, even when there is discrete animus for crimes against several victims of aggravated robbery, when the operative facts all occurred during the same act or transaction (e.g., a several people all robbed at gunpoint at the same time), only one gun specification can be lawfully imposed. O.R.C. § 2929.71(B) as effective from 7-1-83 to 7-1-96.

3) The time between when Petitioner's case was assigned to an Assistant Public Defender and when the motion for delayed appeal was filed in state court; and

4) The time between the adjudication of the motions for delayed appeal and the filing of the habeas petition.

**III.     Conclusion**

Woods objects to every recommendation contained in the R&R. Contrary to the conclusions in the R&R, Woods is entitled to statutory tolling, which makes his habeas petition timely. The constitutional ineffectiveness of his counsel created an impediment that tolled time until new counsel filed his motion for delayed appeal. From that point forward, time was statutorily tolled while he exhausted his attempt to get a delayed appeal, and his challenges to the denial of his motion for delayed appeal. Woods filed his habeas petition within one year after this litigation ended. His habeas petition was timely filed.

In the alternative, Woods is entitled to a combination of statutory and equitable tolling which combine to make his habeas petition timely. At minimum, Woods is entitled to equitable tolling for the period of time between when he realized his first counsel failed to perfect an appeal, and when his new counsel filed his motion for delayed appeal.

Based on the conclusion that Woods filed a timely habeas petition, he is entitled to relief. Woods' summary judgment motion should have been granted.

    Respectfully Submitted,

    DAVID H. BODIKER
    OHIO PUBLIC DEFENDER

    _s/Gregory W. Meyers_____
    GREGORY W. MEYERS (0014887)
    Senior Assistant Public Defender

Office of the Ohio Public Defender
8 East Long Street, 11th FL
Columbus, Ohio 43215
Phone: (614) 466 5394
Fax: (614) 728 3670

COUNSEL FOR PETITIONER

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PETITIONER WOODS' OBJECTIONS TO THE 11-8-05 REPORT AND RECOMMENDATION was filed electronically on December 5, 2005. Notice of this filing will be sent to all parties by operation of the court's electronic filing system, through which parties may access copies of this document.

    s/Gregory W. Meyers
GREGORY W. MEYERS (0014887)
COUNSEL FOR PETITIONER

#226974